1  CAROL A. SOBEL   SBN 84483
   MONIQUE A. ALARCON   SBN 311650
2  LAW OFFICE OF CAROL A. SOBEL
   725 Arizona Avenue, Suite 300
3  Santa Monica, ca 90401
   T. 310 393 3055
4  E. carolsobel@aol.com
   E. monique.alarcon8@gmail.com
5
   PAUL COOK SBN 290583
6  13148 Parkwood Place
   Baldwin Park, CA 91706
7  E. cookp2012@lawnet.ucla.edu
8
   Attorneys for Plaintiffs
9

10

11              **UNITED STATES DISTRICT COURT**
       **CENTRAL DISTRICT OF CALIFORNIA- WESTERN DIVISION**
12

13  BALDWIN PARK FREE SPEECH          Case No.:
    COALITION, an unincorporated
14  association, ROBERT EHLERS, an
    individual,
15                                     COMPLAINT: CIVIL RIGHTS
                 Plaintiffs,
16
           vs.                         42 U.S.C. § 1983: First, Eighth and
17                                     Fourteenth Amendments
    CITY OF BALDWIN PARK,
18                                     California Constitution: Art. I, §§ 2, 3, 7, 13
                 Defendant.
19                                     California Civ. Code §52.1

20

21

22

23

24

25

26

27

28

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §1331, in that the claims arise under the Constitution and laws of the United States, and §1343 (a)(3), as Plaintiffs seek to redress the deprivation of rights secured by the United States Constitution.  Supplemental jurisdiction is proper over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367, as they arise from the same case or controversy as the federal claims.  Jurisdiction to issue the requested relief is pursuant to 28 U.S.C. §§ 2201 and 2202 for declaratory and injunctive relief, and 28 U.S.C. §1343 for damages.

2.      Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b) because the events or omissions described herein occurred in this district.

**INTRODUCTION**

3.      This action arises from the City of Baldwin Park's ("the City's") enforcement of its sign ordinance against pure political speech on private property. This is not the first time the City has been sued on the basis that its sign ordinance violates fundamental First Amendment and due process principles and that it is applied by the City in a discriminatory manner against those who criticize elected officials. On July 10, 2017, in *www.RicardoPacheco.com et al v. Baldwin Park City*, case number 2:16-cv-09167, the district court issued a preliminary injunction, restraining the City's municipal code regulating signs as a violation of the First Amendment.

4.      The Baldwin Park Municipal Code ("BPMC") sections regulating signs are an unlawful prior restraint on core speech  and elevate commercial speech over political speech.  The City's ordinance requires a permit for a temporary sign and a deposit of money to apply for a temporary banner.  The City's code lacks uniform written standards and guidelines on how to adjudicate applications for permits. Without set policies, the BPMC vests the city manager with unbridled discretion to grant or deny a permit, impose fines, and conduct an administrative hearing.  These are the hallmarks of a law that violates core due process guarantees.  Because the City

1

1  applies different standards to commercial and non-commercial speech in the permitting

2  application, it is content-based and triggers strict scrutiny.

3       5.      Plaintiffs allege that they have been subject to adverse treatment because

4  they oppose rampant corruption by City officials.  Allegations of such corruption in

5  Baldwin Park and regional politics is nothing new.  It has been and continues to be a

6  prominent issue within the community and frequently reported in the local news

7  outlets.[1]   Allegations against Ricardo Pacheco, the subject of the signs in the prior

8  litigation, are at the heart of this action as well.[2]

9  **PLAINTIFFS**

10  **BALDWIN PARK FREE SPEECH COALITION**

11       6.      Plaintiff BALDWIN PARK FREE SPEECH COALITION (BPFSC) is an

12  unincorporated association that seeks to promote transparency in governance in the

13  City of Baldwin Park. Its members post for public view documents obtained through

    Public Records Act Requests and other information with a focus on the actions of

14  Councilmember Ricardo Pacheco. Members of the group have posted signs

15  communicating their message to the public previously. The signs at issue in this case

16  directed the public to visit the website to find out more about issues of public concern

17  in the City government.

18       7.      The BPFSC is engaged in the political issues impacting City government,

19  especially allegations of corruption. The participants in the organizational plaintiff

20  seek to express their views on these allegations in ways that are both effective and

21  economically feasible. As a result, members of the BPFSC displayed signs on private

22  property, including residences, businesses operated by them and on the sides of a

23  truck. Plaintiffs have been fined and threatened with tax liens on their property because

24  of purported violations of the City's sign ordinance, requiring a permit before political

25  _____

26  [1] http://www.latimes.com/local/lanow/la-me-ln-baldwin-park-ethics-
    allegations-20140703- story.html

27  [2] https://www.sbsun.com/2019/11/08/baldwin-park-councilman-pushed-out-

28  of-embattled-rialto-water-district-after-6-month-paid-leave/

2

signs untethered to a specific election may be displayed on private property.

**ROBERT EHLERS**

8.      Plaintiff ROBERT EHLERS is a business and property owner within the City of Baldwin Park. At all times relevant to this action, Plaintiff Ehlers has been the business and property owner of 15110 Ramona Blvd, Baldwin Park, CA 91706. Plaintiff Ehlers is a participant in BPFSC.  He was issued an administrative citation for a temporary banner at the location identified above.  The banner portrays Council Member Ricardo Pacheco as corrupt and a jackass.

9.      Over the last several months, he received additional citations that total $12,400 dollars as of the date of this filing. The City has twice threatened to place tax liens on his property with the Franchise Tax Board for these unpaid fines.  A true and correct photograph depicting Ehlers' sign is set forth at Exhibit 1.

**DEFENDANT**

**CITY OF BALDWIN PARK**

10.      Defendant City of Baldwin Park ("City") is a municipal entity, organized under the laws of the State of California. The City is sued directly for liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for maintaining and enforcing a policy, codified in the BPMC, and on the basis of respondeat superior for the acts of its officers, employees, and agents who adopt rules and regulations, and promulgate policies for implementation and enforcement of the challenged ordinances. The acts alleged herein were done in the enforcement of BPMC §153.070.060, which requires a permit for all signs displayed on private property; restricts the size of certain banners, limits the size, number and length of time temporary banners may be displayed. At all times relevant to this action, these officers, employees, and agents of the City were acting under color of state law in enforcing the City's Municipal Code.

**THE MUNICIPAL CODE**

11.      The City's permitting scheme for signs is unconstitutional in several key respects and invites arbitrary and capricious application of a clear prior restraint on the

3

exercise of core First Amendment speech.  A permit is required to put a sign on a building; however, an application fee must first be paid, even though the Ninth Circuit ruled 44 years ago in a sign ordinance case that such a fee is "an unconstitutional tax upon the exercise of First Amendment rights."  *Baldwin v. Redwood City*, 540 F.3d 1360, 1371 (1976).  The demand to pay a fee to apply for a permit is only applicable to a temporary banner.  Commercial signs require no similar fee, making the fee an "unconstitutional tax" on the exercise of First Amendment rights.  *Id.*

12.    The City's provisions for an administrative hearing are set forth in BPMC § 15.01 to 15.13.  According to these sections, the City Clerk must receive the request for a hearing (BPMC § 15.09).  The City Manager is responsible for adjudicating the hearing and the request to waive a pre-hearing deposit is conducted by the City Finance Director (BPMC § 15.08). Pursuant to BPMC § 31.06, the City Manager is in charge of all citations.  According to the paper citation issued to Mr. Ehlers, a private company must be contacted to arrange for an administrative hearing. No City ordinance provides for this delegation, nor does any provide for delegation to the contract City Attorney.  On information and belief, the City lacks sufficient standards and guidelines to ensure that the citations, fines and appeals are not applied in an arbitrary and capricious manner, as occurred here, in violation of fundamental due process guarantees embodied by the Fourteenth Amendment.  To the extent the City may have other regulations to implement the sign ordinance and related proceedings, those are not publicly published, leaving speakers without sufficient notice of what is required to obtain a permit to speak through a sign on private property.

13.    As a further illustration of this point, California law provides a statutory scheme for fines for administrative violations.  The City's ordinance fails to comply with the due process requirements of the California Government Code.  It contains no published fine schedule. Although the City may rely on California Government Code Sec. 36900 and apply the schedule of fines set out in the statute, the City has explicitly opted not to do so. BPMC §15.07(A) states that "Administrative fines for code

violations shall be established by resolution of the City Council."  Government Code §53069.4(a)(1) mandates that the City give fair notice by publishing the fine schedule. This section provides that this be done by "set[ting] it forth by ordinance."  *Id*.  The Municipal Code contains no ordinance establishing fines and penalties for a violation of this provision.  On information and belief, Plaintiffs allege that the City makes up the fines as it goes along, allowing it to interject improper and retaliatory political motives against its political critics. The constitutional violation is all the more significant here, where the City's ad hoc fine schedule is exponentially greater than the fines otherwise allowed by the Government Code.

14.    The City's Ordinance specifically restricts both the size and duration of non-commercial speech in the form of signs and banners, even on business property. Specifically, BMPC § 153.170.060, permitting temporary banners provides:

(A)    Permitted temporary signs. In addition to exempt temporary signs pursuant to § 153.170.040(C), upon application for and approval of a permit the following types of temporary signs may be displayed on the site of any non-residential property, provided they comply with applicable standards provided in division (B) below:

(1)   A banner not exceeding 35 square feet.

(2)   A single-pole flag with ground spikes not exceeding 35 square feet.

(B)   Standard for temporary signs. Such temporary signs under division (A) above shall comply with the following standards:

(1)   Maximum number. A maximum of one banner and one single-pole flag permitted under this section may be displayed for each non-residential property at any given time.

(2)    Maximum duration. Each temporary sign may be displayed for a maximum of 30 consecutive days. Temporary signs may be displayed up to four nonconsecutive times within a 12-month period.

(3)   Location and attachment. Temporary banner signs shall be attached to the main building wall or fence and shall not extend above the roofline or height of the

wall or fence on which they are located.

15.    In addition, BPMC § 153.170.050 provides that:

"The following signs are prohibited on any property within the city:

(B)   Animated signs . . .

(E)   Murals . . .

(G)   Off-site signs (billboards) . . .

(H)   Off-site signs. Off-site identification signs, except government and civic signs as provided in this subchapter. . . .

(N)   Painted signs. Signs painted directly on an exterior wall, fence, fascia or parapet.

## FACTUAL ALLEGATIONS

16.    On November 15, 2017, following the issuance of a preliminary injunction by the district court in the prior action challenging the constitutionality of the City's sign ordinance the City Council amended BPMC §153.070.060.  On or around March 17, 2019, plaintiff Robert Ehlers hung two identical banners caricaturizing Councilmember Ricardo Pacheco as a jackass and labeling him a "liar", "bully," "fraud", "abuser" and "corrupt".  Below those words, it states, "DO NOT VOTE COUNCIL MEMBER RICARDO PACHECO".  The banners were affixed to the south and west wall of his commercially zoned building at the intersection of Ramona Blvd. and Puente Ave. in the City.

17.    Plaintiff Ehlers hung his banners as an exercise of free speech in response to a recent jury verdict with a multi-million dollar judgment finding Councilmember Pacheco responsible for racial and sexual discrimination against the City's prior police chief.[3]  This is only the latest incident among several raising wrongful conduct by Councilmember Pacheco.  For example, on June 11, 2019, the San Gabriel Valley Tribune reported that a whistleblower lawsuit was unsealed, alerting that the West Valley Water District was filing a personal lawsuit to recover $1 million against

---

[3] https://www.latimes.com/local/lanow/la-me-ln-former-baldwin-park-chief-wins-gender-discrimination-case-20190326-story.html

several individuals who had been West Valley Water Board Members and officials, including Ricardo Pacheco.

18.     Within weeks of Ehlers' signs being hung, the City started issuing citations to him for violating the City's sign ordinance.  The initial fine was $200, which has escalated repeatedly.  The last fine issued on or about November 1, 2019 for $2,000.  The outstanding fines now total $12,400.

19.     On August 9, 2019 and again on October 1, 2019, the City also threatened to levy tax liens against Ehlers' property with the Franchise Tax Board.

20.     The City has cited Mr. Ehlers for not seeking a permit.  On information and belief, Plaintiffs allege that, at the same time, and throughout the City, the sign ordinance is violated in highly visible manners and locations.  The City routinely permits the display of business signs that substantially exceed the dimensions set out in the Municipal Code.  It also turns a blind eye to businesses that display more than one banner on the same property.  Some of these unpermitted commercial signs have been on display for well more than a year, far longer than the 30 day limit on non-commercial speech.  On information and belief, none of these businesses with non-conforming signs and banners applied for a permit or obtained a waiver from the restrictions set out in the Municipal Code.  Moreover, there is no provision for any such waiver in the ordinance.

21.     The City's disregard for consistent application of the BPMC is illustrated by the City Council's action on June 6, 2016, when it voted to install six 672-square-feet new digital billboards [the billboard ordinance] in the City and enter into a contract with Mark Kudy of Bulletin Displays, LLC to operate the six externally illuminated billboards.  These billboards directly violate a municipal code ordinance banning all billboards in the City.  In an attempt to circumvent the Municipal Code, the Council approved an ordinance rezoning the area to permit the billboards. Before the rezoning, five of the six billboards were in or abutting residential zones.  Only one billboard was located in a commercial-industrial zone.  In a news story at the time, the

Mayor was reported to say that allowing the billboards was estimated to bring in $10 million in use fees over 30 years.  But projected income to the City does not justify unequal treatment of non-commercial speech.

22.     The billboards contain messages promoting the nearby Pechango Casino. Under BPMC and the ordinance approving the billboards, the message promoting gambling at the casino gets 672 square feet and illumination.  Nearby commercial signs advertising the business of the property on which they are displayed get 64 square feet and Plaintiffs' political speech on a matter central to the political life of the City, as temporary signs although on commercial property, is restricted to 35 square feet.  These distinctions based on the status of the speaker fail strict scrutiny.

23.     Also, under BPMC Table 153.170.080, signs hung on the walls of the industrial-commercial and freeway-commercial zones may be up to 64 square foot. In at least one instance, the City Council approved an even larger commercial sign.  On June 22, 2017, the Council approved the 24-hour fitness gym's request to have a mural of three people exercising, with "LA Fitness" printed at the top of mural. The estimated size of the mural is 3,740 square feet. Notably, unlike Plaintiff Ehlers' political signs, commercial signs attached to buildings have no restriction on time duration and up to three signs can be placed on a building.

22.     On June 24, 2019, the City Manager was contacted by attorney Paul Cook, requesting that the fines against Mr. Ehlers be dismissed.  In response, and contrary to the City's ordinary procedures for dealing with violations of this section of the City's Municipal Code, the City delegated the responsibility of staff to Robert Tafoya, a contract attorney, who immediately denied the request for dismissal of the fines.

23.     After denying the request for dismissal, Mr. Tafoya required a $1,000 deposit as a condition of receiving an administrative due process hearing.  From June 24, 2019 until now, Plaintiffs' counsel has contacted the City Manager, the contract City Attorney, the City Finance Director,  the City Clerk and the outside company

handling administrative citations in an attempt to resolve this matter.  All have said they lack authority to discuss the matter, grant an extension or waive the deposit.

24.    The City's enforcement of the applicable ordinance provisions are arbitrary and capricious and the standards and procedures applied in his case, while generally deficient, are intentionally different because of the content of his speech.

25.    The City has allowed numerous non-compliant banners, murals and billboards, including those larger than Mr. Ehlers' and in close proximity to his location.  For example, Frontier Communications displays a large banner on its building, advertising FIOS services, and has done so for at least two years. A true and correct copy of the FIOS banner is incorporated at Exhibit 2.  The distinction between Mr. Ehlers' banners and the other non-compliant banners, murals and billboards is the content of the speech.  The City's ordinance and the application of it by City officials elevates commercial speech over other speech in violation of the First Amendment. *See Café Erotica v. St. Johns County*, 360 F.3d 1274 (11th Cir. 2004)

**Code Enforcement Against Plaintiffs**

26.    Plaintiff Ehlers is a member of the unincorporated association. He owns the property where the challenged signs are currently displayed and which the City is citing him for. The business is located in an area zoned for Industrial Commercial use.

27.    On or around March 17, 2019, Ehlers hung two identical banners caricaturizing Pacheco, as a jackass and labeling him a "liar", "bully," "fraud", "abuser" and "corrupt".  Below those words, it states, "DO NOT VOTE COUNCIL MEMBER RICARDO PACHECO". (Ex. 1). The banners were affixed to the south and west wall of his commercially zoned building at the intersection of Ramona Blvd. and Puente Ave. in the City.

28.    On April 17, 2019, the City issued a notice of violation against Ehlerss under BPMC § 153.170.060 ("temporary sign ordinance").  Subsequently, on May 2, 2019, the City increased the fine to $200. On May 23, 2019, the City issued a "2nd Failure to Comply Notice.  On June 4, 2019, the City imposed an additional fine of

$200 with an "Official Notice of Delinquent Administrative Citation."  On June 7, 2019, the City imposed a fine of $1000 with a "3rd Administrative Citation."

29.    On June 24, 2019 – Mr. Ehlers, through his counsel, made a request to the City Council, Mayor and City Manager to dismiss the citations or provide an administrative hearing.  A day later, the City fined Mr. Ehlers another $400 with an "Official Notice of Delinquent Administrative Citation."

30.    On July 31, 2019, the City denied Ehlers' request for an administrative hearing for failure to pay a "deposit" to obtain an administrative hearing

31.    On August 9, 2019, the City fined Mr. Ehlers another $200 and threatened a lien on his property through the Franchise Tax Board with an "Official Tax Offset Notice Administrative Citation(s)".

32.    On September 10, 2019, the City fined Ehlers $2,000 with a "5th Administrative Citation". On September 24, 2019, the City fined Ehlers $2,000 with a "6th Administrative Citation".

33.    On October 1, 2019, the City again fined Ehlers $2,000, and again stated that if he didn't pay all the fines, a lien would be placed on his property through the Franchise Tax Board "Official Tax Offset Notice Administrative Citation(s)" and "Official Tax Offset Notice Administrative Citation(s)".  Just three weeks later, on October 21, 2019, the City again issued a fine to Mr. Ehlers of $2,000 with an "Official Notice of Delinquent Administrative Citations".

34.    On November 1, 2019, the City fined Ehlers $2,000 with an "Official Notice of Delinquent Administrative Citations".   The total fines are now $12,400.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

35.    On September 11, 2019, Plaintiffs filed a claim for damages pursuant to California Government Code Sec. 910, *et seq.*  The claim was denied.

## FIRST CLAIM FOR RELIEF
## 42 U.S.C. § 1983 First Amendment;
## California Constitution Article I, § 2 and 3

36.    Plaintiffs reallege and incorporate by reference the preceding paragraphs

10

as though fully set forth hereat.

37.     The Baldwin Park Municipal Ordinance regulates core speech when it is affixed to, or displayed from, an individual's business. Anyone wishing to display a temporary sign, including signs responding to current and immediate political events impacting the City, are subject to a vague permitting scheme, which requires prepayment of an application fee.  If permitted, temporary signs are restricted in both the size and length of display anywhere, including at a business.  At the same time, commercial signs advertising a business are not subject to the same limits.

38.     As a result of these distinctions, Defendant's Municipal Code regulating the display of signs is a content-based unconstitutional prior restraint on core speech. Lacking any government interest to support such differential treatment, the City's ordinance cannot meet strict scrutiny, or even a lesser standard of review.

39.     Even if the content-based distinction were otherwise lawful, the City imposes a fee to apply for a permit for a temporary sign, conditioning the exercise of First Amendment rights on the payment of money upfront to the government, with no guarantee if or when a permit will issue and what conditions might be imposed. For the same reasons, this provision violates Article I, §2 of the California Constitution as a content-based restriction on core speech.

40.     Defendant CITY, its agents and employees, have enforced the Baldwin Park sign ordinance against Plaintiff Ehlers in a manner that underscores the fatal constitutional flaws in the Code.  Plaintiffs have suffered harm as a direct and immediate result of the actions of Defendant City and its agents and employees.

41.     Plaintiffs' core First Amendment rights have been violated, and absent relief from this court, will continue to be violated.  Plaintiffs face ongoing violation of their First Amendment rights and will suffer irreparable harm unless and until the requested relief issues.

42.     There exists an actual controversy between Plaintiffs and Defendant concerning the constitutionality of the challenged City sign regulations.  Plaintiffs

contend that the challenged BPMC provisions are an unconstitutional content-based infringement on core political speech.  Defendant City contends that its ordinance is constitutional.  Pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and injunctive relief.  The individual Plaintiff is entitled to compensatory damages for violation of his First Amendment rights under the Federal Constitution.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983: Fourteenth Amendment (Due Process);**
**California Constitution Art. I, § 7**

43.     Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth hereat.

44.     Baldwin City's various municipal code provisions and laws regulating permits for temporary signs, challenging an administrative citation all lack fundamental due process guarantees.  The City lacks sufficient standards and guidelines to ensure a fair review process that constrains the ability of public officials to engage in arbitrary and capricious actions and to manipulate City laws and regulations to restrict the voice of its critics.

45.     Defendant CITY, its agents and employees, have enforced the Baldwin Park sign ordinance against Plaintiff Ehlers in a manner that underscores the fatal constitutional flaws in the Code.  Plaintiffs have suffered harm as a direct and immediate result of the actions of Defendant City and its agents and employees.

46.     Plaintiffs' core Due Process rights were violated, and absent relief from this court, will continue to be violated.  Plaintiffs will suffer irreparable harm unless and until the requested relief issues.

47.     There exists an actual controversy between Plaintiffs and Defendant concerning the constitutionality of the challenged City sign regulations.  Plaintiffs contend that the challenged BPMC provisions lack adequate standards and procedural safeguards against arbitrary and capricious application of the law to core speech rights.  Defendant City contends that its ordinance is constitutional and provides all the

process that is due.  Pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and injunctive relief.  The individual Plaintiff is entitled to compensatory damages for violation of his First Amendment rights under the Federal Constitution.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983: Eighth And Fourteenth Amendment**
**California Constitution, Art. I, Sec. 13**
**Excessive Fines**

48.    Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth hereat.

49.    California Government Code § 36900 sets forth a statutory scheme for imposing administrative fines.  The statute applies to every government entity; however, it provides that any entity may, on proper notice, pass an ordinance setting a schedule in its own City.  While Baldwin Park's City Council took action to declare it would not apply the State's fine schedule, it failed to enact its own ordinance, providing sufficient notice to alleged offenders of what they might face for violating the law.  In place of the required ordinance, the City has imposed an ad hoc arbitrary and escalating series of fines that are without any rationale justification and exponentially exceed the amounts permitted under state law for a similar violation.  BPMC § 15.03(E) gives the City power to charge unlimited amounts of fines.

50.    The United States Supreme Court has held that fines must be proportional to the offense charged.  In that regard, the high Court invalidated fines with the same degree of disparity as exists here between the City's fines and those authorized by statute by the California Legislature.  This evinces the excessive nature of the fines imposed against Plaintiff Ehlers.  Because the City's fines imposed on Mr. Ehlers are completely untethered to any established and lawful schedule, the City's fines are properly viewed as punishment for Plaintiffs' political views, an approach prohibited by the Eighth and Fourteenth Amendments.

51.    Defendant CITY, its agents and employees, have enforced the Baldwin Park sign ordinance against Plaintiff Ehlers in a manner that underscores the fatal constitutional flaws in the Code.  Plaintiffs have suffered harm as a direct and

immediate result of the actions of Defendant City and its agents and employees.

52.     Plaintiffs' fundamental rights to be free from excessive fines and to proper due process in the application of fines have been violated, and absent relief from this court, will continue to be violated. Plaintiffs will suffer irreparable harm unless and until the requested relief issues.

53.     There exists an actual controversy between Plaintiffs and Defendant concerning the constitutionality of the challenged City sign regulations.  Plaintiffs contend that the BPMC provisions are an unconstitutional and unlawful excess fine imposed as punishment for core political speech.  Defendant City contends that its ordinance is constitutional.  Pursuant to 42 U.S.C. §1983, Plaintiffs are entitled to declaratory and injunctive relief.  The individual Plaintiff is entitled to compensatory damages for violation of his constitutional rights.

**FOURTH CLAIM FOR RELIEF**
**FIRST AMENDMENT RETALIATION**
**42 U.S.C. §1983 First Amendment**
**(By Plaintiff Ehlers Against Defendant City)**

54.     Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth hereat.

55.     Defendant City, its agents and employees, retaliated against Plaintiffs in the application of the City's laws based on the content of Plaintiffs' speech.  Plaintiffs have a constitutional right to engage in speech critical of Councilmember Pacheco without fear of reprisal and arbitrary application of City laws because of their speech.

56.     Plaintiff Ehlers alleges that he was charged with violating the City's sign ordinance, subjected to an arbitrary and capricious administrative process and excessive and punitive fines all in response to the exercise of his First Amendment rights to speech, expression, and to petition his government for a redress of grievances.

57.     "The First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  The First Amendment bars government actors from taking actions

14

that would chill an individual of ordinary firmness from engaging in protected speech activity where, as here, such actions are substantially motivated by the plaintiffs' constitutionally protected activities.  Plaintiff Ehlers alleges that he was cited for violating the City's sign ordinance, subjected to arbitrary and capricious administrative processses and excessive and punitive fines, as well as a threat of tax liens placed on his property, all in response to the exercise of his First Amendment rights to speech, expression, and/or to petition his government for a redress of grievances.

58.   As a direct consequence of the acts of Defendant, its agents and employees, all taken under color of law, Plaintiff Ehlers has endured pain and suffering and is entitled to compensatory damages.

## FIFTH CLAIM FOR RELIEF
### California Civil Code §52.1: The Bane Act

59.   Plaintiffs reallege and incorporate the allegations set forth in the preceding paragraphs as though fully set forth herein.

60.   Defendant's agents and employees have used citations, fines, threats of liens and intimidation to interfere with Plaintiff's rights to engage in core political speech in the exercise of Plaintiffs' rights secured by the Constitution of the United States, the State of California, and the statutory laws of the State of California.

61.   As a direct and proximate consequence of these unlawful acts, Plaintiffs suffered and continue to suffer loss of their constitutional and statutory rights and are entitled to statutory damages pursuant to California Civil Code §§ 52 and 52.1.  Plaintiffs are also entitled to an injunction pursuant to Cal. Civ. Code § 52.1.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request relief as follows:

1.   For a preliminary and permanent injunction enjoining Defendant City, its agents, and all persons acting in concert and cooperation with the City, or at the City's discretion and control, from applying BPMC §153.170.060.

2.   For a declaratory judgment that BPMC §153.170.040 violates the First and

15

Fourteenth Amendments to the United States Constitution and Article I, sec. 2 and 3 of the California Constitution as a content-based restriction on core expression;

3.      For a declaratory judgment that BPMC §153.170.060 violates the First and Fourteenth Amendments of the Constitution and Article I, sec. 2 and 3 of the California Constitution as an unlawful content-based restriction on core speech on private property;

4.      For a declaratory judgment that the City's code enforcement of BPMC §153.170.060 violates the First and Fourteenth Amendments of the Constitution as an unlawful content-based restriction on core speech on private property;

5.      For a declaratory judgment that the City's administrative hearing process under BPMC § 15.01 to 15.13 violates the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution and Article I, sec. 7 of the California Constitution;

6.      For a declaratory judgment that the City's administrative hearing under BPMC § 15.01- 15.13, as applied to Plaintiff Ehlers, violates the Due Process Clause of the Fifth and Fourteenth Amendments of the Constitution;

7.      For damages as permitted by law;

8.      For attorney fees and costs as provided by law; and

9.      For such other relief as this Court deems just and proper.

Dated: November 18, 2019          Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL


_____/s/    Carol A. Sobel_____
Carol A. Sobel
Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT 1**



**EXHIBIT 2**

