**CAROL A. SOBEL** SBN 84483
**MONIQUE A. ALARCON** SBN 311650
**WESTON ROWLAND** SBN 327599
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401
t. (310) 393-3055
e. carolsobellaw@gmail.com
e. monique.alarcon8@gmail.com
e. rowland.weston@gmail.com

**PAUL COOK** SBN 290583
13148 Parkwood Place
Baldwin Park, CA 91706
E. cookp2012@lawnet.ucla.edu

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA − WESTERN DIVISION

| | |
|---|---|
| BALDWIN PARK FREE SPEECH COALITION, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Baldwin Park,<br><br>Defendant. | Case No.: 2: 19-cv-09864 CAS - E<br><br>MEMORANDUM IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION<br><br>Date:  February 3, 2020<br>Time: 10:00 a.m.<br>Ctrm: 8D (First Street Courthouse) |

This motion is made in compliance with the pre-meeting requirements of Local Rule 7.3.  The parties met telephonically on December 11, 2019.  At Defendant's request, Plaintiffs provided a letter from counsel on December 12, 2019 with additional arguments and supplemental authorities for the  motion.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

I. INTRODUCTION ................................................................................ 1

II. STATEMENT OF FACTS ................................................................... 2

    A. Baldwin Park Municipal Code ................................................. 2

        1. BPMC §153.170 general provisions ............................. 2

        2. BPMC §153.170.040 "Exempt Signs" .......................... 3

    B. The Citations Issued and Communications with the City ....... 5

III. BPMC §153.170.040 VIOLATES THE FIRST AMENDMENT ....... 5

    A. Plaintiffs' Signs are Protected Speech Under the First Amendment ... 5

    B. The Baldwin Park Ordinance is an Unlawful Prior Restraint ... 6

    C. BPMC §153.170.040 is an Impermissible Restraint on Core Speech ... 7

        1. The BPMC is content based and subject to strict scrutiny ... 8

        2. The Baldwin Park sign ordinance fails strict scrutiny ... 10

        3. The BMPC Furthers No Compelling Interest ................ 11

        4. The ordinance is not narrowly tailored ....................... 13

            a. The exemptions underscore the lack of narrow tailoring ... 13

            b. The absence of standards and guidelines means the Code is not narrowly tailored ... 14

        5. The permit requirement impermissibly restricts "Spontaneous Speech" on matters of public concern ... 15

        6. There are no ample alternatives for communication ... 16

    D. The Permit Fee is an Unlawful "Tax" in Violation of the First Amendment ... 16

IV. PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT A PRELIMINARY INJUNCTION AND THE BALANCE OF HARDSHIPS TIPS SHARPLY IN THEIR FAVOR ... 17

A.   The Standard for Issuing a Preliminary Injunction                                    17

B.   Plaintiffs Meet All Four Elements for Preliminary Relief                             18

     1.   Plaintiffs have shown a likelihood of success on the merits                      18

     2.   Plaintiffs will suffer irreparable injury absent an injunction                   18

     3.   The balance of hardships tips sharply in Plaintiffs' favor                       19

     4.   The public interest weighs in favor of an injunction                            19

C.   Plaintiffs Should be Excused from the Requirement to Post Bond                        19

V.   CONCLUSION                                                                            20

ii

TABLE OF AUTHORITIES

**FEDERAL CASES:**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)     18

*American-Arab Anti-Discrimination League v. Reno*,     18
70 F.3d 1045 (9th Cir. 1995)

*Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*,     11
564 U.S. 721 (2011)

*Arizona Right to Life Political Action Comm. v. Bayless*,     16
320 F.3d 1002 (9th Cir. 2003)

*Arlington County Republican Committee v. Arlington County, Virginia*,     16
983 F.2d 587 (4th Cir. 1993)

*Ass'n of Gen. Contractors v. City and County of San Francisco*,     19
748 F.Supp. 1443 (N.D. Cal. 1990); *aff'd*, 950 F.2d 1401 (9th Cir. 1991)

*Barahona-Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999)     20

*Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976)     6,10,17

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009)     15

*Carey v. Brown*, 447 U.S. 455 (1980)     8

*City of Cincinnati v. Discovery Network*, 507 U.S. 410 (1993)     10,11,12

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994)     *passim*

*Curry v. Prince George's County*, 33 F.Supp.2d 447 (D.Md. 1999)     13

*Desert Outdoor Advert., Inc. v. City of Moreno Valley*,     14
103 F.3d 814 (9th Cir. 1996).

*Dimas v. City of Warren*, 939 F.Supp. 554 (E.D. MI 1996)     13

*Doe v. Harris*, 772 F.3d 563 (9th Cir. 2014)     19

*Edwards v. City of Coeur D'Alene*, 262 F.3d 856 (9th Cir. 2001)     16

*Elrod v. Burns*, 427 U.S. 347 (1976) 18

*Epona, Ltd. Liab. Co. v. Cty. of Ventura*, 14
876 F.3d 1214 (9th Cir. 2017)

*Forsyth County v. Nationalist Movement,* 505 U.S. 123 (1992) 6

*Frisby v. Schultz*, 487 U.S. 474  (1988) 13

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990) 6

*G.K. Ltd. Travel v. City of Lake Oswego*, 14
436 F.3d 1064 (9th Cir. 2006)

*Grossman v. City of Portland*, 33 F.3d 1200 (9th Cir. 1995) 7,15

*Int'l Soc'y for Krishna Consciousness v. Kearnes*, 19
454 F.Supp. 116 (E.D. Cal. 1978)

*Long Beach Area Peace Network v. City of Long Beach*, 6,13,15,16
574 F.3d 1011 (9th Cir. 2009)

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 531 (1981) 2,13

*Mills v. Alabama*, 384 U.S. 214 (1966) 6

*Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 17
460 U.S. 575 (1983)

*Mitchell v. Cuomo*, 748 F.2d 804 (2d Cir. 1984) 18

*Murdock v. Pennsylvania*, 319 U.S. 105 (1943) 17

*Police Dep't of Chicago v. Mosley,* 408 U.S. 92 (1972) 7

*Reed v. Town of Gilbert*,135 S.Ct. 2218 (2015) *passim*

*Santa Monica Food Not Bombs v. City of Santa Monica*, 12,15,16
450 F.3d 1022 (2006)

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959 (9th Cir. 2002) 19

*Seattle Affiliate of Oct. 22nd Coal. To Stop Police Brutality v. Seattle* 15
550 F.3d 788 (9th Cir. 2008)

iv

*Shuttlesworth v. City of Birmingham*, 394 U.S. 147 (1969)                    16

*Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011)                            8

*Talley v. California,* 362 U.S. 60 (1960)                                   11

*U.S. v. Playboy Entmt. Group, Inc.* 529 U.S. 803 (2000)                     11

*Verrilli v. Concord*, 548 F.2d 262 (9th Cir. 1977)                          13

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)                         12,13

*Warsoldier v. Woodford*, 418 F.3d 989 (9th Cir. 2005)                       19

*Watchtower Bible Tract Society of NY v. Village of Stratton*             6,7,15
536 U.S. 150 (2002)

*Whitton v. City of Gladstone*, 54 F.3d 1400 (8th Cir. 1995)                 12

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008)     16,17

**STATE CASES:**

*Gonzales v. Super. Ct.*, 180 Cal. App. 3d 1116 (1986)                       5

*City of Indio v. Arroyo*, 143 Cal. App. 3d 151 (1983)                       5

**FEDERAL CONSTITUTIONAL PROVISIONS AND STATUTES:**

First Amendment                                                        *passim*

FRCivP 65                                                                    20

**STATE CONSTITUTIONAL PROVISIONS:**

Article I, sec. 2                                                            5

Article I, sec. 3                                                            5

**ORDINANCES:**

BPMC §10.99                                                                  5
BPMC §153.170                                                                2
BPMC §153.170.010(G)                                                         3

BPMC §153.170.010(A)-(K) 3
BPMC §153.170.030 6
BPMC §153.170.040 3,6,11
BPMC §153.170.040(C)(1)(a) 3
BPMC §153.170.040(C)(1)(b) 3
BPMC §153.170.050(G) 4
BPMC §153.170.050(C),(J),(P) 10
BPMC §153.170.070 10
BPMC §153.170.160 3
BPMC §153.170.160(A)(1) 3
BPMC §153.170.160(B)(1) 3
BPMC §153.170.160(B)(2) 3

**TREATISES:**

11 Wright & Miller, Federal Practice and Procedure, § 2948, at 440 (1973) 19

## I.     INTRODUCTION

On July 10, 2017, in *www.RicardoPacheco.com et al v. Baldwin Park City*, case number 2:16cv-09167 (C.D. CA), the Court issued a preliminary injunction, finding that the prior version of the Baldwin Park Municipal Code regulating the display of signs in the City violated the First Amendment.  The City subsequently amended the ordinance, resulting in provisions that are, again, unconstitutional.

Plaintiff Baldwin Park Free Speech Coalition ("BPFSC") is an unincorporated association that maintains a website on which it posts documents and factual information regarding issues of concern to the community in Defendant CITY OF BALDWIN PARK ("CITY").  These include allegations of corruption by local officials, in general, and Councilman Ricardo Pacheco, in particular.  Plaintiff Robert Ehlers ("EHLERS") is a participant in the BPFSC.  His family owns commercial property in the CITY.   (Declaration of Ehlers ¶2.)

In mid-March, 2019, several stories in the local press detailed alleged misconduct by CITY officials, including Pacheco. One involved a $7 million jury verdict for discrimination by Pacheco against a former police chief.[1]  One reported his use of a government credit card for personal expenses at a strip club.[2]  A third involved corruption by Pacheco and others at the regional water district board.[3]

In response to these stories, EHLERS hung two identical banners on his commercial property to communicate his political views on Councilmember Pacheco. A true and correct copy of the sign displayed by Plaintiff Ehlers is attached at Exhibit

---

[1]                                                                                                                              ;                                                                                                                              ; www.sgvtribune.com/2019/03/26/former-baldwin-park-police-chief-awarded-7-million-in-discrimination-lawsuit

[2]     http://www.latimes.com/local/lanow/la-me-ln-baldwin-park-ethics-allegations-20140703-story.html

[3]         http://www.sbsun.com/2019/11/08/baldwin-park-councilman-pushed-out-of-embattled-rialto-water-district-after-6-month-paid-leave

1 to the Ehlers declaration, concurrently filed with this motion.

Plaintiff EHLERS' signs are core political expression on private property. The right to communicate to the broader community on issues of public concern through signs is fundamental. Any law restricting this means of expression cannot survive constitutional scrutiny. *See City of Ladue v. Gilleo*, 512 U.S. 43 (1994) and *Reed v. Town of Gilbert*,135 S.Ct. 2218, 2226 (2015). BPMC fails constitutional scrutiny:

- it is a prior restraint on expression;
- it requires payment of a fee - an unlawful "tax" - to apply for a permit;
- the temporary sign permit application requires stating the sign content;
- no standards or guidelines limit unbridled discretion by the City;
- . no compelling government interest supports these restrictions.

In short, the sign ordinance suffers from all of the hallmarks of an unconstitutional law that impermissibly restricts First Amendment rights.

The temporal limits in the Baldwin Park ordinance are also fatal. A permit must be submitted for a temporary sign on commercial property. The BPMC makes no allowance for spontaneous speech in reaction to current events. The period for approval of a "temporary" sign is a minimum of 30 days and a maximum of 45, making it impossible to respond to developing events in a timely manner. Finally, the BPMC restricts temporary signs to only four times a year and no more than 30 consecutive days. This, too, is unconstitutional.

Plaintiffs show a strong likelihood of success on the merits and an immediate threat to their First Amendment rights, supporting injunctive relief.

## II. STATEMENT OF FACTS

### A. Baldwin Park Municipal Code

#### 1. BPMC §153.170

Baldwin Park Municipal Code ("BPMC") §153.170 sets out an expansive

permit scheme regulating sign displays as part of the City's zoning ordinance.[4] BPMC §153.170.060 on "Temporary Signs" allows, "upon application for and approval of a permit ... [a] banner not exceeding 35 square feet." BPMC §153.170.160 (A)(1). Only one banner is permitted at a time. BPMC §153.170.060 (B)(1). It also limits "Maximum duration. Each temporary sign may be displayed for a maximum of 30 consecutive days. Temporary signs may be displayed up to four nonconsecutive months within a 12-month period." BPMC §153.170.060 (B)(2).

The Code has a broad range of "exempted" sign categories on commercial property. BPMC §153.170.030 (C). The BPMC sets out 11 government interests for the law. BPMC §§153.170.010 (A)-(K). The "Intent and Purpose" is summed up in BPMC §153.170.010(G): to "[r]espect and protect the right of free speech by sign display, while reasonably regulating the structure, location and non-communicative aspects of signs, generally for the public health, safety, welfare and specifically to serve the public interests in traffic and pedestrian safety and community aesthetics."

## 2.    BPMC §153.170.040 "Exempt Signs"

The ordinance is a hodgepodge of contradictory provisions. A permit is required for any temporary signs on commercial property except for those "otherwise exempted by §153.170.040[.]" "Exempt signs" include up to 20 flags or pennants on non-resident property. The total pennants may have a combined area of 80 square feet, although no individual banner may be more than 15 square feet. §153.170.040(C)(1)(a). The ordinance also contains an express exemption for up to "15 permanent signs with a combined area of no more than 45 square feet and a height of no more than eight feet; however, no individual sign may exceed 15 square feet in area[.]" *Id.*, (C)(1)(b). There is no time limit on the display of "exempt" signs.

---

[4] A true and correct copy of the BPMC §153.170 is attached to the Declaration of Carol Sobel at Exhibit 19.

3

The Code also includes a categorical ban on some types signs.  Ex. 19, BPMC §153.170.050 ("PROHIBITED SIGNS"), including all billboards. §153.170.050(G).

As the Declaration of Robert Ehlers evinces, violations of the Code are rampant, including near Ehlers' property with the Pacheco signs.  Throughout the CITY, signs exceed the number and size of both exempt and non-exempt limits in the ordinance, as well as the time restrictions on "temporary" signs.  Ehlers Dec. ¶ 25 and Ex. 5 (FIOS banner); ¶ 26 and Ex. 6 ("FREE CRAFT EVENT"0; ¶ 27 and Ex. 7 (Frank's Market: "WE CASH ALL TYPES OF COMMERCIAL CHECKS"); ¶ 28 and Ex. 8 ("JP Automotive"); ¶ 29 and Ex. 9 ("NICHOLS LUMBER"); ¶ 30 and Ex. 10; ¶  Despite a express categorical ban, there are numerous, large off-site billboards. Ehlers Dec. ¶ 24 and Ex. 3 and 4 (Modelo beer and accident lawyer billboards); ¶¶ 30-31 and Exhibit 10 (Morongo Casino and Fantasy Spring Casino). Many"temporary" signs have been displayed continuously for more than 30 consecutive days and four months in a 12-month period.  *See e.g.,* Ehlers Dec ¶ 32 and Ex. 11 ("FOR LEASE & SALE CBRE"); ¶ 33 and Ex. 12 ("grand opening" sign); ¶ 34 and Ex. 13 ("WE'RE MOVING"); ¶ 35 AND Ex. 14 ("Bingo").  Many properties have more than one banner displayed.  Ehlers Dec. ¶36 and Ex. 15 & 16 ("Rockstar energy drinks, Gatorade, Pepsi, California Lottery"); ¶37 and Ex. 17 ("BUDWEISER OR BUD LIGHT CHEAPEST PRICE IN TOWN!" AND "Teca-Lite is $12.99 for 18-pack can"); ¶ 38 and Ex. 18 a-b ("12-pack can $8.99" and "WE ACCEPT EBT").

Not only do these signs and billboards violate temporal limits and categorical bans in the Code, most are also vastly larger than the allowed size of an individual sign and far larger than Ehlers' banners.  For example, the billboards depicted in Exhibits 3 and 4 are approximately 200 square feet.  Declaration of Paul Cook at ¶ 1.  The FIOS banner depicted in Exhibit 5 is approximately 400-square feet.  Cook Decl. ¶2.  The "FREE CRAFT EVENT" temporary banner depicted in Exhibit 6 is 21 feet by 4.5 feet, for a total of 94.5-square feet.  Cook Decl. ¶3.  The check-cashing

banner at Frank's Market depicted in Exhibit 7 is 72-square feet.  Cook Decl. ¶4.  The "JP Automotive" depicted in Exhibit 8 is approximately 48-square feet.  Cook Decl. ¶5.  The "NICHOLS LUMBER" temporary banner depicted in Exhibit 9 is approximately 185-square feet.  Cook Decl. ¶6.  In short, the City's enforcement of this ordinance up to the time this lawsuit was filed is lax, if not largely non-existent.

### B.   The Citations Issued and Communications With the City

On or about April 17, 2019, the CITY issued a notice to EHLERS' father that the banners on the family's commercial property violated the CITY's sign ordinance.  Subsequently, the CITY issued more citations, notices of tax liens, and sent one fine to collections.  Dec. of Ehlers, ¶¶ 8-22.  Through his counsel, EHLERS requested an administrative hearing but was required to first pay $1,000.  Dec. of Cook, ¶¶ 8-9.

On or about September 3, 2019, Plaintiffs filed a government claim for damages, which was denied by operation of law on November 1, 2019. On November 15, 2019, attorney Johnny Griggs at Albright, Yee & Schmitt sent a letter to Plaintiffs' counsel, addressing the claim.  The letter disputed Plaintiffs' legal analysis and ended by threatening sanctions if Plaintiffs filed suit.  A true and correct copy of the letter is attached to the Declaration of Carol A. Sobel at Exhibit 20.

### III.   BPMC §153.170.040 VIOLATES THE FIRST AMENDMENT

### A.   Plaintiffs' Signs Are Protected Speech Under the First Amendment[5]

"Whatever differences may exist about the interpretations of the First

---

[5] Plaintiffs assert that the BPMC ordinance at issue violates Art. I, Sec. 2 and 3 of the California Constitution, as well.  California's Constitution imposes more stringent standards on regulations of speech, including noncommercial expression on private property.  "These provisions of the California Constitution are construed as more protective, definitive and inclusive of rights to expression of speech than their federal counterparts." *Gonzales v. Super. Ct.*, 180 Cal. App. 3d 1116, 1123 (1986) (citations omitted); *see also City of Indio v. Arroyo*, 143 Cal. App. 3d 151, 158 (1983) ("California law is more solicitous of the right to express oneself, particularly where private property interests ... are involved.").

Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966). "Communication by signs and posters is virtually pure speech." *Baldwin v. Redwood City*, 540 F.2d 1360, 1366 (9th Cir. 1976). Indeed, signs are "a venerable means of communication that is both unique and important." *City of Ladue*, 512 U.S. at 54.

> They "are an unusually cheap and convenient form of communications. Especially for persons of modest means or limited mobility, a yard or window sign may have *no practical alternative.* Even for the affluent, the added costs in money or time of taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one's house with a handheld sign may make the difference between participating or not participating in some public debate."

*Id.* at 57 (emphasis added). "Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of the community." *Id.* at 54.

## B.    The Baldwin Park Ordinance is an Unlawful Prior Restraint

BPMC §153.170.030 requires anyone who wants to communicate with the public by means of a sign to first obtain a permit from the government unless the sign falls into a category of "Exempt Signs" codified in §153.170.040. A permitting requirement is a prior restraint on speech and therefore bears a "'heavy presumption'" against its constitutionality. *See Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (internal citation omitted). As explained in *Watchtower Bible & Tract Society of New York, Inc. v. Village of Stratton*, 536 U.S. 150 (2002), "[i]t is offensive -- not only to the values protected by the First Amendment, but to the very notion of a free society -- that in the context of everyday public discourse a citizen must first inform the government of [the] desire to speak to [their] neighbors and then obtain a permit to do so." *Id*. at 165-66. "Even if the issuance of permits by the

[City's] office is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition." *Id.* at 166.

"Prior restraints on speech are disfavored and carry a 'heavy presumption' of invalidity." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1023 (9th Cir. 2009) (internal citation omitted). "'This heavy presumption is justified by the fact that 'prior restraints on speech ... are the most serious and the least tolerable infringement on First Amendment rights.'" *Id.*, quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1204 (9th Cir. 1995) (edit in *Grossman*).

All prior restraints impermissibly vest public officials with the power to deny access to a public or private forum before speech occurs. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225-30 (1990) (invalidating a licensing ordinance applicable to the use of private property as an impermissible prior restraint). To be sure, "a prior restraint need not actually result in suppression of speech in order to be constitutionally invalid. 'The relevant question [in determining whether something is a prior restraint] is whether the challenged regulation authorizes suppression of speech in advance of its expression ... .'" *Long Beach Area Peace Network* 574 F.3d at 1023 (internal citation omitted).

### C.     BPMC §153.170.040 Is an Impermissible Content-based Restriction

It is a cardinal rule that the government may not "restrict expression because of its message, its ideas, its subject matter, or its content." *Reed*, 135 S.Ct. at 2226, quoting *Police Dep't of Chicago v. Mosley,* 408 U.S. 92, 95 (1972). "Content-based laws - those that target speech based on its communicative content - are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S.Ct. at 2226 (citations omitted).

1

**1.      The BPMC is Content Based and Subject to Strict Scrutiny**

2  The Supreme Court has repeatedly held that "[g]overnment regulation of

3  speech is content based if a law applies to particular speech because of the topic

4  discussed or the idea or message expressed.  *Reed,* 135 S.Ct. at 2227, citing *Sorrell*

5  *v. IMS Health, Inc.*, 564 U.S. 552, 572 (2011); *Carey v. Brown*, 447 U.S. 455, 462

6  (1980); *Mosley*, 408 U.S. at 95.  "[A] speech regulation targeted at specific subject

7  matter is content based even if it does not discriminate among viewpoints within that

8  subject matter."  *Reed*, 135 S.Ct. at 2230 (internal citation omitted).

9  In *Reed,* a unanimous Supreme Court held a municipal sign ordinance

10  unconstitutional as a content-based restriction on speech that could not survive strict

11  scrutiny because it imposed more rigorous limitations on temporary signs "directing

12  the public to a meeting of a nonprofit group" than on signs expressing other

13  messages.  *Id*. at 2224.   Like the BPMC, the ordinance at issue in *Reed* required a

14  permit for any outdoor sign unless it fell within an enumerated exemption, including,

15  among other categories, "Ideological Sign[s]" and "Political Sign[s]."  *Id*.  No time

16  limit applied to the display of "Ideological Sign[s]," but "Political Sign[s]" were

17  restricted to display 60 days prior to a primary and election and 15 days after a

18  general election.  *Id*. at 2225.  "Temporary Directional Signs Relating to a Qualifying

19  Event" were restricted to display to a very limited time period of no earlier than 12

20  hours prior to the "qualifying event" and one hour after its conclusion.  *Id*.

21

22  The BPMC ordinance is similarly unconstitutional for two reasons.  First, as

23  in *Reed*, the Baldwin Park ordinance overlays a content-based requirement for

24  temporary permit applications.  Only "temporary signs" require a permit application

25  and include a requirement to set out the intended content of the sign. Ex. 21.  There

26  is no compelling interest the government has in requiring an applicant for a

27  Temporary Sign to submit the content of the sign for pre-approval.

28  Second, the BPMC also includes an unconstitutional durational time limit on

8

temporary signs by restricting their display to no more than 30 consecutive days and four non-consecutive months in a 12-month period. This is a stark restriction on this form of core expression. To illustrate, a sign that says "Impeach Trump" could be approved under the "Temporary Signs" exemption so long as it was not displayed for more than 30 consecutive days. After that, it must be taken down and could not be put up again until a month passed. That would foreclose timely speech on a core political issue engaging the nation.

The House of Representatives began impeachment hearings in November and voted to impeach President Trump on December 18, 2019. There is no date yet for a trial in the Senate. If the Articles of Impeachment are sent to the Senate after Congress returns in January, anyone wanting to put up a sign calling upon people to call their Senators and urge a vote one way or the other would not be able to do so without first submitting an application, telling the CITY what they want to say, paying a fee and waiting a minimum of 30 days for approval. By then, a Senate trial may well be over. Or, depending upon how events have developed, the speaker may want to put up an entirely different message. Would that require a new application?

If they put up a sign when the House of Representatives began public hearings in November, another sign would not be allowed under any circumstance until January because temporary signs by the same individual are only permitted in non-consecutive months. That means that no sign could be approved for display in December, urging members of the community to call their representatives and urge either a yes or no vote on impeachment in December.

Moreover, if a person displayed a sign on impeachment in November and January, they could not apply for a sign on any other topic, including urging a vote in the California presidential primary because that is scheduled for March 3, so, to be timely, the sign would need to be displayed in February. But no permission could be granted for February since the impeachment sign was up in January.

No justification exists to explain this differential treatment and silencing of core expression for eight months a year.  The Ninth Circuit previously recognized that size restrictions for signs generally cannot be justified as a traffic safety measure as there are much more well-tailored means of achieving the government's purpose – such as, prohibiting "the erection of signs that may obstruct the vision of drivers." *Baldwin*, 540 F.2d at 1370.[6]  Similarly, a permit requirement for temporary cannot be justified when so many permanent signs are exempted from similar requirements. *See*, *e.g.*, *City of Cincinnati v. Discovery Network*, 507 U.S. 410, 417 (1993)(striking an ordinance banning commercial newsracks but permitting non-commercial newsracks because both types have the same effect on safety and aesthetics).  For the same reason, any attempt by the City to justify these challenged restrictions based on a governmental interest in avoiding "visual clutter" or promoting aesthetics necessarily fails since the City does not require a permit for broad cateogries of "exempt" signs.  *Id.*, at 417.

### 2.    The Baldwin Park Sign Ordinance Fails Strict Scrutiny

As  in *Reed*, it makes no difference whether the regulated speech is defined by subject matter or "function or purpose;" both are content-based distinctions subject to strict scrutiny.  *Reed*, 135 S. Ct. at 2227.  "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech."  *Reed,* 135 S.Ct. at 2228 (citation omitted).  In sum, "'[i]llicit legislative intent is not the *sine qua non* of a violation of the First Amendment,'" and a party challenging  a  content-based  restriction  on  speech  does  not  need  to  produce

---

[6] In fact, the City has general provisions for "PROHIBITED SIGNS"that restrict placement in significant ways.  *See* e.g. §153.170.050(C),(J),(P). Ex. 19.  It also has general standards that all signs must meet.  §153.170.070 ("GENERAL SIGN STANDARDS").

"'evidence of an improper censorial motive.'"  *Id*. (internal citation omitted).

"Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech." *Reed*, 135 S. Ct. at 2229.  This is because "'[t]he vice of content-based legislation ... is not that it is always used for invidious, thought-control purposes, but that it lends itself to use for those purposes.'" *Id.,* (internal citation omitted) (edits supplied). "Accordingly, [the high Court has] repeatedly 'rejected the argument that discriminatory treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas.'" 135 S. Ct. at 2229, quoting *Discovery Network*, *Inc.*, 507 U.S. at 429 (internal citation marks omitted) (edits supplied).

### 3.    The BPMC Furthers No Compelling Interest

The CITY bears the burden "'to prove that the restriction[s] further[] a compelling interest and [are] narrowly tailored to achieve that interest.'" *Reed*, 135 S.Ct. at 2231, quoting *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). The CITY must "demonstrate that the Code's differentiation between [temporary signs] and other types of signs ... furthers a compelling governmental interest and is narrowly tailored to that end." *Reed* at 2231. This has long been the rule when the government defends a law restricting expressive rights. *See e.g.*, *Talley v. California,* 362 U.S. 60, 66-67 (1960).

The stated government interests in the City's Code are no different than those rejected in *Reed*, and the restrictions on "Temporary Signs" here are not necessary to advance these interests, even if they somehow were compelling. *Reed* rejected governmental interests of "aesthetic appeal and traffic safety." 135 S.Ct. at 2231.[7]

---

[7] Traffic safety, aesthetics, preservation of property values and "neighborhood character" are not compelling government interests which will survive strict scrutiny. *See U.S. v. Playboy Entertainment Group,Inc.*, 529 U.S. 803, 815,(2000); *City of*

As in *Reed*, Baldwin Park's sign code exemptions fail to further these interests because they are "hopelessly underinclusive." *Id.* at 2231. The categories of exempt signs that require no permission from the City allow more and larger displays on commercial property than Plaintiff may have on under the temporary sign provisions. There is no justification for this difference.

Fundamentally, " a 'law cannot be  regarded as protecting an interest of the highest order, and thus as justifying a restriction on truthful speech, when it leaves appreciable damage to that supposedly vital interest unprohibited.'" *Reed*, at 2232 (internal citation omitted). For this reason, BPMC §153.170.040 fails strict scrutiny.

### 4.      The Ordinance is Not Narrowly Tailored

A narrowly tailored restriction on speech may not "'burden substantially more speech than is necessary' to achieve a substantial government interest. ...  It must 'target [] and eliminate [] no more than the exact source of the 'evil' it seeks to remedy.' ... Moreover, although the chosen restriction 'need not be the least restrictive or least intrusive means' available to achieve the government's legitimate interests, *Ward v. Rock Against Racism*, 491 U.S. 791, 798 (1989), the existence of obvious, less burdensome alternatives is 'a relevant  consideration in determining whether the 'fit' between ends and means is reasonable.'" *Discovery Network, Inc.*, 507 U.S. at 417 n.13; *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1041 (9th Cir. 2006).

The CITY's permitting requirement for temporary signs fails the narrow tailoring test for several reasons. First, it advances purported interests that have repeatedly been held insufficient to support similar restrictions on protected speech. *See, e.g., Reed*, 135 S.Ct. 2231.  Second, it only marginally, if at all, promotes the City's asserted interests, suggesting that the government's interests would not "be

_____

*Ladue,* 512 U.S. at 48; *Whitton v. City of Gladstone*, 54 F.3d 1400, 1408 (8th Cir. 1995).

achieved less effectively absent the regulation." *See Ward*, 491 U.S. at 799 (internal quotation marks and citations omitted).  Finally, the permitting rule applies, on its face, to an extraordinarily broad range of expression, the vast majority of which is not responsible for the "evil" the City seeks to remedy. *See Frisby v. Schultz*, 487 U.S. 474, 485 (1988).

### a.  The exemptions underscore the lack of narrow tailoring

Even if the CITY could advance a significant governmental interest for these restrictions on "temporary" signs, the CITY still cannot carry its burden to demonstrate that the ordinance is narrowly tailored to serve any such  interest. There is no reason why Plaintiffs and others should be barred from putting up signs every month on their properties when nearby there are a myriad of both exempt and non-conforming signs and banners displayed advertising everything from beer to bingo on similar commercial property and churches in the same neighborhood as Plaintiff Ehlers' property.  These signs evince the hopeless underinclusiveness of the ordinance.  *See Verrilli v. Concord*, 548 F.2d 262, 265-267 (9th Cir. 1977) (striking sign ordinance restricting the size and duration of "political" signs).

> [A]lthough the purpose may be a legitimate one, the city [can not] show that this interest 'justifies placing time limits on the posting of ... temporary signs ... . In addition, it has not been shown that this particular time period of [thirty] days, even if evenhandedly applied to all temporary signs, reasonably and adequately provides for the exercise of First Amendment rights.' [Citation.]  The city may not impose durational limits or other restrictions on [some signs] in order to advance aesthetic goals until it shows that it is 'seriously and comprehensively addressing aesthetic concerns with respect to its environment.'

*Dimas v. City of Warren*, 939 F.Supp. 554, 551 (E.D. MI 1996) (edits supplied), quoting *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 531 (1981) (Brennan, J., concurring). *See also Curry v. Prince George's County*, 33 F.Supp.2d 447, 455 (D.Md. 1999) (striking durational limit on campaign signs and other "public interest"

signs as violative of the First Amendment).

      **b.**      **The absence of standards and guidelines means the Code is not narrowly tailored**

"[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth [v. Alabama]*, 394 U.S. at 150-51. ... That is, absent definite and objective guiding standards, permit requirements present a "threat of content-based, discriminatory enforcement." *G.K. Ltd. Travel v. City of Lake Oswego*, 436 F.3d 1064, 1082 (9th Cir. 2006). While permitting guidelines need not eliminate all official discretion, ... they must be sufficiently specific and objective so as to effectively place some "limits  on the authority of City officials to deny a permit," *Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 819 (9th Cir. 1996)." *Epona, Ltd. Liab. Co. v. Cty. of Ventura*, 876 F.3d 1214, 1222 (9th Cir. 2017) (edits supplied).

    The process for obtaining a permit for temporary speech under the BPMC is lengthy and applicable to all non-exempt signs.  Once the initial written application is submitted and the fee is paid, the City has 30 days to respond, with a potential additional 15 days to complete review. Ex. 19, . The BPMC contains no standards or guidelines for deciding whether to grant or deny a permit.  Yet, "[i]t is precisely when political and social pressures are most likely to affect decisionmaking that objective standards to govern discretion are most essential." *Long Beach Area Peace Network*, 574 F.3d at 1043.

    Nor is there a requirement for CITY officials to state the reasons for denying a permit.  Such a provision "provides an important check on official discretion by 'facilitat[ing] effective review of the official's determination' and 'ensur[ing] that the determination . . . is properly limited in scope.'" *Epona*, 876 F.3d at 1224, citing *Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression and*

*Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 801 (9th Cir. 2008). The complete lack of standards and guidelines is fatal, especially where "Temporary Signs" necessarily include a broad range of political expression.

### 5.    The    Permit    Requirement    Impermissibly    Restricts "Spontaneous Speech" on Matters of Public Concern

"Both the procedural hurdle of filling out and submitting a written application, and the temporal hurdle of waiting for the  permit to be granted may discourage potential speakers." *Grossman*, 33 F.3d at 1206. Registration requirements also dissuade potential speakers by eliminating the possibility of anonymous speech. *See Watchtower Bible*, 536 U.S. at 166; *Berger v. City of Seattle*, 569 F.3d 1029, 1037-38 (9th Cir. 2009).

In this instance, the lengthy time for permit review is a bar to display of temporary signs that involve spontaneous speech.  The Supreme Court and the Ninth Circuit have repeatedly emphasized that "[i]t is offensive - not only to the values protected by the First Amendment, but to the very notion of a free society - that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so." *Santa Monica Food Not Bombs*, 450 F.3d at 1025.   A delay in approval of a month or longer diminishes Plaintiffs' First Amendment rights.  There is no equivalent form of speech that serves as an ample alternative to readable signs at a location associated with the signs. *See City of Ladue*, 512 U.S. at 56-57.

Advance notice or permitting requirements, by their very nature, foreclose spontaneous expression and inhibit speech.  Consequently, in any particular forum, true spontaneous expression and the application of an advance notice requirement are mutually exclusive. [Plaintiffs] may be able to engage in expressive conduct after the notice period has expired, but the change in timing will alter the potential impact of their speech.  For speech that is truly time sensitive, the precise spontaneous moment

will be lost." *Long Beach Area Peace Network*, 574 F.3d at 1037, quoting *Santa Monica Food Not Bombs*, 450 F.3d at 1046.

Restrictions on spontaneous expression severely burden political speech. "[T]iming is of the essence in politics ... and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all." *Arizona Right to Life Political Action Comm. v. Bayless,* 320 F.3d 1002, 1008 (9th Cir. 2003), quoting *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 163 (1969)*.*

*Long Beach Area Peace Network* considered an advance notice requirement of 24-hours.  574 F.3d at 1037.  The much shorter advance permitting requirements in *Shuttlesworth, Santa Monica Food Not Bombs* and *Long Beach Area Peace Network* all involved public assemblies, far more intrusive speech than a sign on a building. Yet, in those cases, even that short period of time was constitutionally suspect. Consequently, "[t]o suggest that the [BPMC one-month] waiting period is minimal ignores the reality of breakneck political campaigning and the importance of getting the message out in a timely, or, in some cases, even instantaneous fashion."  *Id*., quoting *Bayless*, 320 F.3d at 1008 (internal citations in *Bayless* omitted).

### 6.    There are no ample alternatives for communication

There is no ample alternative to readable signs posted at a location associated with the speakers' business posted in a timely fashion.  *See City of Ladue*, 512 U.S. at 56-57.   In *Edwards v. City of Coeur D'Alene*, 262 F.3d 856, 866 (9th Cir. 2001), the Circuit held that, "[i]f an ordinance effectively prevents a speaker from reaching his intended audience, it fails to leave open ample alternative means of communication." (Internal quotations omitted).

## IV.    THE PERMIT FEE IS AN UNCONSTITUTIONAL "TAX" ON FIRST AMENDMENT ACTIVITY

 Defendant CITY requires all those requesting temporary sign permits pay $21 with the application. "A tax that burdens rights protected by the First Amendment

16

cannot stand unless the burden is necessary to achieve an overriding governmental interest." *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 582 (1983).  The government may not impose a fee not reasonably related to the regulatory costs incurred in regulating expressive activity. *Murdock v. Pennsylvania*, 319 US 105 (1943).

In *Murdock*, the Court struck down a licensing fee for distributing literature because it was not "imposed as a regulatory measure to defray the expenses of policing the activities in question" but, rather, was "a flat license tax levied and collected as a condition to the pursuit of activities whose enjoyment is guaranteed by the First Amendment." *Id*. at 113-14.  In *Baldwin v. Redwood City*, 540 F2d 1360 (9th Cir. 1976), the Court invalidated a $1 non-refundable inspection fee for temporary political campaign signs, finding it was not reimbursement for the cost of inspection but an unconstitutional tax upon the exercise of First Amendment rights.  *Id.* at 1371.

Here, too, the flat fee to file for a Temporary Sign permit is unrelated to the cost of processing the application.  As in *Minneapolis Star*, Baldwin Park's tax on such applications cannot stand as it "burdens rights protected by the First Amendment" and is not "necessary to achieve an overriding governmental interest." 460 U.S. at 582.

## V.   PLAINTIFFS WILL SUFFER IRREPARABLE INJURY ABSENT A PRELIMINARY INJUNCTION AND THE BALANCE OF HARDSHIPS TIPS SHARPLY IN THEIR FAVOR

### A.   The Standard for Issuing A Preliminary Injunction

Plaintiffs "seeking a preliminary injunction must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public intereest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).  All four prongs of the *Winter* test must be met

to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Court's may apply the *Winter* test "using a sliding-scale approach." *Id*. For example, stronger evidence on the balance of the hardships may warrant issuing a preliminary injunction even where there is a showing of "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. At a minimum, a Plaintiff must show, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[] sharply in the plaintiff's favor," to justify issuance of a preliminary injunction. *Id.* at 1134-35 (emphasis added). In this instance, Plaintiffs make a strong showing on each element required by *Winter*.

**B.    Plaintiffs Meet All Four Elements for Preliminary Relief**

**1.    Plaintiffs have shown a likelihood of success on the merits**

Plaintiffs have shown a very strong likelihood of success on the merits in this instance. As discussed above, the Baldwin Park Municipal Code violates the First Amendment on several independent grounds and cannot meet even an interim level of scrutiny. Baldwin Park's ordinance necessarily fails strict scrutiny under the decisions in *City of Ladue* and *Reed* as there is no possible governmental interest that can justify this restriction on core speech.

**2.    Plaintiffs will suffer irreparable injury absent an injunction**

Plaintiffs will suffer irreparable injury resulting from the violation of their First Amendment rights. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *American-Arab Anti-Discrimination League v. Reno*, 70 F.3d 1045, 1057 (9th Cir. 1995); *see also Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.")(citing 11 Wright &

Miller, Federal Practice and Procedure, § 2948, at 440 (1973); *Ass'n of Gen. Contractors v. City and County of San Francisco*, 748 F.Supp. 1443, 1447 (N.D. Cal. 1990); *aff'd*, 950 F.2d 1401 (9th Cir. 1991).  Even a "colorable First Amendment claim" is 'irreparable injury sufficient to merit the grant of relief,'" *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (internal quotation marks omitted),

### 3.    The balance of hardships tips sharply in Plaintiffs' favor

The balance of hardships clearly tips in Plaintiffs' favor.  Unless the ordinance is enjoined, Defendant will continue to issue citations for purported violations of the law and send the unpaid fines to collection.  Moreover, Defendant will continue to prosecute individuals who do not submit to this unlawful permitting scheme if they put up "temporary" signs with core political speech on matters of public concern to the Baldwin Park community. On the other hand, entry of an injunction would not cause Defendant to suffer any serious harm, let alone any harm.

### 4.    The public interest weighs in favor of an injunction

In this instance, the public interest further tips the balance of the equities in Plaintiffs' favor.  The Ninth Circuit has "'consistently recognized the significant public interest in upholding First Amendment principles.'" *Doe v. Harris*, 772 F.3d 563, 583  (9th Cir. 2014), quoting, *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002).  "The protection of First Amendment rights weigh[] heavily in the balancing of harms, for the protection of those rights is not merely a benefit to plaintiff[s] but to all citizens." *Int'l Soc'y for Krishna Consciousness v. Kearnes*, 454 F.Supp. 116, 125 (E.D. Cal. 1978).

### C.    Plaintiffs Should Be Excused from the Requirement to Post Bond

Federal Rule of Civil Procedure 65 provides that "no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully

enjoined or restrained." The Court has the discretion to waive the requirement of a bond when the likelihood of harm to the defendant is small, if any. *See Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999). There is no harm to the Defendant in this case. At the same time, the strong public interest in ensuring First Amendment rights and the overwhelming likelihood of prevailing on the merits shown by Plaintiffs supports waiver of a bond requirement in this instance.

## V.   CONCLUSION

For the foregoing reasons, this Court should issue a Preliminary Injunction, enjoining Baldwin Park's unconstitutional restriction on core political expression.

Dated: December 30, 2019                    Respectfully submitted,

LAW OFFICE OF CAROL A. SOBEL

_____/s/   Carol A. Sobel_____
By: CAROL A. SOBEL
Attorneys for Plaintiffs