**EXHIBIT 20 - SOBEL DECLARATION**
**Case No.: 2:19-cv-09884 CAS - E**

**ALBRIGHT, YEE & SCHMIT, APC**

17 CORPORATE PLAZA DRIVE, SUITE 374
NEWPORT BEACH, CA 92660
(949) 718-9100

ATTORNEYS AT LAW
888 W. 6TH STREET, 14TH FLOOR
LOS ANGELES, CALIFORNIA 90017-2740
TEL.: (213) 833-1700 / FAX: (213) 833-1710

1440 G STREET NW
WASHINGTON, DC 20005-2001
(202) 374-3004

November 15, 2019

***VIA EMAIL and VIA U.S. MAIL***
carolsobel@aol.com

Carol Sobel, Esq.
**Law Office of Carol A. Sobel**
725 Arizona Avenue, Suite 300
Santa Monica, California 90401

      Re:    ***Government Code Section 910 Claim on Behalf of Robert Ehlers***
               **Our File No.: 1024.19**

Dear Ms. Sobel:

This law firm represents the City of Baldwin Park (the "**City**") respecting the above-described matter. We write to address the above-described claim, filed on or about September 3, 2019 (the "**Claim**"), as well as to apprise you of our intention to move for appropriate sanctions pursuant to *Cal. Code Civ. Proc.* § 128.7. We address these matters further below.

## I.    RELEVANT FACTS AND ALLEGATIONS OF THE CLAIM

### A.    Factual Background

On or about April 17, 2019, Robert Ehlers ("**Ehlers**"), who is purportedly the owner of certain commercial property located at 15110 Ramona Road, Baldwin Park, CA 91706-0000 (the "Property"),[1] was cited by the City for failing to obtain a permit for two banners affixed to the Property. The Property sits on the very busy and visible corner of Ramona Blvd. and Puente Avenue. The corrective action required by the City was the removal of the unpermitted banners.

On or about April 23, 2019, the planning staff member assigned to the matter conducted a follow-up inspection to determine whether the banners had been removed. On this occasion, Mr. Ehlers was apparently not issued a citation.

On or about May 2, 2019, the Property was re-inspected by the City. Because the banners had not been removed, on May 2, 2019, the City issued Ehlers a citation for failing to comply and assessed fines of $200 ($100 for each of the two banners).

---

[1] The Property is recorded in the name of Albert F. Ehlers and the Albert F. Ehlers Personal Trust. We are currently unaware of the relationship between Robert Ehlers and Albert F. Ehlers.

ALBRIGHT, YEE & SCHMIT, APC

Ehlers v. Baldwin Park
November 15, 2019
Page 2

On or about May 7, 2019, the Property was inspected again by the City, and Mr. Ehlers had not removed the banners. The Property was inspected again on May 14 and 23, and Mr. Ehlers had not complied. Mr. Ehlers was cited a second time on or about May 23, 2019. This time, the fines were $400 ($200 per sign).

The City conducted further inspections of the Property on or about May 28, June 6 and June 7. Mr. Ehlers had not taken down the banners as of the time of these inspections. Consequently, the City issued a third citation on June 7 and assessed fines in the amount of $1,000 ($500 per sign).

The Property was inspected again on or about June 19 and June 26, and the banners had not been removed. The Property was re-inspected on or about July 24, 2019 and August 28, 2019. As of August 28, the banners were still hanging. On that day, the City issued a fourth administrative citation to Mr. Ehlers in the amount of $2,000 ($1,000 per banner).

On September 10, 2019, the City re-inspected the Property and the banners had not been removed. On that day, the City issued Mr. Ehlers a fifth administrative citation in the amount of $2,000 ($1,000 per banner).

The property was inspected by the City again on or about September 24, 2019. The banners remained on the building, and the City issued a sixth citation to Ehlers in the amount of $2,000 ($1,000 per banner). The City inspected the Property again on or about October 10, 2019. As of that date, Mr. Ehlers had not removed the signs.

All told, in a little under six months, Ehlers was cited six times, and accumulated fines totaling $7,600. Apparently, Mr. Ehlers has not removed the banners from the Property as of this date.

**B.    The Purported Factual Allegations Contained in the Claim**

The Claim alleges that on March 17, 2019, Ehlers hung on the Property two identical banners that caricatured Councilmember Pacheco as a jackass, disparaged the Councilmember by calling him several derogatory names, and beneath the disparagement were the words: "DO NOT VOTE FOR COUNCIL MEMBER PACHECO."

The Claim alleges further that the banners were affixed to the south-facing wall of his commercially-zoned building facing the busy intersection of Ramona Blvd. and Puente Avenue in the City. In addition, the Claim alleges that Ehlers hung the banners "as an exercise of free speech after a jury verdict with a multi-million-dollar judgment for racial and sexual discrimination by Councilmember Pacheco."

Moreover, the Claim alleges: "In response to Mr. Ehler [sic] hanging his banners, the City cited him with multiple fines, ranging from $200, $400 and $1,000. Just recently the City has sent two letters stating that it will record liens against Ehlers [sic] properties until the fines are paid."

ALBRIGHT, YEE & SCHMIT, APC

Ehlers v. Baldwin Park
November 15, 2019
Page 3

In addition, the Claim alleges that on June 24, 2019, Paul Cook, attorney for Ehlers, contacted the City Manager and requested that the fines levied against Ehlers be dismissed. The Claim then alleges that the City violated its "ordinary procedures" for dealing with "this section of the City's Municipal Code," by "delegat[ing] the responsibility of staff to Robert Tafoya, a contract attorney, who immediately denied the request for dismissal of the fines. Moreover, the Claim alleges that Mr. Tafoya required Ehlers to pay a $1,000 "deposit" as a condition of receiving an administrative due process hearing, and that Mr. Cook emailed the City Manager, the City Finance Director and the City Clerk in an attempt to resolve the matter, but was told by all "they do not have the authority to discuss the matter, grant a decision or waive the deposit."

### C.    The Purported Legal Allegations of the Claim

The Claim is not a model of clarity. The gist of the Claim appears to be that the Ordinances are unconstitutional as written and/or as applied. The Claim states in pertinent part: "Mr. Ehler's [sic] position is that the City's permitting scheme for signs is unconstitutional in several key respects and invites arbitrary and capricious application of a clear prior restrain [sic] on free speech." While the Claim does not delineate or enumerate those "several key respects" with clarity, we have gleaned a number of purported legal allegations from the Claim, all of which are wholly without merit. These issues are addressed below.

### 1.    The Allegation that the fee the City charges to apply for a permit to place a sign on a building is unconstitutional

The Claim appears to allege that charging an applicant a fee to obtain a sign permit is unconstitutional per se. The Claim cites *Baldwin v. Redwood City*, 540 F.2d 1360, 1371 (9th Cir. 1976) for the proposition that payment of a fee for a permit is "an unconstitutional tax upon the exercise of First Amendment rights." This is an incorrect statement of the applicable law. *Baldwin* simply does not stand for this broad proposition.

In *Baldwin*, the Ninth Circuit recognized that, in some circumstances, a city may both require a permit for an activity involving free expression without violating the First Amendment and also collect fees that fairly reflect costs incurred by the city in connection with such activity.[2] However, the court determined that the fee imposed for checking posters of identical size and number had no bearing on the relationship to the cost of inspection and, hence, constituted an unconstitutional tax upon the exercise of First Amendment Rights. Ordinarily, a government cannot profit by imposing licensing or permit fees on the exercise of a First Amendment right.[3] However, fees that cover the administrative costs of the permit or license are permissible.[4] Fees

---

[2] *Id.* at 1372, fn. 32, 33.

[3] *Murdock v. Pennsylvania*, 319 U.S. 105, 113–14 (1943); *Cox v. New Hampshire*, 312 U.S. 569, 577, 61 S.Ct. 762, 766, 85 L.Ed. 1049 (1941); *Hull v. Petrillo*, 439 F.2d 1184, 1186 (2d Cir.1971).

[4] *Eastern Connecticut Citizens Action Group v. Powers*, 723 F.2d 1050, 1056 (2d Cir.1983).

ALBRIGHT, YEE & SCHMIT, APC

Ehlers v. Baldwin Park
November 15, 2019
Page 4

that cover administrative costs are not a tax, but a permissible exercise of the City's police power. As the court held in *United Business Commission v. City of San Diego*, 91 Cal.App.3d 156 (1979):

> 'If revenue is the primary purpose and regulation is merely incidental the imposition is a tax; while if regulation is the primary purpose the mere fact that incidentally a revenue is also obtained does not make the imposition a tax...' (Citations.) . . . 'In general, therefore, where the fee is imposed for the purpose of regulation, and the statute requires compliance with certain conditions in addition to the payment of the prescribed sum, such sum is a license proper, imposed by virtue of the police power; but where it is exacted solely for revenue purposes and its payment gives the right to carry on the business without any further conditions, it is a tax.'[5]

Here, The City's nominal permitting fee of $20 (adjusted to $20.40 effective September 2019) per temporary sign, is calculated based upon the administrative costs associated with permitting the signs.[6] The permit fee is a permissible exercise of the City's police power and not an unconstitutional tax on First Amendment expression.[7]

> ## 2. The Allegation that the City impermissibly delegated responsibility to City Attorney Robert Tafoya, in violation of the City's ordinary procedures

Here, it appears that the crux of the argument advanced in the Claim is that the City did not follow the procedures set forth in BPMC §§ 15.01 to 15.13 when it denied Ehlers an extension of time to comply with the request and a waiver of the pre-hearing deposit, in that, allegedly: (1) the responsibility of adjudicating Ehlers' request for dismissal of the fines was delegated to City Attorney Robert Tafoya, contrary to the requirements of in BPMC § 15.08 and the City's "ordinary procedures"; and (2) Mr. Tafoya impermissibly required Ehlers to pay a deposit of $1,000 in order to obtain a due process hearing. These allegations are false.

---

[5] *Id.* at 165 (citing *City & County of San Francisco v. Boss*, 83 Cal.App.2d 445, 450-451 (1948).

[6] The permit fees in place effective July 2018 for both temporary and permanent signs are set forth in the City of Baldwin Park Fee Schedule Effective July 2018. The fee for a temporary sign under pursuant to that fee schedule was $20. That fee was adjusted to $20.40 effective September 2019. These are hardly numbers that would suggest the permitting fee for temporary signs is designed to raise revenue rather than cover the administrative costs.

[7] The allegation in the in the Claim that "[T]hese regulations apply only to a temporary banner," is incorrect. Baldwin Park Municipal Code ("**BPMC**") § 153.170.030 provides:

> Unless otherwise exempted by § 153.170.040, a sign permit shall be required prior to the placement, construction or physical alteration of the size, height or location of any sign or advertising display in the city. A sign permit may be obtained from the planning division pursuant to the provisions of §§ 153.210 et seq., Administrative Procedures.

ALBRIGHT, YEE & SCHMIT, APC

Ehlers v. Baldwin Park
November 15, 2019
Page 5

First, Mr. Tafoya did not make the decision regarding the requested extension of time; he merely communicated that decision to Ehlers. Pursuant to BPMC § 15.04, the City's Chief Executive Officer made the decision to deny Ehlers' request for an extension of time to remedy the violation(s). Mr. Ehlers objectively did not qualify for such an extension, in that, *inter alia*, he did not make a showing that "the correction [could not] be made within the established period."[8]

Second, Mr. Tafoya did not make the decision to deny any request that the so-called "deposit" be waived. Pursuant to BPMC § 15.08, the decision was made by the City's Finance Director.[9] Mr. Tafoya merely communicated the Finance Director's decision to Ehlers.

Moreover, pursuant to the BPMC, unless payment has stayed, Mr. Ehlers was required to pay his fine prior within the time specified, which was prior to an administrative hearing.[10] The process and bases for obtaining a stay of the fine pending the hearing are:

> Pending a hearing by the hearing officer, payment of a fine may be stayed if a request by the responsible person for a waiver of the fine deposit, accompanied by a sworn affidavit that such responsible person is unable to deposit the fine required by the administrative citation, is filed with the city not less than five business days prior to the time the fine is due. The burden of proof of such inability to post the fine shall be on the responsible person. The Finance Director may stay the payment of the fine if, in his or her sole determination, such burden of proof has been met. The decision to stay payment of the fine is not appealable.[11]

As stated above, the decision to deny a stay of payment of the fine was made by the Finance Director, not by Mr. Tafoya. Moreover, Ehlers simply did not qualify for a stay, because, *inter alia*, he did not make an adequate showing that he could not pay the fine.

---

[8]  *See* BPMC § 15.04, subsections (A) and (B).

[9] *See* BPMC § 15.08, subsection (B).

[10] *See* BPMC § 15.08, subsection (A).

[11] *See* BPMC § 15.08, subsection (D) (emphasis added).

ALBRIGHT, YEE & SCHMIT, APC

Ehlers v. Baldwin Park
November 15, 2019
Page 6

> 3.  **The Allegation that the City imposed unlawful fines against Mr. Ehlers in that, *inter alia*, the City has not authorized a fine schedule, or in the alternative, has not given fair notice by publishing the schedule of applicable fines**

The Claim asserts that the City has no published fine schedule.  That is incorrect. BPMC § 153.020.090 provides in pertinent part:

> Zoning Code violations. Any person, firm or corporation, whether as principal, agent, employee or otherwise, violating any provisions of the Zoning Code or failing to comply with any order or regulation made hereunder, <u>shall be subject to the penalties set forth in § 10.99 of the Baldwin Park Municipal Code</u>.[12]

BPMC § 10.99, in turn, sets forth the applicable fines. Thus, the allegation is entirely meritless.[13]

> 4.  **The Allegation that the City has treated Mr. Ehlers in an arbitrary and capricious manner, based on the content of his speech**

The Claim alleges that the City's enforcement of the applicable ordinances is arbitrary and capricious as it relates to Ehlers. The Claim states in this regard:

> On information and belief, Mr. Ehler [sic] alleges that the City's enforcement of the applicable ordinance provision are [sic] arbitrary and capricious and the standards and procedures applied in his case are intentionally different because of the content of his speech. The City has ignored numerous non-compliant banners, murals, and billboards, including those larger than Mr. Ehler's [sic] and in close proximity to Mr. Ehler's location. The distinction between his banners and the other non-compliant banners, murals, and billboards is the content of the speech as none of the others criticize Richard [sic] Pacheco.

---

[12] *Id.* (emphasis added).

[13] Moreover, BPMC § 15.01 authorizes generally the assessment of administrative fines and penalties in addition to all other remedies that may be pursued by the City to address a violation of a code or ordinance. It provides:

> Each violation of a provision of a code or ordinance shall be subject to an administrative fine and penalty pursuant to this chapter. The provisions of this chapter relating to administrative fines and penalties are in addition to all other remedies, criminal and civil, which may be pursued by the city to address a violation of a code or ordinance, and the administrative citation process described in this chapter does not preclude the city from penal or civil enforcement of a code or ordinance, nor from recovering code violation abatement costs incurred by the city under any applicable provision of law. The determination to issue an administrative citation in addition to or in lieu of any other available remedy shall be at the sole discretion of the city.

ALBRIGHT, YEE & SCHMIT, APC

Ehlers v. Baldwin Park
November 15, 2019
Page 7

There is no basis for this Claim. First, the City has cited Ehlers for failure to obtain a permit. Ehlers has indeed failed and refused to obtain a permit, and therefore, was ordered to take the corrective measure of removing the signs and was fined for failing to do so. Moreover, contrary to the allegations of the Claim, the City has not ignored any non-compliant banners, murals or billboards in the City, and the Claim sets forth no examples of selective enforcement by the City.[14] In fact, the City has identified other instances in which the applicable law was enforced against other residences or businesses. Thus far, you have not provided any addresses where you claim illegal banners exist and have not been subjected to enforcement by the City. The City knows of no such locations.

## II. A COMPLAINT FILED BY EHLERS BASED ON THE CLAIM IS SUBJECT *TO CAL. CODE CIV. PROC.* § 128.7

California *Code of Civil Procedure* § 128.7 authorizes a court to strike a complaint and award sanctions upon a finding that the complaint is frivolous or was filed for an improper purpose.[15] An attorney who presents a pleading or similar paper to a court certifies implicitly that it has legal and factual merit.[16] More specifically, an attorney certifies that the pleading is not being presented for an improper purpose, such as harassment, and that the factual contentions have evidentiary support.[17]

The statute provides for a 21-day period during which a plaintiff and his attorney may avoid sanctions by dismissing the complaint outright.[18] When a party does not take advantage of the safe harbor period, the "statute enables courts to deter or punish frivolous filings which disrupt matters, waste time, and burden courts' and parties' resources."[19]

Based upon our investigation of the underlying facts and evaluation of applicable law, we believe your allegations that Mr. Ehlers' First Amendment or California Constitutional rights to free speech have been violated, are meritless, and that the filing of a lawsuit based upon the allegations set forth in the Claim would subject you to sanctions under California law.

---

[14] It is our understanding that the City has requested that you provide the locations of any sites as to which you claim the City has ignored non-compliant banners, murals or billboards. The City has not, to this date, received such information.

[15] *See Cal. Code Civ. Proc.* § 128.7(b)(2)-(4) and 128.7(d).

[16] *Cal. Code Civ. Proc.* § 128.7; *see also Murphey v. Tale Materials Handling Corp.*, 54 Cal.App.4th 619, 623(1997).

[17] *Cal. Code Civ. Proc.* § 128.7 (b)(1) and (3).

[18] *Cal. Code Civ. Proc.* § 128.7 (c)(1).

[19] *In re Mark B.*, 149 Cal.App.4th 61, 76 (2007) ; *see also Peake v. Underwood*, 227 Cal.App.4th 428, 441 (2014) ("A court has broad discretion to impose sanctions if the moving party satisfies the elements of the sanctions statute.").

ALBRIGHT, YEE & SCHMIT, APC

Ehlers v. Baldwin Park
November 15, 2019
Page 8

Based on the foregoing, we request, which shall constitute a formal demand, that you and your client refrain from filing a lawsuit based upon the factual allegations and legal theories set forth in the Claim. This correspondence shall constitute notice that should you proceed to file such a lawsuit, the City will invoke its rights to pursue sanctions and dismissal pursuant Section 128.7 and procedure set forth therein.

Should you have questions or concerns respecting the foregoing, please contact the undersigned.[20]

Very truly yours,

ALBRIGHT, YEE & SCHMIT, APC

Johnny Darnell Griggs, Esq.

---

[20] Nothing herein is intended to be a full statement or explication of the underlying facts, issues, or legal theories relating to the matters addressed herein. Further, nothing herein should be construed as a full recitation of the Cities rights, remedies or defenses, all of which are expressly reserved hereby.