1  BROWNSTEIN HYATT FARBER SCHRECK, LLP
   MITCHELL J. LANGBERG (State Bar No. 171912)
2  mlangberg@bhfs.com
   EMILY L. DYER (State Bar No. 321707)
3  edyer@bhfs.com
   2049 Century Park East, Suite 3550
4  Los Angeles, CA 90067
   Telephone:  702.464.7098
5  Facsimile:   310.500.4602

6  Attorneys for Defendant
   CITY OF BALDWIN PARK
7

8              **UNITED STATES DISTRICT COURT**

9        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

10

11 BALDWIN PARK FREE SPEECH          CASE NO.:  2:19-cv-09884 CAS-E
   COALITION, an unincorporated
12 association; ROBERT EHLERS, an    Assigned to Honorable Christina A. Snyder
   individual,
13                                   **DEFENDANT'S OPPOSITION
                 Plaintiffs,         TO PLAINTIFFS' MOTION FOR
14                                   A PRELIMINARY INJUNCTION**
   v.
15
   CITY OF BALDWIN PARK,
16
                 Defendant.
17

18

19

20

21

22

23

24

25

26

27

28
                                    1

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     FACTUAL BACKGROUND .............................................................. 4

        A.      The Parties............................................................................... 4

        B.      The City Revised the Code After this Court's Ruling in a
                Similar Action ......................................................................... 4

        C.      Ehlers Places Two Non-Compliant Signs On the Property and
                the City Issues Notices and Citations in Response ................. 6

        D.      Plaintiffs File Suit Against the City and Seek a Preliminary
                Injunction ................................................................................ 6

        E.      Relevant Ordinances ............................................................... 6

III.    LEGAL STANDARD ........................................................................ 8

IV.     LEGAL ARGUMENT ....................................................................... 8

        A.      Plaintiffs Fail to Demonstrate a Likelihood of Success on the
                Merits of Their Constitutional Challenge ............................... 8

                1.      The Sign Ordinance is a Narrowly Tailored Content-
                        Neutral Law ................................................................. 9

                2.      The Code is Not a Prior Restraint on Speech ............ 18

                3.      Alleged "Rampant" Code Violations Are Not Supported
                        and Irrelevant to the Constitutional Analysis ........... 19

                4.      The Fee to Obtain a Sign Permit is Not an
                        Unconstitutional Tax ................................................. 21

        B.      Plaintiffs Fail to Demonstrate Irreparable Harm ................. 22

        C.      The Balance of Hardship Tips in the City's Favor ............... 23

        D.      Public Interest Favors Reasonable Regulation of the Size,
                Location, and Non-Communicative Nature of Signs ........... 23

V.      CONCLUSION ................................................................................ 24

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alexander v. United States,*
    509 U.S. 544 (1993) ........................................................................................... 21

*Baldwin v. Redwood City,*
    540 F.2d 1360 (9th Cir. 1976) ..................................................................... 23, 24

*Caribbean Marine Servs. Co. v. Baldrige,*
    844 F.2d 668 (9th Cir. 1988) ............................................................................. 25

*City of Ladue v. Gilleo,*
    512 U.S. 43 (1994) ..................................................................... 12, 16, 19, 20

*City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,*
    541 U.S. 774 (2004) ........................................................................................... 21

*Clear Channel Outdoor, Inc. v. City of N.Y.,*
    594 F.3d 94 (2d Cir. 2010) ................................................................................. 19

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach,*
    657 F.3d 936 (9th Cir. 2011) ..................................................................... 11, 16

*Cox v. State of New Hampshire,*
    312 U.S. 569 (1941) ........................................................................................... 24

*E. Conn. Citizens Action Grp. v. Powers,*
    723 F.2d 1050 (2d Cir.1983) ............................................................................. 23

*Foti v. City of Menlo Park,*
    146 F.3d 629 (9th Cir. 1998) ............................................................................. 17

*Freeman v. City of Santa Ana,*
    68 F.3d 1180 (9th Cir. 1995) ............................................................................. 23

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990) ........................................................................................... 21

*Get Outdoors II, LLC v. City of San Diego, Cal.,*
    506 F.3d 886 (9th Cir. 2007) ..................................................................... 12, 17

*Icon Groupe, LLC v. Washington Cty.,*
    No. 3:12-cv-1114-AC, 2015 WL 3397170 (D. Or. May 26, 2015) ....................... 17

*Lone Star Sec. & Video, Inc. v. City of Los Angeles,*
    989 F. Supp. 2d 981 (C.D. Cal. 2013), aff'd, 827 F.3d 1192 (9th Cir. 2016) ................. 16, 17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

ii

*Long Beach Area Peace Network v. City of Long Beach*
  574 F.3d 1011 (9th Cir. 2009) .................................................................... 15

*Mazurek v. Armstrong,*
  520 U.S. 968 (1997) .................................................................................. 9

*Members of City Council of City of L.A. v. Taxpayers for Vincent,*
  466 U.S. 789 (1984) .................................................................................. 16

*Metromedia, Inc. v. City of San Diego,*
  453 U.S. 490 (1981) .................................................................................. 17

*Murdock v. Pennsylvania,*
  319 U.S. 105 (1943) .......................................................................... 23, 25

*One World One Family Now v. City & Cty. of Honolulu,*
  76 F.3d 1009 (9th Cir. 1996) .................................................................... 17

*Police Dep't of City of Chicago v. Mosley,*
  408 U.S. 92 (1972) .................................................................................. 11

*Reed v. Town of Gilbert,*
  135 S. Ct. 2218 (2015) ................................................................ 1, 11, 12, 13

*Stonewall Union v. City of Columbus,*
  931 F.2d 1130 (6th Cir. 1991) .................................................................... 24

*Sugarman v. Vill. of Chester,*
  192 F. Supp. 2d 282 (S.D.N.Y. 2002) ........................................................ 12

*Twitter, Inc. v. Sessions,*
  263 F. Supp. 3d 803 (N.D. Cal. 2017) ................................................ 10, 21

*Ward v. Rock Against Racism,*
  491 U.S. 781 (1989) ........................................................................ 11, 15, 16

*Winter v. Natural Res. Def. Council, Inc.,*
  555 U.S. 7 (2008) .................................................................................. 9, 25

*World Wide Rush, LLC v. City of Los Angeles,*
  606 F.3d 676 (9th Cir. 2010) .............................................................. 14, 17

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

iii

**Local City Statutes**

Baldwin Park Municipal Code

§ 153.070 ........................................................................................................ 18, 25
§ 153.170 ........................................................................................................ *passim*
§ 153.170.010 .................................................................................................. 17, 26
§ 153.170.010(G) ............................................................................................. 17
§ 153.170.030(A) ............................................................................................. 7
§ 153.170.030(B) ............................................................................................. 8
§ 153.170.040 .................................................................................................. *passim*
§ 153.170.040(b) ............................................................................................. 19
§ 153.170.040(C)(1) ........................................................................................ 8, 14
§ 153.170.040(C)(1)(a)-(d) ............................................................................. 1, 2
§ 153.170.060 .................................................................................................. 6, 8, 19
§ 153.170.080 .................................................................................................. 6
§ 153.210 ........................................................................................................ 8
§ 153.210.090 .................................................................................................. 6
§ 153.210.240-270 ........................................................................................... 4
§ 153.210.260 .................................................................................................. *passim*
§ 153.210.260(A)-(B) ....................................................................................... 21
§ 153.210.265(A) ............................................................................................. 2, 6, 21
§ 153.210.265(A)-(B) ....................................................................................... 9
§ 153.220.200 .................................................................................................. 6

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

In 2017, the City of Baldwin Park revised its municipal code to eliminate the constitutional infirmities of its prior sign ordinances.  This Court had enjoined enforcement of portions of the ordinance because of content-based provisions that violated standards recently announced by the United States Supreme Court in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).[1]  The new sign ordinance is content-neutral—making ***no*** distinction based on the content of any sign.  In all respects, the new sign ordinance complies with the applicable constitutional standards.

In challenging the new sign ordinance, Plaintiffs in this case (who appear to be closely related to the plaintiffs in the prior case) disregard the substantial amendments that have been made to the ordinance.  Indeed, whether by intent or neglect, in the introduction of their motion, Plaintiffs inaccurately represent the provisions of the new sign ordinance in a way that changes the entire constitutional analysis that applies.  Comparing Plaintiffs' claims about what the sign ordinance provides to its actual provisions reveals that the new sign ordinance ***is not*** an impermissible content-based restriction on speech.

| *Plaintiffs claim:* | *But, the Truth is:* |
|---|---|
| "A permit must be submitted for a temporary sign on commercial property."  Mot., 2:15-16. | Baldwin Park Municipal Code (the "Code") § 153.170.040(C)(1)(c) and (d) allows a person to display up to ***four*** temporary window signs (with size limits) and ***eight*** other temporary signs (with size limits), ***without any permit*** |

---

[1] Generally, the Court granted a preliminary injunction because the prior sign ordinance had unjustifiable content-based restrictions pertaining to who the speakers were (new businesses versus other entities), the type of event (flags on certain holidays but not others), or the proximity to an election.  However, it denied the injunction as it related to size and duration limitations.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

| | |
|---|---|
| | *requirement whatsoever.* |
| The new sign ordinance "make no allowance for spontaneous speech in reaction to current events." Mot., 2:16-17. | Code § 153.170.040(C)(1)(a)-(d) allows the posting of flags, permanent signs, and temporary signs (all with size limits) as soon as the poster desires to do so, ***without any requirement for a permit or any prior notice to the City.*** |
| "The period for approval of a 'temporary' sign is a ***minimum*** of 30 days and a maximum of 45 days." Mot., 2:17-18 (emphasis added). | For non-exempt temporary signs (because they exceed the size limit), permit applications must be determined ***within*** 21 days. Code § 153.210.265(A). Most are approved ***at the counter*** when the application is submitted. Declaration of Ronald Garcia ("Garcia Decl."), ¶7. Otherwise, they are typically approved within two days. Garcia Decl., at ¶8. |
| The new sign ordinance "restricts temporary signs to only four times a year and no more than 30 consecutive days." Mot., 2:20-21. | Code § 153.170.040(C)(1)(a)-(d) permits the posting of flags, permanent signs, and temporary signs (all with size limits) ***without any limit on duration or frequency.*** |
| When seeking a permit, "no standards or guidelines limit unbridled discretion by the City." Mot., 2:10. | Code § 153.210.260 expressly provides that "[a] sign permit ***shall be granted*** when the City Planner finds the proposed sign to be in conformance with all applicable provisions of this |

2

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
CASE NO.  2:19-CV-09864 CAS-E

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

chapter, the Sign Design Guidelines and other applicable regulations." (emphasis added).   In other words, if the sign complies with the law, there is no discretion to be exercised in the permit process.

In truth, ***without seeking any permission from the City***, Code § 153.170.040 allows a person to immediately display:

- Up to 20 flags or pennants with a combined area no more than 80 square feet, with no individual item more than 15 square feet,

  *and*

- Up to 15 permanent signs with a combined area no more than 45 square feet, with no individual item more than 15 square feet,

  *and*

- Up to four temporary window signs with a combined area no more than 24 square feet, with no individual item more than 12 square feet,

  *and*

- Up to eight other temporary signs with a combined area no more than 30 square feet, with no individual item more than 15 square feet.

All of this is permissible under applicable constitutional law and is consistent with this Court's prior ruling.

Truly confusing is why Plaintiffs seek to enjoin enforcement of the very section of the Code which ensures their freedom to post their messages (political or otherwise) without City consent, without fee, and without delay.  Plaintiffs' Notice of Motion and Proposed Order expressly seek an injunction prohibiting the enforcement of Code § 153.170.040, claiming it is content-based, even though that

3

ordinance allows them to post a sign with the very content as the one at issue here.[2]

Truth be told, this lawsuit is *only* about Plaintiffs' misguided belief that they have an absolute right to post a sign as big as a building. They are wrong. Both their motion and their lawsuit are untenable. The law is clear that a city may impose content-neutral time, place, and manner restrictions, such as regulating the physical characteristics of signs. As is the case with Code § 153.170.040, such regulations need only be narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication. In fact enjoining enforcement of Code § 153.170.040 would disrupt the narrowly tailored regulatory scheme the City designed to serve its significant interests: protecting *both* the right to free speech *and* community design and safety standards.

Plaintiffs cannot establish that they are likely to succeed on the merits of their claim or that they will suffer irreparable injury absent an injunction. Plaintiffs are free to post signs containing their thoughts and opinions. They simply must do so with one or more of the numerous signs exempt from the permit requirement or, if they insist on posting a very large sign, they must obtain a permit or variance.

Accordingly, the City respectfully requests that this Court deny Plaintiffs' Motion in its entirety.

## II. FACTUAL BACKGROUND.

---

[2] It is unclear what Plaintiffs' desired relief is in filing this Motion. Plaintiffs expressly seek a preliminary injunction only halting the City's enforcement of Code § 153.170.040 (Exempt Signs). But, in successive breaths, Plaintiffs appear to argue an injunction should be entered for all provisions in Code § 153.170 or the permitting requirements under Code § 153.210.240-.270. Due to this ambiguity, the City's counsel asked Plaintiffs' counsel to clarify the specific relief Plaintiffs seek. Declaration of Mitchell Langberg, Esq., at ¶¶4-5 ("Langberg Decl."); Appendix ("App."), Exh. 2. Plaintiffs' counsel responded that Plaintiffs seek an order enjoining the "Temporary Sign" provision, and pointed counsel to Plaintiffs' proposed order. Langberg Decl., at ¶6. Plaintiffs' proposed order seeks an order enjoining Code § 153.170.040, the "Exempt Sign" provision. The City's counsel again asked Plaintiffs' counsel to clarify, but did not receive a response. Langberg Decl., at ¶7. Therefore, while the City responds to the arguments made by Plaintiffs, it remains unclear exactly what relief is sought.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

4

## A. The Parties.

Plaintiff Robert Ehlers ("Ehlers") is a purported member of Plaintiff Baldwin Park Free Speech Coalition ("BPFSC", collectively with Ehlers, "Plaintiffs"), an association that purports to promote transparency in local governance.[3]  Defendant City of Baldwin Park is a California municipal entity.[4]

## B. The City Revised the Code After this Court's Ruling in a Similar Action.

On December 12, 2016, Plaintiffs' associates and present counsel filed suit against the City, and sought an *ex parte* temporary restraining order related to the City's sign provisions of the Code.[5]  The matter was assigned to this Court.  While a motion for preliminary injunction was pending, the City Council adopted Ordinance No. 1397, which amended the sign ordinance in an attempt to remedy any constitutional issues in the prior ordinance.

After additional briefing and rulings by this Court, the plaintiffs filed an amended complaint and renewed their motion for a preliminary injunction based on alleged injuries suffered from the new sign provisions, arguing, among other things, that (1) the modified Code § 153.170.040 was content based because it elevated commercial speech over non-commercial speech and (2) the revised residential property sign ordinances were unconstitutionally content based.[6]

The Court expressly denied the plaintiffs' motion as to provisions imposing size limits on residential signs.  As to portions the Court deemed content-based restrictions, the Court granted the motion.[7]  As they reported to the Court in their

---

[3] *See* Amended Complaint, at ¶10 (Dkt. #9), filed herein on November 25, 2019 ("Am. Compl.").
[4] Am. Compl., at ¶14.
[5] *See* www.RicardoPacheco.com et al. v. City of Baldwin Park, filed in the United States District Court for the Central District of California, Western Division, Case No. 2:16-cv-09167-CAS-GJS (the "Prior Action").
[6] *See* First Amended Complaint (Dkt. #36), filed May 31, 2017 in Case No. 2:16-cv-09167-CAS-GJS; Memorandum of Points and Authorities in Support of Renewed Motion for a Preliminary Injunction (Dkt. #37-1), filed May 31, 2017 in Case No. 2:16-cv-09167-CAS-GJS.
[7] *See* Civil Minutes (Dkt. #42), dated July 10, 2017, Case No. 2:16-cv-09167-CAS-GJS; see also Civil Minutes (Dkt. #44), dated July 20, 2017, Case No. 2:16-cv-09167-CAS-GJS (entering the jointly submitted proposed language for the Court's Order).

December 4, 2017, Joint Report of Counsel re: Status of Settlement Agreement, the parties ultimately entered into a settlement agreement.[8]

Even before the parties submitted their status report to this Court, on November 15, 2017, the City Council held a meeting and public hearing and amended the Code, specifically modifying §§ 153.170.040, 153.170.060, 153.210.090, 153.220.200, 153.170.080, and deleting the enjoined provisions.[9]

Section 153.170.040 of the new sign ordinance creates a class of exempt signs that does not distinguish based on content.  Rather, the applicability of an exemption is based only on size and quantity.  A person seeking to post a sign within the sizes allowed by the exemption need not seek a permit, provide advanced notice to the City, or pay any fee.  To the extent a sign is larger or more numerous than those exempted, a person must merely seek a permit or variance. The permitting process is quick (often granted at the time of application).[10]  The permit application fee of $21.00 is the City's best estimate for the costs it incurs in relation to that process.[11]

### C.   Ehlers Places Two Non-Compliant Signs On the Property and the City Issues Notices and Citations in Response.

On or about April 17, 2019, the City became aware of two oversize, unpermitted identical banners placed on the East and West sides of a commercial property located at 15110 Ramona Road, Baldwin Park, CA 91706-0000 (the "Property").  As the photos attached to Plaintiff Ehlers' declaration show, the banners were nearly as large as the building to which they were attached.

After multiple attempts to gain compliance, the City issued a Notice of Violation, and, ultimately several citations related to the improper signs.  To date,

---

[8] *See* Joint Report of Counsel re: Status of Settlement Agreement (Dkt. 55), filed on December 4, 2017 in Case No. 2:16-cv-09167-CAS-GJS.
[9] *See* Amended Minutes, Baldwin Park City Council Regular Meeting, November 15, 2017, attached hereto as Exhibit.
[10] Code §153.210.265(A).  Most are approved at the counter when applications is made.  Garcia Decl., ¶7.  Otherwise, they are typically approved within two days.  Garcia Decl., ¶8.
[11] Declaration of Benjamin ("B. Martinez Decl.") at ¶12.

6

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

the oversize signs remain.

### D. Plaintiffs File Suit Against the City and Seek a Preliminary Injunction.

Plaintiffs filed this lawsuit against the City, alleging the following Claims for Relief: (1) 42 U.S.C. § 1983: First Amendment; California Constitution Article I, §§ 2 and 3; (2) 42 U.S.C. § 1983: Fourteenth Amendment (Due Process); California Constitution Article I, § 7; (3) 42 U.S.C. § 1983: Eighth and Fourteenth Amendment; California Constitution Article I, § 13 Excessive Fines; (4) 42 U.S.C. § 1983: First Amendment Retaliation by Plaintiff Robert Ehlers against the City; and (5) California Civil Code § 52.1: The Bane Act.[12]  A month later, Plaintiffs filed this Motion seeking a preliminary injunction.  Plaintiffs specifically request that this Court enjoin the City from enforcing Code § 153.170.040.

### E. Relevant Ordinances.

Code § 153.170 identifies three categories of signs: (1) exempted signs, which require no permits, (2) signs requiring permits, and (3) signs requiring variances.  *See* Code § 153.170.030(A) ("Unless otherwise exempted by § 153.170.040, a sign permit shall be required prior to the placement, construction or physical alteration of the size, height or location of any sign or advertising display in the city.").

Pursuant to Code § 153.170.040, the following types of signs are exempt from any permit or variance requirements ("Exempt Signs"):

(a)   Up to 20 flags or pennants with a combined area of no more than 80 square feet on a staff or pole of no longer than 20 feet, however, no individual flag or pennant may exceed 15 square feet in area;

(b)   Up to 15 permanent signs with a combined area of no more than 45 square feet and a height of no more than eight feet, however, no individual sign may exceed 15 square feet in area;

---

[12] *See* Complaint, Dkt. #1, filed herein on November 18, 2019; Amended Complaint (Dkt. #9), filed herein on November 25, 2019.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

(c)   Up to four temporary window signs with a combined area of no more than 24 square feet, however, no individual sign may exceed 12 square feet in area and no more than 40% of the area of any given window may be covered by window signs;

(d)   Up to eight other temporary signs with a combined area of no more than 30 square feet and a height of no more than four feet, however, no individual sign may exceed 15 square feet in area. Size limits for window signs with transparent backgrounds (instead of opaque backgrounds) placed on glass doors are doubled; ….

Code § 153.170.040(C)(1).

*In addition to exempt signs*, and after application for and approval of a permit pursuant to Code § 153.210, a single banner not exceeding 35 square feet may be displayed on non-residential properties for a maximum of 30 consecutive days for up to four nonconsecutive times within a 12-month period ("Temporary Permitted Signs").   Code § 153.170.060.   Signs that are not compliant with Temporary Permitted Signs or Exempt Signs may only be hung if a variance is obtained under Code § 153.210.  Code § 153.170.030(B).

Code § 153.210 details the requirements to obtain a sign permit for non-exempt signs.  To apply for a permit, an applicant must pay $21 per sign; complete an application; provide information on the height, width, and language of the proposed sign; and submit a copy of a business license or an application with validation.[13]  The application requests the following information: (1) sign address, (2) owner, (3) mailing address, (4) business name, and (5) the applicant's signature.[14]   Additionally, the application asks for the date the sign is to be displayed, the date it is to be removed, the days in place, the type of sign, a description, and a copy or drawing of the sign.[15]

A sign permit will be granted "when the City Planner finds the proposed

---

[13] *See* B. Martinez Decl., at ¶8.
[14] *See* B. Martinez Decl., at ¶9; App Ex. 1.
[15] *See* B. Martinez Decl., at ¶9; App. Ex. 2.

8

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

sign to be in conformance with all applicable provisions of this chapter, the Sign Design Guidelines and other applicable regulations." Code § 153.210.260. In other words, if the proposed sign conforms to the Code and the applicant has paid the appropriate fee, a sign permit will be issued.[16] The City must approve or deny a request for a temporary sign permit **within** 21 days of submission, and a request for a permanent sign permit within 63 days of submission. Code § 153.210.265(A)-(B). Typically, a temporary sign permit will be issued immediately over the counter once it is determined that the permit application is complete and the fees paid.[17]

## III.    LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." (quotation omitted)). To warrant this extraordinary remedy, Plaintiffs must demonstrate that they are "likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Here, Plaintiffs have failed to establish the necessary elements to secure this extraordinary remedy. This Court should deny Plaintiffs' Motion.

## IV.    LEGAL ARGUMENT.

### A.    Plaintiffs Fail to Demonstrate a Likelihood of Success on the Merits of Their Constitutional Challenge.

The crux of Plaintiffs' claims is that "[t]he Code makes no allowance for spontaneous speech in reaction to current events."[18] A simple reading of Code §

---

[16] B. Martinez Decl., at ¶11.
[17] Garcia Decl., at ¶7.
[18] Mot., at 2.

9

153.170.040 belies Plaintiffs' contention.  The Code is not an unconstitutional ban on speech because (1) § 153.170.040 is a content-neutral regulation that imposes a narrowly tailored time, place, and manner restriction (in the form of size and quantity) that serves significant government interests and ample alternative channels of communication exist, (2) the permit requirement is not an unconstitutional prior restraint because there is no restriction on speech prior to posting an exempt sign regardless of content.  For larger signs, there are specific deadlines for permit review.  And, there is no discretion exercised by the City as to whether to grant or deny the permit, and (3) the permit fee is not an unconstitutional tax because it is not a revenue raising scheme.

### 1.  The Sign Ordinance is a Narrowly Tailored Content-Neutral Law.

The City's sign ordinance regulates only the physical characteristics of signs, regardless of their content.  In an effort to force application of the strict scrutiny standard, Plaintiffs' only argument that the sign ordinance is a content-based regulation is based on: (1) the requirement to reveal the content of a proposed sign to obtain a permit and (2) that the false allegation that the permit review time period and the restrictions on how long a non-exempt temporary sign can be displayed forecloses "spontaneous speech."[19]  But, Plaintiffs' contention is refuted by the fact that no permit is required for exempt (based on size and quantity) signs and any "spontaneous speech" can be placed immediately on a sign fitting the exemptions (based on size and quantity).  For larger signs, the permit determination is not discretionary and, therefore, not based on content.

### a.  *Intermediate Scrutiny is the Proper Standard to Review the Sign Ordinance Because it is Content-Neutral.*

The First Amendment of the United States Constitution guarantees the right of free speech.  Such right, however, is not absolute and can be regulated.  *Twitter,*

---

[19] Mot., at 8-9.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
CASE NO.  2:19-CV-09864 CAS-E

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

*Inc. v. Sessions*, 263 F. Supp. 3d 803, 809 (N.D. Cal. 2017) ("First Amendment rights are not absolute and do not automatically override all other constitutional values."). A governmental entity can regulate speech so long as such regulations are not based on "its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2226. Therefore, content-based laws are subject to strict scrutiny.

On the other hand, like the City's sign ordinance, "[l]aws that are content neutral are instead subject to lesser scrutiny." *Id.* at 2232. "For content-neutral regulations, the State may limit 'the time, place, and manner of expression' if the regulations are 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940 (9th Cir. 2011) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). "[R]estrictions on the time, place, or manner of protected speech are not invalid 'simply because there is some imaginable alternative that might be less burdensome on speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 797 (1989) (citation omitted). Thus, content-neutral laws are subject to this intermediate scrutiny standard.

Laws that are facially content-neutral are only subject to strict scrutiny if they "cannot be justified without reference to the content of the regulated speech, or that were adopted by the government because of disagreement with the message [the speech] conveys." *Reed*, 135 S. Ct. at 2227 (citations and quotation marks omitted).

Here, the sign ordinance is content neutral on its face and in its effect. The Code merely regulates the size and quantity of exempt signs that may be hung in

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

the City.  For larger signs, the sign ordinance further regulates the length of time a sign may be hung.  It is well settled that such sign regulations are content-neutral and constitutional.  As Justice Alito has stated:

> I will not attempt to provide anything like a comprehensive list, but here are some rules that would not be content based:
>
> Rules regulating the size of signs. These rules may distinguish among signs based on any content-neutral criteria, including any relevant criteria listed below.
>
> Rules regulating the locations in which signs may be placed. These rules may distinguish between free-standing signs and those attached to buildings. …"

*Reed*, 135 S. Ct. at 2233 (J. Alito, Concurrence); *see also City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("It is common ground that governments may regulate the physical characteristics of signs—just as they can, within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise."); *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 893 (9th Cir. 2007) ("Size and height restrictions on billboards are evaluated as content-neutral time, place and manner regulations."); *Sugarman v. Vill. of Chester*, 192 F. Supp. 2d 282, 293 (S.D.N.Y. 2002) (concluding that "sections of the ordinance requiring permit fees are content-neutral and impose reasonable time, place or manner restrictions").

In *Reed*, the Supreme Court held that the law at issue was "content based on its face" because it imposed different restrictions on signs based "entirely on the communicative content of the sign" by categorizing signs into such categories as "Ideological Sign[s]," "Political Sign[s]," and "Temporary Directional Signs Relating to a Qualifying Event."  *Id.* at 2224-25, 2227.  The City's sign ordinance avoids those constitutional infirmities.  To begin, the Code ***does not*** categorize signs based on their content, such as political or ideological content.  In stark contrast to the law at issue in *Reed*, the Code merely imposes reasonable restrictions on the size, duration of the display (for non-exempt sings), and number

12

of signs.  Code §§ 153.170.040; 153.170.060.  Also, unlike the law in *Reed*, the Code's regulations on the physical characteristics of a sign do not restrict speech based on its communicative content.  The size of a sign is wholly unrelated to the content it communicates.

### b.    The Requirement to Disclose the Content of a Sign on a Permit Application for an Oversize Sign Does Not Make the Sign Ordinance a Content-Based Regulation.

Though an application for a permit asks the applicant to provide the content of their sign, all applications which meet the objective criteria of the Code must be approved.  ***Approval is not based on content.***    Thus, contrary to Plaintiffs' contention, this part of the application is not akin to regulating signs ***based*** on their content.

Even though an applicant may have to submit the proposed content of the sign to obtain a permit, the Code does not provide for a discretionary review of the permit.  Indeed, for a permit to be approved, the proposed sign must merely comply with the ***physical*** characteristic restrictions in the Code.  *See* Code § 153.210.260.  There is no discretion for the City Planner to deny a permit based on the content of the sign.  Simply, the approval or rejection of a permit is not based on the content.[20]  The mere fact that the content of a sign must be submitted does not make the regulation impermissibly content based because a permit cannot be denied based on the proposed content.

### c.    The Permit Approval Process Does Not Foreclose "Timely" or "Spontaneous" Speech and Does not Make the Sign Ordinance Content-Based.

Again, a person can post any exempt sign they would like without any approval by the City, permit application, or payment of a fee.  Those exemptions

---

[20] Requiring the content to be identified has obvious purpose unrelated to regulating speech based on content.  By way of example only, having the content listed on the permit applications allows those enforcing the sign ordinance to determine if a particular sign that has been reported by a citizen has been permitted.

13

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

1    are based only on size and quantity—not content.  Thus, the argument that the sign
2    ordinance forecloses "timely" or "spontaneous" speech is meritless.

3            Plaintiffs falsely claim that someone who wants to post a spontaneous sign
4    must wait a minimum of 30 days to obtain a permit.  Thus, they argue, because
5    spontaneous speech is prohibited, the law is content-based.  Yet, the very Code
6    section Plaintiffs seek to enjoin, § 153.170.040, allows for immediate speech by
7    allowing numerous types and sizes of signs without a permit.  *Cf. World Wide*
8    *Rush, LLC v. City of Los Angeles*, 606 F.3d 676, 685 (9th Cir. 2010) (noting that
9    the effect of a challenged regulation on speech must "be evaluated in the context of
10   the entire regulatory scheme, rather than in isolation" (citation omitted)).

11           In their attempt to frame "timely speech" as a type of content the Code
12   allegedly restricts, Plaintiffs assert a misleading and unpersuasive hypothetical.
13   Plaintiffs pose a scenario involving a person's desire to hang an "Impeach Trump"
14   sign for the impeachment hearings but a different sign for the Senate's
15   impeachment trial a short time later in an attempt to "illustrate" that the Code
16   purportedly forecloses "timely speech on a core political issue."[21]  Again, Plaintiffs
17   fail to consider the entire Code.  The Code exempts numerous sizes of signs from
18   any permit requirements.   Code  §  153.170.040(C)(1).   Employing Plaintiffs'
19   scenario, a person could freely hang numerous 15 square foot signs without
20   obtaining a permit for the impeachment hearings, and then could hang different 15
21   square foot signs for the Senate's impeachment trial as soon as it was announced.

22           In the same vein, Plaintiffs inaccurately contend that the permit requirement
23   and requirement of advance notice "forecloses spontaneous expression and inhibit
24   speech."[22]  But, as already addressed several times, the Code merely regulates
25   unfettered expression in the form of oversize signs by requiring a permit or
26   variance.  It leaves Plaintiffs free to post smaller signs without a permit or advance

27
28   [21] Mot., at 9.
     [22] Mot., at 15.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

14

notice.

Plaintiffs misapply the relevant case law on which they rely.[23]  In *Long Beach Area Peace Network v. City of Long Beach*, the Ninth Circuit considered whether a 24-hour advanced permit requirement for a public protest was an unreasonable time, place, or manner restriction.  574 F.3d 1011, 1025 (9th Cir. 2009).  Recognizing that political speech is often connected to events of the moment and that the message will be lost if the speaker is delayed in speaking, the Ninth Circuit noted that "to comport with the First Amendment, a permitting ordinance must provide some alternative for expression concerning fast-breaking events."  *Id.* at 1038.  However, that court explained that courts will generally "not strike down a governmental action for failure to leave open ample alternative channels of communication ***unless the government enactment will foreclose an entire medium of public expression across the landscape of a particular community or setting***."  *Id.* (emphasis added) (quoting *Ctr. for Fair Pub. Policy v. Maricopa County*, 336 F.3d 1153, 1170 (9th Cir. 2003)).  On that same point, the United States Supreme Court explained (with respect to sound amplification):

> The final requirement, that the guideline leave open ample alternative channels of communication, is easily met. Indeed, in this respect the guideline is far less restrictive than regulations we have upheld in other cases, for it does not attempt to ban any particular manner or type of expression at a given place or time. Rather, the guideline continues to permit expressive activity in the band shell, and has no effect on the quantity or content of that expression beyond regulating the extent of amplification. ***That the city's limitations on volume may reduce to some degree the potential audience for respondent's speech is of no consequence, for there has been no showing that the remaining avenues of communication are inadequate***.

*Ward*, 491 U.S. at 802–03 (emphasis added) (internal citations omitted).

The analysis here is simple: the Code does not require that Plaintiffs obtain a permit to speak; it only requires a permit to speak using a sign of a particular size.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

---

[23] *See* Mot., at 15-16.

15

The Code does not foreclose an entire medium of speech, and an exempt sign (which could be as large as 15 square feet) is no less adequate to communicate to Plaintiffs' desired audience.  Certainly, despite this Court's analysis regarding size restrictions in the prior case, Plaintiffs ***have not presented any evidence to support the contention that the signs that don't require permits would be inadequate***—particularly in light of the numerous exempt signs that are allowed (as listed in the Introduction, above).  Consequently, Plaintiffs have failed to establish that the Code improperly restricts spontaneous speech.

### d.   <u>Code § 153.170 is Narrowly Tailored to Serve Significant Government Interest.</u>

Because the sign ordinance is content-neutral, it need only be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 940 (citation and quotation mark omitted).

The "essence of narrow tailoring" is to "focus[ ] on the source of the evils the [government] seeks to eliminate . . . and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils."  *Ward*, 491 U.S. at 799 n.7.  "To be narrowly tailored, a regulation should 'achieve its ends without restricting substantially more speech than necessary.'"  *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 989 F. Supp. 2d 981, 990 (C.D. Cal. 2013), aff'd, 827 F.3d 1192 (9th Cir. 2016) (citation omitted).

### (1)   <u>The Code Serves Significant Government Interests.</u>

Courts have routinely found that aesthetics and public safety are significant government interests.  *See, e.g.*, *City of Ladue*, 512 U.S. at 48 ("Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.");  *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789,

16

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

805 (1984) ("It is well settled that the state may legitimately exercise its police powers to advance esthetic values."); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city— are substantial governmental goals."); *Lone Star Sec. & Video, Inc.*, 989 F. Supp. 2d at 989  ("[T]raffic safety, parking control, and aesthetics constitute significant, or substantial, government interests." (citation omitted)); *World Wide Rush, LLC*, 606 F.3d at 685 ("As a general matter, there is no question that restrictions on billboards advance cities' substantial interests in aesthetics and safety."); *Get Outdoors II, LLC*, 506 F.3d at 893  ("The Supreme Court has recognized that a city's interests in traffic safety and aesthetics are sufficient government interests for the purposes of this analysis."); *Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th Cir. 1998) ("The City's asserted interests in the ordinance are the oft-invoked and well-worn interests of preventing visual blight and promoting traffic and pedestrian safety."); *One World One Family Now v. City & Cty. of Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996) ("Cities have a substantial interest in protecting the aesthetic appearance of their communities by 'avoiding visual clutter.'" (citation omitted)); *Icon Groupe, LLC v. Washington Cty.*, No. 3:12-cv-1114-AC, 2015 WL 3397170, at *7 (D. Or. May 26, 2015) ("Federal courts routinely recognize beauty and safety as significant governmental interests in the context of freedom of speech claims relating to signs.").

Code § 153.170.010 enumerates the City's interests in enacting sign regulations, including but not limited to, "[r]espect[ing] and protect[ing] the right of free speech by sign display, while reasonably regulating the structure, location and other non-communicative aspects of signs, generally for the public health, safety, welfare and specifically to serve the public interests in traffic and pedestrian safety and community aesthetics."  Code § 153.170.010(G).  The City's stated purposes, including but not limited to, traffic safety and aesthetics, are significant

interests that are served by the City's content-neutral sign regulations.

**(2)**    <u>**The Code is Narrowly Tailored.**</u>

The Code's sign provisions are narrowly tailored to serve the City's safety and aesthetic interests. Indeed, one of the main purposes of restricting the size of signs that can be posted without a permit is to ensure traffic and pedestrian safety as larger signs pose more hazards than smaller signs. Larger signs are more likely to be improperly hung due to their size and weight and can cause more harm if they are not properly affixed. Additionally, excessively large signs tend to be driving distractions. Through the permitting process, the City becomes aware of the location of these larger and potentially more harmful signs.

Plaintiffs contend that the lack of "standards or guidelines for deciding whether to grant or deny a permit" demonstrates that the Code is not narrowly tailored.[24] Again, Plaintiffs' selective reading of the Code defeats their position. The standards and guidelines for reviewing a permit are clear: Code § 153.210.260 provides that for a permit to be approved, the proposed sign must merely be in conformance with the Code and § 153.170 details the size standards that an applicant's sign must comply with to obtain a permit. *See, e.g.*, Code § 153.070 ("General Sign Standards"). The permit provisions provide for a non-discretionary review of the sign permit.[25] Simply, the Code is clear that the City Planner approves permit requests if the application fee is paid and the physical characteristics of the sign comply with Code § 153.170.

Moreover, Plaintiffs falsely claim that "[t]he categories of exempt signs … allow more and larger displays … than Plaintiff may have under the temporary sign provisions."[26] Plaintiffs miss the point. It is within the City's purview to determine that multiple smaller signs are more desirable than one larger sign. It is

---

[24] Mot., at 14.
[25] *See* B. Martinez Decl., at ¶11, 13.
[26] Mot., at 12.

18

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

also within the City's purview to determine that large signs pose more risk or distraction to drivers and, therefore, should be more closely regulated.  The maximum size of an exempt sign is 15 square feet.  Code § 153.170.040.  A temporary sign permit is only required for signs between 15 and 35 square feet.  Code § 153.170.060.  Accordingly, the Code's requirement to obtain a permit for oversize signs is narrowly tailored to serve the City's significant interests.

### e.    *Ample Alternative Channels of Communication Exist.*

The Code leaves open ample alternative channels of communication.  Indeed, the Code does not forbid any medium of expression.  It merely limits unfettered expression in the form of oversize signs by requiring that a permit or variance be obtained prior to display; it leaves Plaintiffs free to post exempt signs without a permit.  *Cf. Clear Channel Outdoor, Inc. v. City of N.Y.*, 594 F.3d 94, 110 (2d Cir. 2010) ("Allowing some signs does not constitutionally require a city to allow all similar signs.").  For example, Plaintiffs can post up to 15 permanent signs that are individually no bigger than 15 square feet, and collectively no bigger than 45 square feet, at any time and for any length of time.   Code § 153.170.040(b).  Should Plaintiff want to post a large sign, Plaintiffs need only obtain a permit or a variance.

Plaintiffs rely on *City of Ladue* for the proposition that "[t]here is no ample alternative to readable signs posted at a location associated with the speakers' business posted in a timely fashion."[27]  In *City of Laude*, the United States Supreme Court determined that an ordinance **prohibiting** homeowners from posting residential signs was unconstitutional because it determined, in part, telephone calls, letters, newspaper advertisements, etc., were not "adequate substitutes" for displaying a sign in one's yard, a relatively inexpensive way of communicating with one's neighbors.  512 U.S. at 45, 56-58.  Unlike in *City of*

---

[27] Mot., at 16.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

19

*Laude* where the ordinance essentially foreclosed an entire medium of speech—lawn signs—the Code merely restricts the size and quantity of signs, but does not entirely prohibit the use of signs.

Second, unlike in *City of Laude* where the Court noted the importance of a sign's location, which may provide the intended audience with information about the speaker to the audience (i.e., the reaction to a sign about the war on a veteran's lawn vs. on a 10-year-old's bedroom window), here, an oversize sign does not provide any additional information about the speaker to the intended audience than an exempt sign. The Code does not preclude Plaintiffs from posting the exact same sign as the one at issue, so long as it conforms to the size requirements or a permit or variance is obtained.

Third, unlike the insufficient alternatives to lawn signs in *City of Laude*—namely telephone calls, letters, newspaper advertisements, etc.—here, an exempt sign reaches the same audience in the same manner as an oversize sign. Indeed, the exempted signs are seen by the same people, can be posted in the same manner, and can display the same communicative content as a larger sign. Thus, *City of Laude* is distinguishable from the present case as alternative avenues of communication exist.

### 2.   The Code is Not a Prior Restraint on Speech.

Plaintiffs baldly contend that the Code is "an unlawful prior restraint."[28] To support this contention, Plaintiffs merely regurgitate prior restraint principles with no argument or analysis as to how or why the sign ordinance is purportedly a prior restraint. Nevertheless, the sign ordinance is not an unlawful prior restraint on speech.

"The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that

[28] Mot., at 2.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). Prior restraints are subject to strict scrutiny. *Twitter, Inc.*, 263 F. Supp. 3d at 810.

Unlike the sign ordinance, in licensing and permitting scenarios, courts have identified two schemes of prior restraints that are routinely found to be unconstitutional. The first scheme is one that "places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990), holding modified by *City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) (citation omitted). The second scheme is "a prior restraint that fails to place limits on the time within which the decision maker must issue the license." *Id.*

Here, the requirement to obtain a permit or variance for larger signs does not fall under either unconstitutional scheme. First, the Code permit requirement does not give City employees the discretion to grant or deny applications based on the content of the proposed sign. *See* Code § 153.210.260 (stating that a sign permit will be approved if it is in conformance with the Code). Instead, the Code only requires the City to ensure that the proposed sign conforms to the size, location, and number of signs prescribed in Code § 153.170. *Id.*[29] Second, the Code provides that a determination on a temporary sign permit will be completed within 21 days of submission and within 63 days for a permanent sign permit. Code § 153.210.260(A)-(B). Notably, these approvals are typically completed at the time of application. Additionally, notice of the City's determination to approve or deny a permit is mailed to the applicant within two business days of the determination. Code § 153.210.265(A). Accordingly, the Code's requirement that a permit must be obtained for oversize signs is not an improper prior restraint on speech.

### 3.   Alleged "Rampant" Code Violations Are Not Supported and Irrelevant to the Constitutional Analysis.

---

[29] *See also* B. Martinez Decl., at ¶11.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

21

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

Plaintiffs claim that the Code sign provisions are unconstitutional because enforcement of the sign ordinance is "lax" or "largely non-existent" as "violations of the Code are rampant."[30] Mr. Ehlers' declaration in support of this contention identifies signs that he "observed" or "was aware of" that "did not appear to conform to the sign ordinance" around the City.[31]

Due to limited resources, the City employs only three code enforcement officers for its Community Enhancement Division.[32] As a result, the Community Enhancement Division relies upon citizens to complain of or report violations.[33] Citizens may report potential violations online through the City's website, or by otherwise contacting City officials or staff.[34] Once the City learns of a potential violation, its code enforcement officers investigate and recommend fines for Code violations.[35] A Code Enforcement Officer assigned to the potential violation conducts an initial investigation by reviewing the report, determining whether a permit or variance was obtained for the reported sign, opening a case, and physically visiting the site of the potential violation.[36]

At bottom, the mere fact that others may defy the sign provisions like Plaintiffs, does not make the sign provisions' unconstitutional. Nonetheless, when Plaintiffs' counsel informed the City that she was aware of signs that violated that sign ordinance, the City requested that she identify those signs so the ordinance could be enforced, but she refused.[37] Only upon the filing of this Motion did the City become aware of the purported violations cited by Plaintiffs, at which time the City's Community Enhancement Division investigated and issued Notices of

---

[30] Mot., at 4-5.
[31] *See* Declaration of Robert Ehlers in Support of Preliminary Injunction ("Ehlers Decl."), at ¶23 (Dkt #13).
[32] Declaration of Jose Martinez, at ¶6 ("J. Martinez Decl.").
[33] J. Martinez Decl., at ¶7.
[34] J. Martinez Decl., at ¶¶5, 8.
[35] J. Martinez Decl., at ¶9.
[36] J. Martinez Decl., at ¶10.
[37] *See* Declaration of Carol Sobel in Support of Preliminary Injunction, Ex. 20 at pg. 7 and fn. 14 (Dkt #12-2).

22

1   Violation (if appropriate) for all potential violations.[38]

2        Plaintiffs fail to provide any evidence that the City only enforces the Code's
3   sign provisions based on the content of the sign.  In fact, the evidence shows
4   otherwise.[39]  The Community Enhancement Division investigates and prosecutes
5   violations of the Code's sign provisions regardless of the content of the sign.[40]
6   Non-conforming non-political signs are routinely cited for violating the sign
7   provisions.  For example, the Appendix of Exhibits includes numerous examples of
8   signs for which the Community Enhancement Division has issued citations,
9   including to all types of non-conforming signs, from those advertising music
10  concerts and electronic recycling, to signs stating "NOW HIRING" and
11  "HALLOWEEN."[41]  A simple review of the cases investigated, notified, and cited
12  disproves Plaintiffs' contention that the Code is unconstitutional based on the
13  City's enforcement efforts.  *Cf. Freeman v. City of Santa Ana*, 68 F.3d 1180, 1188
14  (9th Cir. 1995), as amended on denial of reh'g and reh'g en banc (Dec. 29, 1995)
15  (noting that in an Equal Protection situation, "[s]elective enforcement of valid
16  laws, without more, does not make the [City's] action irrational").

### 4.   The Fee to Obtain a Sign Permit is Not an Unconstitutional Tax.

17
18
19        Generally, the government cannot profit by imposing licensing or permit
20  fees on the exercise of a First Amendment right.  *Murdock v. Pennsylvania*, 319
21  U.S. 105, 113–14 (1943).  Only fees that cover the administrative costs of the
22  permit or license are permissible.  *E. Conn. Citizens Action Grp. v. Powers*, 723
23  F.2d 1050, 1056 (2d Cir.1983).  Courts, however, have routinely found that permit
24  fees are constitutional when the fee is related to regulating the permitted activity.
25  *See, e.g.*, *Baldwin v. Redwood City*, 540 F.2d 1360, 1372 (9th Cir. 1976) ("In some

26
27   [38] *See* J. Martinez Decl., at ¶¶14-40; App Exs. 5-11.
    [39] *See* J. Martinez Decl., at ¶¶41-42.
    [40] *See* J. Martinez Decl., at ¶41.
28   [41] *See* J. Martinez Decl., at ¶42; App Exs. 12-27.

23

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

circumstances a city may both require a permit for activity involving free expression without violating the First Amendment and also collect fees that fairly reflect costs incurred by the city in connection with such activity." (footnotes omitted)); *Cox v. State of New Hampshire*, 312 U.S. 569, 577 (1941) (upholding statute requiring that before a parade could be held on public streets, marchers needed to secure a license and to prepay fees of no more than $300 a day); *Stonewall Union v. City of Columbus*, 931 F.2d 1130, 1137 (6th Cir. 1991) (upholding ordinance that required applicants to pay an $85 fee for a parade permit).

Plaintiffs contend that the $21 fee to obtain a sign permit is unrelated to the cost of processing the application and thus unconstitutional. Plaintiffs offer no reasoning or analysis to support their contention. In truth, the permit fee is directly related to processing the permit application and administering the permit.[42] The application must be submitted to the City's Planning Division.[43] An application for a temporary sign permit is reviewed by any of the following: the City Planner, his or her associate planner, or one of the two planning technicians.[44] Additionally, the Planning Division, which employs 3 code enforcement officers, enforces compliance with the Code for violations of the sign ordinances.[45] Accordingly, the $21 permit fee is reasonable based on the staff and resources necessary to process and enforce the permit requirements.

Moreover, the $21 permit application fee is significantly different than the fees imposed in the case law relied on by Plaintiffs. Indeed, unlike in *Baldwin*, 540 F.2d at 1371, where the Court invalidated a $1 fee imposed for checking 500 posters of identical size because it had no bearing on the relationship to the cost of

---

[42] *See* B. Martinez Decl., at ¶12 ("The $21 administrative fee represents our best good faith estimate of the costs associated with processing the permit application. It is not intended to generate revenue for the City.").
[43] *See* B. Martinez Decl., at ¶10.
[44] *See* B. Martinez Decl., at ¶10.
[45] *See* Garcia Decl., at ¶12.

24

inspection, here, the $21 fee per application is directly related to determining whether a single temporary sign conforms to the standards of Code § 153.070. Further, unlike in *Murdock*, 319 U.S. at 113-14, where the Court invalidated a fee to obtain a license to solicit people to purchase goods because it was an improper tax on carrying out interstate commerce and improperly restricted religious activities, here, the permit fee does not burden a right to engage in interstate commerce or foreclose a First Amendment right, as various sizes of signs are exempt from any permit requirement and fee.  Here, the $21 fee is not an unconstitutional tax because it is directly related to the cost of processing and enforcing the sign regulations and not part of a revenue raising scheme.

### B.      Plaintiffs Fail to Demonstrate Irreparable Harm.

A party seeking a preliminary injunction must show more than the "possibility" of irreparable injury; a showing that irreparable injury is "likely" in the absence of preliminary relief is required.  *Winter*, 555 U.S. at 22.  Indeed, it is not sufficient that a claimed harm may be irreparable, but it must also be imminent. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). Additionally, "a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief," rather than merely allege imminent harm.  *Id.* (emphasis in original).

Plaintiffs merely allege that they will suffer irreparable injury, void of any analysis. Thus, Plaintiffs fail to demonstrate that they will suffer irreparable harm if an injunction is not granted.

In truth, enjoining enforcement of Code § 153.170.040 will likely cause Plaintiffs irreparable injury.  If an injunction is entered, Code § 153.170.040, which enumerates the types and sizes of signs that may be displayed without obtaining a permit, will effectively cease to exist and everyone will have to apply for a permit or variance before displaying any sign.  This will harm both Plaintiffs and the City.  Plaintiffs will suffer irreparable harm because they will not be able

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

to display smaller signs that "communicate [their] views to the public from the property" without first obtaining a permit.[46]  The City will suffer irreparable injury because the intent and purpose of the sign provisions to "[a]llow the communication of information for commercial and noncommercial purposes" and to "[r]espect and protect the right of free speech by sign display" will not be met if the City is enjoined from enforcing Code § 153.170.040.  *See* Code § 153.170.010.  Similarly, the City's safety and aesthetic interests will no longer be satisfied if a permit is required for every size sign.

Additionally, the City will suffer irreparable injury if no signs are exempt from the permit requirement and every citizen seeking to display a sign will have to apply for a permit to display.  Accordingly, entering an injunction to eliminate any exempt signs from being posted in the City without first obtaining a permit or variance will cause injury to both Plaintiffs and the City.

### C.     The Balance of Hardship Tips in the City's Favor.

Plaintiffs will not suffer any hardship if the Code remains in effect.  Plaintiffs are free to post any sign with any content so long as each sign conforms with the size and location requirements of Code § 153.170.040.  Or, Plaintiffs can seek a permit or variance to post oversize signs.  On the other hand, the City will suffer significant hardship if the preliminary injunction is granted and Code § 153.170.040 is no longer enforceable.

For the reasons stated above, if the City is unable to enforce Code § 153.170.040, the remaining sign provisions would provide that a permit or variance will be required prior to displaying any sign, regardless of the size.  Accordingly, the balance of hardship tips heavily in the City's favor.

### D.     Public Interest Favors Reasonable Regulation of the Size, Location, and Non-Communicative Nature of Signs.

Public interest generally favors maintaining First Amendment freedoms.

---

[46] Ehlers Decl., at ¶39 (Dkt. #13).

26

Granting Plaintiffs' requested relief will actually unnecessarily restrict those freedoms and may render the Code sign provisions unconstitutional.  Citizens will lose the ability to display a sign without obtaining a permit or variance. Unnecessarily requiring a permit for every size sign may preclude "spontaneous speech"—the very thing Plaintiffs seek to protect.  Indeed, the Code does not preclude an individual from posting a sign with the content of their choice; it merely regulates oversize signs, which can be driving distractions, and/or safety hazards if they are not properly affixed to a building or fence.  Accordingly, public interest favors maintaining the First Amendment freedoms secured by Code § 153.170.040.

## V.   CONCLUSION.

Based on the foregoing, the City respectfully requests that this Court deny Plaintiffs' Motion in its entirety.   Should this Court disagree and issue an injunction, the City requests that a substantial bond be required.

Dated: January 21, 2020

BROWNSTEIN HYATT FARBER SCHRECK, LLP
EMILY L. DYER


By: */s/ Mitchell J. Langberg*
MITCHELL J. LANGBERG
Attorneys for Defendant
CITY OF BALDWIN PARK

DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION
CASE NO.  2:19-CV-09864 CAS-E

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600