**CAROL A. SOBEL** SBN 84483
**MONIQUE A. ALARCON** SBN 311650
**WESTON ROWLAND** SBN 327599
**LAW OFFICE OF CAROL A. SOBEL**
725 Arizona Avenue, Suite 300
Santa Monica, CA 90401
t. (310) 393-3055
e. carolsobellaw@gmail.com
e. monique.alarcon8@gmail.com
e. rowland.weston@gmail.com

**PAUL COOK** SBN 290583
13148 Parkwood Place
Baldwin Park, CA 91706
E. cookp2012@lawnet.ucla.edu

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

| | |
|---|---|
| BALDWIN PARK FREE SPEECH COALITION, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>City of Baldwin Park,<br><br>Defendant. | Case No.: 2: 19-cv-09864 CAS - E<br><br>REPLY RE PRELIMINARY INJUNCTION<br><br>Date: Under Submission<br>Time: 10:00 a.m.<br>Ctrm: 8B (First Street Courthouse)<br><br>Hon. Judge Christina Snyder |

**TABLE OF CONTENTS**

| | | |
|---|---|---:|
| I. | INTRODUCTION | 1 |
| II. | THE CHALLENGED PROVISIONS ARE A PRIOR RESTRAINT | 1 |
| | A. The Permit Scheme Is a Prior Restraint | 1 |
| | B. The City Has Not Met Its Burden of Proof for a Prior Restraint | 2 |
| | C. Plaintiffs' Speech is Core Protected Expression | 2 |
| | D. Defendant Fails to Assert a Compelling Interest | 3 |
| | E. Plaintiffs Have No Adequate Alternative for Communication | 4 |
| III. | THE CODE UNLAWFULLY BANS SPONTANEOUS SPEECH | 5 |
| IV. | THE NECESSITY TO SUBMIT CONTENT CHILLS SPEECH | 5 |
| V. | THE CODE LACKS ADEQUATE STANDARDS | 6 |
| | A. There Are No Evidence Written or Long-standing Standard | 6 |
| | B. The Lack of Established Standards Deters Speakers | 8 |
| VI. | THE $21 FEE TO APPLY FOR A PERMIT IS UNCONSTITUTIONAL | 9 |
| VII. | PLAINTIFFS EVINCE THE NEED FOR A PRELIMINARY INJUNCTION | 10 |
| VIII. | CONCLUSION | 10 |

# TABLE OF AUTHORITIES

*A Quaker Action Group v. Morton,* 516 F.2d 717 (D.C. Cir. 1975) ............ 9

*A Quantity of Copies of Books v. Kansas*, 378 U.S. 205 (1964) ............ 5

*Alexander v. United States*, 509 U.S. 544 (1993) ............ 1

*Baldwin v. Redwood City*, 540 F.2d 1360 (9th Cir. 1976) ............ 2,3,8,9

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) ............ 2

*Buckley v. Valeo*, 424 U.S. 1 (1976) ............ 4

*Carroll v. President & Comm'rs of Princess Anne County*, 393 U.S. 175 (1968) ............ 5

*Chaker v. Crogan*, 428 F.3d 1215 (9th Cir. 2005) ............ 3

*City of Chicago v. Morales*, 527 U.S. 41 (1999) ............ 7

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ............ 3

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750 (1988) ............ 7,8

*Cox v. Louisiana*, 379 U.S. 536 (1964) ............ 4,9

*Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) ............ 2,6,10

*Freedman v. Maryland*, 380 U.S. 51 (1965) ............ 6

*Galvin v. Hay*, 374 F.3d 739 (9th Cir. 2004) ............ 4

*Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610 (1976) ............ 2

*Mills v. Alabama*, 384 U.S. 214 (1966) ............ 3

*Murdock v. Com. of Pennsylvania*, 319 U.S. 105 (1943) ............ 9

*NAACP v. Button*, 371 U.S. 415 (1963) ............ 8

*New York Times v. Sullivan*, 376 U.S. 254 (1964) ............ 8

*OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012) ............ 7,8

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) ............ 1

*Rosen v. Port of Portland*, 641 F.2d 1243, 1249 (9th Cir. 1981) ............ 2,4

*Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle*, 550 F.3d 788 (9th Cir. 2008) ............ 7

| | | |
|---|---|---|
| 1 | *Schneider v. State*, 308 U.S. 147 (1939) | 4 |
| 2 | *Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969) | 2 |
| 3 | *Talley v. California,* 362 U.S. 60 (1960) | 4 |
| 4 | *Thornhill v. Alabama*, 310 U.S. 88 (1940) | 7 |
| 5 | *Turner Broad. Sys. v. FCC*, 512 U.S. 622 (1994) | 4 |
| 6 | *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308 (1980) | 2 |
| 7 | *Verrilli v. City of Concord*, 548 F.2d 262 (9th Cir. 1977) | 4 |
| 8 | *Watchtower Bible & Tract Soc'y of N.Y., Inc. v. Vill. of Stratton*, 536 U.S. 150 (2002) | 2 |

**STATUTES AND ORDINANCES**

| | | |
|---|---|---|
| | BPMC § 153.170.080 | 5 |
| | BPMC § 153.210.260 | 6 |
| | BPMC § § 153.210.265 | 5 |
| | BPMC 153.170.090 (B) | 3 |

## I. INTRODUCTION

In *www.RichardPacheco.com, et al. v. City of Baldwin Park*, 2:16-cv-09167-CAS (GJSx), the Court found that, when "[b]usiness Provisions 'impose[] content-based restrictions on speech, those provisions can stand only if they survive strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.' *See Reed [v. Town of Gilbert]*, 135 S.Ct. 2218, 2226 (2015)." Doc. 42, p. 9. The Court held Defendant did not meet this test. The parties entered into a settlement requiring the City to amend the BPMC consistent with the Court's order. "Temporary Signs" were allowed under the same terms as signs on non-residential private property and "Grand Opening" signs. Exhibit 23, p.2. Previously, "noncommercial signs on private property" required no permit for two signs on each property. BPMC §153.170.040(C)(10). Instead of applying the settlement, the City rewrote the "Temporary Signs" section, omitting "Grand Opening" signs, restricting the number of signs, and adding a permit process and fee.

Just as before, the revised Code cannot survive strict scrutiny, nor even intermediate scrutiny. The City advances no compelling interest or narrow tailoring through clear standards in furtherance of any interest. The revised law is a hodgepodge of exemptions that undermine any compelling interest.

## II. THE CHALLENGED PROVISIONS ARE A PRIOR RESTRAINT

### A. The Permit Scheme Is a Prior Restraint

Speech by a "Temporary" sign requires pre-approval by written application, with proposed content, and payment of a fee at least three weeks in advance. Despite this procedure, Defendant claims its "Temporary Signs" process is not a prior restraint. A prior restraint is any law "forbidding certain communications when issued in advance of the time that such communications are to occur." *Alexander v. United States*, 509 U.S. 544, 550 (1993). "Even if the issuance of permits ... is a ministerial task ... a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition." *Watchtower Bible & Tract Soc'y of N.Y.,*

*Inc. v. Vill. of Stratton*, 536 U.S. 150, 166 (2002); *accord Forsyth County v. Nationalist Movement*, 505 U.S. 123, 132-33 (1992) (striking permit policy on First Amendment basis for lack of "articulated standards").

"[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150–51 (1969). Such a law comes to this Court "bearing a heavy presumption against its constitutional validity." *Vance v. Universal Amusement Co., Inc.*, 445 U.S. 308, 317 (1980) (internal citations omitted). The presumption is heavier with "prior restraints," and the protection therefore greater, because "prior restraints ... are the most serious and the least tolerable infringement on First Amendment rights." *Id. See also Berger v. City of Seattle*, 569 F.3d 1029, 1037 (9th Cir. 2009) (en banc); and, *Rosen v. Port of Portland*, 641 F.2d 1243, 1249 (9th Cir. 1981) (prior restraints "stifle spontaneous expression ... [and] prevent speech that is intended to deal with immediate issues").

**B.     The City Has Not Met Its Burden of Proof for a Prior Restraint**

The City bears the burden to justify a prior restraint and must show 1) a constitutionally sufficient government interest; 2) that "the law [is] the least drastic means of protecting the governmental interest involved [and 3)] its restrictions may be "no greater than necessary or essential to the protection of the governmental interest." *Baldwin v. Redwood City*, 540 F.2d 1360, 1365 (9th Cir. 1976). Finally, the law must be drawn with "narrow specificity." *Hynes v. Mayor & Council of Borough of Oradell*, 425 U.S. 610 (1976). Defendant's law fails all four elements.

**C.     Plaintiffs' Speech is Core Protected Expression**

Plaintiffs' speech is at the core of the First Amendment. "Whatever differences may exist about the interpretations of the First Amendment, there is practically universal agreement that a major purpose of that Amendment was to protect the free discussion of governmental affairs." *Mills v. Alabama*, 384 U.S. 214, 218-19 (1966). "Communication by signs and posters is virtually pure speech." *Redwood City*, 540

F.2d at 1366.[1] Signs are "a venerable means of communication that is both unique and important." *City of Ladue v. Gilleo*, 512 U.S. 43, 54 (1994).

> They "are an unusually cheap and ent form of communications. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical alternative. Even for the affluent, the added costs in money or time of taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one's house with a handheld sign may make the difference between participating or not participating in some public debate."

*Id.* at 57. "Signs that react to a local happening or express a view on a controversial issue both reflect and animate change in the life of the community." *Id.* at 54.

### D. Defendant Fails to Assert a Compelling Interest

"Exemptions from an otherwise legitimate regulation of a medium of speech ... may diminish the credibility of the government's rationale for restricting speech in the first place." *Id.* at 51. Now, as in 2017, the City's law "exempts] certain speech from regulation, where the exempted speech implicates the very same concerns as the regulated speech." *Chaker v. Crogan*, 428 F.3d 1215, 1227 (9th Cir. 2005).

Defendant is criminally prosecuting Ehlers' father for not obtaining a permit for two signs on his building. Defendant fails to show any rationale for citing Ehlers, especially with large unlawful billboards directly behind his property. *See* Ex. 22. If this was a car dealership, Ehlers could display large banners without a permit in a total area "(1) not to exceed 15% of the square footage of the lot upon which they are located;" (2) a maximum of 20 banners, each of which may be 50 square feet; and (3) "one pennant for every 2,500 square feet of lot area ... . BPMC §153.170.090 (B) (SIGN REGULATIONS FOR SPECIFIC LAND USES). Ex. 19, pp. 7-8. As Exhibit 22 shows, Ehlers' sign is minuscule compared to what is allowed at an auto sales lot. It covers about 15% of the building wall, far less than "15% of the square footage of the lot upon which they are located." *Id.* and Ehlers Reply Decl.¶4. What is the

---

[1] The "element of conduct" in pure speech is "minimal." *Redwood City*, 540 F.2d at 1366.

3

compelling interest here? The City argues that including content in the permit application is necessary to identify whether a sign is permitted if and when a complaint is made about the sign. This is not a compelling interest; but even if it were, how is this interest furthered by requiring a permit – with content – only for a "Temporary Sign" with vast categories of exempted commercial signs? Wouldn't the City need to know the content of each of those signs, as well, to assess a complaint and see whether the sign was exempt or properly permitted? In all likelihood, the City files sign applications by address and not content, so there is a ready alternative to achieve the City's purported interest in enforcing a prior restraint.

This interest is insufficient for a second reason: more than some legitimate interest is required. *Buckley v. Valeo*, 424 U.S. 1, 64 (1976). The law must bear a "substantial relation" [citation] to a "weighty" governmental interest. *Rosen*, 641 F.2d at 1246. Laws affecting First Amendment rights must be based on more than "[m]ere legislative preferences or beliefs respecting matters of public convenience." *Schneider v. State*, 308 U.S. 147, 161 (1939). Such regulations are constitutionally permissible "only if they are clearly and narrowly drawn to avoid arbitrary and unnecessary curtailment of freedom of speech ... ;" (2) The burden of establishing whether the regulation in question is sufficiently narrowly drawn in serving a compelling state interest is placed upon the government seeking to impose the regulation." *Verrilli v. City of Concord*, 548 F.2d 262, 265 (9th Cir. 1977); *see also Talley v. California,* 362 U.S. 60, 66-67 (1960). Defendant must do more than "assert[] interests [that] are important in the abstract... ." *Id*. A government interest is not significant if it is "conjectural" rather than "real." *Turner Broad. Sys., Inc.*, 512 U.S. at 664.

### E. Plaintiffs Have No Adequate Alternative for Communication

Ehlers wants to place the signs on his property so that the public will understand the communication is from his property. *See Galvin v. Hay*, 374 F.3d 739, 750 (9th Cir. 2004) ("The Court has recognized that location of speech, like other aspects of presentation, can affect the meaning of communication and merit First Amendment

protection for that reason"). He asks for nothing not available to commercial speakers.

For example, as owners of a commercial property "adjacent to a street," Ehlers' signs fall within the "wall sign" regulation, which provides "(1) A maximum of three wall signs shall be permitted for each wall of a commercial unit that contains a main entrance or is adjacent to a street." BPMC § 153.170.080 SIGNS REGULATIONS BY ZONE (Exhibit 19 to Sobel Decl.) Why is Plaintiffs' non-commercial message entitled to less protection than commercial speech on commercial property?

## III. THE CODE UNLAWFULLY BANS SPONTANEOUS SPEECH

"It is vital to the operation of democratic government that the citizens have facts and ideas on important issues before them. A delay of even a day or two may be of crucial importance in some instances." *A Quantity of Copies of Books v. Kansas*, 378 U.S. 205, 224 (1964). *See also Carroll v. President & Comm'rs of Princess Anne County*, 393 U.S. 175, 182 (1968) (quoting *A Quantity of Copies of Books*, *supra*, at 224 in the context of "a rally and 'political' speech in which the element of timeliness may be important"). Here, a minimum 21-day delay bars spontaneous speech.

§ 153.210.265  TIME FOR DETERMINATION.

>   (A)   Temporary signs. Permit applications for temporary signs shall be determined within 21 days of application submission unless the City Planner designates the application as one of extraordinary complexity or difficulty, in which case notification of such designation shall be mailed to the applicant within 14 days of application submission. All applications shall be determined within 42 days of application submission. Notice of any determination shall be mailed within two business days after the determination is made (excluding Fridays when city offices are closed).

It is no excuse to say Plaintiffs could use pennants or small signs, unreadable by passersby, when all around them are commercial signs as large as, or larger than, the Ehlers' signs. This undermines any rationale for restricting Plaintiffs' temporary signs.

## IV. THE NECESSITY TO SUBMIT CONTENT CHILLS SPEECH

Defendant does not dispute that a temporary sign permit requires submitting

5

content but contends it is not considered in the review process. Opp. p.12.[2] The provision Defendant cites is not so cabined. The 2012 provision Defendant cites was adopted long before the amended ordinance in 2017, requiring submission of content. Prior to the 2017 amendment, there was no requirement to submit an application at all for a permit for large temporary signs. So, it is difficult to understand how content was considered under an ordinance adopted five years earlier before the City amended its ordinance to require a permit and ask for the content of a sign content.

For what purpose since there is no similar requirement for any of the exempted sign categories? But even if Defendant could, constitutionally, require an applicant to submit the content in advance of approval of the permit, the requirement to have express and consistent standards or guidelines to guard against the possibility of arbitrary enforcement are not excused. It is black letter law that "vesting such vast licensing power in a government official independently violates the First and Fifth Amendments." *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992) (licensing must be pursuant to clear guidelines that limit official discretion) (citing *Freedman v. Maryland*, 380 U.S. 51 (1965). This is necessary to prove narrow tailoring of an advance permitting scheme for protected expression.

Defendant presented no competent evidence to meet this requirement. The City offers a single paragraph in the Declaration of Benjamin Martinez: "13. We have instructed the Planning Division that no application for a temporary sign may be granted or denied based upon the sign's content. Based upon information and belief, this is in compliance with the relevant provisions of the BPMC." It also submitted the Declaration of Garcia, essentially saying the same thing. Nothing in writing sets this limitation on discretion. The BPMC say nothing other than to submit intended content as a necessary element of the application. Who is the "we" and when, how and to

---

[2] The specific provision is § 153.210.260 DETERMINATION: "A sign permit shall be granted when the City Planner finds the proposed sign to be in conformance with all applicable provisions of this chapter, the Sign Design Guidelines and other applicable regulations. The City Planner may apply conditions of approval to ensure compliance." (Ord. 1346, passed 5-2-12).

whom was this "instruction" given. Thdoes not substitute for clear, established guidelines to limit discretion.³ "Because [the City] has neither a binding interpretation of the [Sign] Ordinance nor any well-established practices governing the exercise of official discretion, the only question ... is whether the Ordinance, on its face, provides sufficient guidance to these officials." *Seattle Affiliate of Oct. 22nd Coal. to Stop Police Brutality, Repression & Criminalization of a Generation v. City of Seattle*, 550 F.3d 788, 799 (9th Cir. 2008). The answer here is it does not. A law without such standards "may authorize or even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999).

Even if the Martinez and Garcia declarations provided competent evidence, they would still not overcome the constitutional flaws in this ordinance.

> Facial attacks on the discretion granted a decision maker are not dependent on the facts surrounding any particular permit decision. *See City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 770 [ ] (1988). 'It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.' *Thornhill v. Alabama*, 310 U.S. 88, 97 [] (1940). Accordingly, the success of a facial challenge on the grounds that an ordinance delegates overly broad discretion to the decision maker rests not on whether the administrator has exercised his discretion in a content-based manner, but whether there is anything in the ordinance preventing him from doing so.

*Forsyth County*, 505 U.S. 133 at n.10.

Here, the directive offered by Martinez is "not merely unwritten. It was also unannounced and had no history of enforcement." *OSU Student All. v. Ray*, 699 F.3d 1053 (9th Cir. 2012). "The policy created no standards to cabin discretion through content or history of enforcement, and it set no fixed standard... and therefore violated the First Amendment." *Plain Dealer*, 486 U.S. at 760. "[A] speech restriction cannot satisfy the time, place, manner test if the restriction does not contain clear standards. To identify just one problem, the time, place, and manner test requires content

---

³ The City also submitted Notices of Violations issued starting in late 2019. All issued months after this action was filed. Def. Appx. of Exhibits [Doc. 23-5].

7

neutrality.*" Osu Student All.*, 699 F.3d at 1066 (internal citations omitted). "One cannot tell if OSU's unwritten policy was content-neutral, because the policy did not disclose the basis on which it distinguished between [applicants]." *Id.*

> [T]he absence of express standards makes it difficult to distinguish, "as applied," between a licensor's legitimate denial of a permit and its illegitimate abuse of censorial power. Standards provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech.

*Plain Dealer*, 486 U.S. at 758.

The "'policy's' lack of established standards muddles the provenance of defendants' explanations in a manner that is unconstitutional under *Plain Dealer*. The fact that the 'policy' was not written or otherwise established by practice meant there were no standards by which the officials could be limited. It left them with unbridled discretion." *OSU Student All.*, 699 F.3d at 1064–65. Defendant's assertions of an unwritten policy "cannot be distinguished from post hoc rationalizations." *Id.* at 1062, citing *Plain Dealer*, 486 U.S. at 758; *id*. at 763.

The prospect of having to submit content in advance may deter individuals from seeking a permit in the first place. Reading the BPMC, a person knows only that they must submit content in the permit application on pain of civil and criminal penalties and that the permit is subject to "all applicable provisions of this chapter, the Sign Design Guidelines and other applicable regulations. The City Planner may apply conditions of approval to ensure compliance." What are the other "applicable regulations" if they are not part of "this chapter [and] the Sign Design Guidelines," and, if as Defendant asserts, the City is constrained by this provision, what "conditions of approval" may the City Planner apply in deciding whether to grant or deny a permit? None of this provides any standard, let alone clear and consistent guidelines. Moreover, the scheme and the unbridled discretion given the City Planner suggest a decision on a permit application may be made by consensus of multiple reviewers, increasing the potential for unlawful discrimination to infiltrate the process.

The bottom line is that a speaker may self-censor their speech.  This is the precise constitutional harm decried in prior restraints: chilling the range of permitted free expression.  It matters not that the City first imposes a monetary fine since financial penalties may be "markedly more inhibiting than the fear of prosecution." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 277 (1964).  *See also NAACP v. Button*, 371 U.S. 415, 433 (1963) ("[t]he threat of sanctions may deter [the] exercise [of First Amendment rights] almost as potently as the actual application of sanctions.").

**III. THE $21 FEE TO APPLY FOR A PERMIT IS UNCONSTITUTIONAL**

"The power to tax the exercise of a privilege is the power to control or suppress its enjoyment." *Murdock v. Com. of Pennsylvania*, 319 U.S. 105, 112 (1943) (invalidating a flat license tax)*.*  Defendant argues the $21 fee to submit an application for a temporary sign permit is lawful. This Circuit has repeatedly rejected this argument. *See Redwood City*, 540 F.2d at 1371 and *Verrilli*, 548 F.2d at 264.  The City submitted the Garcia Declaration, attesting that most permits are granted within a short time.  This undermines the City's argument this is not a tax because the fee is $21 regardless of whether the permit is granted at the desk, takes two days, three weeks or six weeks and is designated "complex."  If a person wants to put up the same temporary sign every other month four times a year, do they have to pay the same fee of $21 each time? The "absence of apportionment suggests that the fee is not in fact reimbursement for the cost of inspection but an unconstitutional tax." *Id.*

Significantly, even a $5 deposit for a political yard sign display was rejected in *Redwood City* as the removal deposit bore no reasonable relationship to the cost of removing the sign "and the charge is so disproportionately burdensome as to inhibit such an expression of political opinion. The deposit is returned if the sign is removed, but money is most useful during a campaign. Requiring a pre-filing fee "preclude[s] erection of all but a few large signs." *Id.* at 1372.  The *Redwood City* fee deterred civic participation by chilling the display of political messages on private property.

The Circuit distinguished "[b]oth *Cox* [*v. New Hampshire*, 312 U.S. 569 (1941)

9

and *A Quaker Action* [*Group v. Morton,* 516 F.2d 717 (D.C. Cir. 1975)] [both of which] considered requirements of permits for parades or organized demonstrations. ... [T]he regulatory problems posed by political signs and posters are of a much lower magnitude than those presented by parades and demonstrations." 540 F.2d at 1372 n.32. Applying *Redwood City,* a refundable $100 deposit for a political sign permit was held to be an unlawful tax. *Verrilli*, 548 F.2d at 264.

## VI. PLAINTIFFS EVINCE THE NEED FOR A PRELIMINARY INJUNCTION

Plaintiffs have shown the likelihood of prevailing on the merits and that the balance of hardships tips sharply in their favor. At a minimum, and because this case involves a challenge to a regulation restricting First Amendment rights, they have met the standard for a preliminary injunction. In the face of aggressive criminal prosecution of Plaintiff Ehlers' father, Defendant contends that there is no imminent harm to Plaintiffs if the ordinance stands as is. The harm to Plaintiffs is both imminent and real. Who would risk fines, tax liens and possible criminal prosecution in light of the City's aggressive enforcement against Plaintiffs?

## V. CONCLUSION

For all of the foregoing reasons, the Court should enjoin BPMC §153.070.040, requiring a permit for any sign other than those exempted by BPMC §153.070.030.

Dated: January 29, 2020        Respectfully submitted,

                               LAW OFFICE OF CAROL A. SOBEL

                                   /S/   Carol A. Sobel
                               By: CAROL A. SOBEL
                               Attorneys for Plaintiffs