**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
|---|---|---|---|
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

**Present: The Honorable**    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Not Present     Not Present

**Proceedings:**    (IN CHAMBERS) - PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION (ECF No. 11, filed December 30, 2019)

## I. INTRODUCTION

This case raises the latest challenge to defendant City of Baldwin Park's ("City's") sign ordinance, which this Court enjoined in July 2017, and which the City subsequently amended in November 2017.

Plaintiff Baldwin Park Free Speech Coalition, an association that seeks to promote transparency in local government, and one of its members, plaintiff Richard Ehlers (together "FSC"), filed this action against the City on November 18, 2019 to challenge the constitutionality and prevent the enforcement of the City's amended sign ordinance, Baldwin Park Municipal Code ("BPMC") § 153.170.040 et seq. (the "sign ordinance"). See ECF No. 1 ("Compl."). As in the first action, the complaint alleges that (1) the sign ordinance violates plaintiffs' rights secured by the First Amendment to the United States Constitution, as well as the First Amendment to the California Constitution, by imposing: (a) an unlawful content-based restriction on protected speech; (b) an unlawful prior restraint on protected speech; and (c) an unlawful tax on protected speech. Id. at ¶¶ 33-42. The complaint also alleges that the sign ordinance (2) violates plaintiffs' rights to due process secured by the Fourteenth Amendment, id. ¶¶ 43-47, (3) imposes an unconstitutional fine in violation of the Eighth and Fourteenth Amendment, id. ¶¶ 48-53, (4) has been used to unlawfully retaliate against plaintiff Ehlers's free expression, id. ¶¶ 54-58, and (5) violates California's Bane Act (Cal. Civil Code § 52.1), id. ¶¶ 59-61.

On December 30, 2019, FSC filed the instant motion for a preliminary injunction, along with supporting fact declarations. See ECF No. 11-1 ("PI"). The motion seeks to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL  'O'

| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
|---|---|---|---|
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

enjoin the City from enforcing the sign ordinance during the pendency of this litigation, and is based solely upon FSC's First Amendment claim for relief. Id. at 1-2. The City filed its operative opposition to the preliminary injunction motion on January 23, 2020. See ECF No. 26 ("PI Opp."). FSC filed a reply in support of its preliminary injunction motion on January 29, 2020. See ECF No. 28 ("PI Reply").

The parties entered into a stipulated agreement to vacate the hearing on this motion on January 13, 2020. See ECF No. 21. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II. RELEVANT BACKGROUND

The following facts are taken from the complaint, the declarations filed in support of FSC's PI motion, the public record, and the submissions from the City.

### A. The Prior Sign Ordinance Litigation

The Court first considered the constitutionality of the City's sign ordinance in 2017. See generally www.RichardPacheco.com v. City of Baldwin Park, No. 16-CV-09167-CAS (GJSx) (filed C.D. Cal. Dec. 12, 2016). The plaintiffs in that case—operators of the website www.RichardPacheco.com, including members of the Ehlers family—alleged in their first amended complaint that four provisions of the City's sign ordinance, as amended in April 2017, violated the First Amendment. The first challenged provision exempted commercial signs related to special events and grand openings from the requirements of the sign ordinance ("the Business Provisions"). The second challenged provision exempted from regulation and allowed persons the ability to display additional flags for three days before and after three federal holidays—Memorial Day, Independence Day, and Veterans Day—but not other holidays (the "Additional Flag Provision"). The third challenged provision exempted from regulation and allowed persons to display five electioneering signs for 45 days before, and 14 days after, any election (the "Election Provision"). The fourth challenged provision restricted the size of temporary signs allowed to be placed on residential property without a permit (the "Size Provisions").

On July 10, 2017, the Court granted the plaintiffs' motion for a preliminary injunction as to the first, second, and third provisions, but denied it as to the fourth provision involving the size of residential signs. See www.RicardoPacheco.com v. City of Baldwin Park, No. 16-CV-09167-CAS (GJSx), 2017 WL 2962772, at *9 (C.D. Cal. July

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

10, 2017). On the merits, the Court found that the Business Provisions evinced a preference for some speakers over others, concluded that they were accordingly content based, and determined that there were at least serious questions as to whether the City could establish that the regulation would survive the strict scrutiny that applied. Id. at *6-7. The Court further concluded that the Additional Flag Provision constituted a content-based regulation by making a distinction between different events and holidays, and determined that there were serious questions as to whether the City could establish that this provision satisfied the strictures of strict scrutiny. Id. at * 7-8. Similarly, the Court concluded that the Election Provision expressed a content-based preference for certain kinds of political speech (i.e. speech related to elections as opposed to speech related to matters of general public concern), and determined that the there were also serious questions as to whether the City could establish that this provision satisfied strict, or even intermediate, scrutiny. Id. at *8. Finally, the Court concluded that the Size Provisions did not raise any serious constitutional questions on the merits because it was a reasonable content neutral regulation on the place and manner of speech that did not foreclose plaintiffs from communicating their message through signs of the approved size. Id. at *9.

Following the Court's order on the preliminary injunction, on November 15, 2017, the Baldwin Park City Council amended the sign ordinance in several respects, including by deleting the three provisions that the Court had enjoined. See Amended Minutes, Baldwin Park City Council Regular Meeting, at Item 13 (Nov. 15, 2017), available at http://baldwinpark.granicus.com/DocumentViewer.php?file=baldwinpark_72517e0b2a29c3dc3d1a2b3d5eccffcd.pdf&view=1.[1] On December 4, 2017, the parties reported that they had entered into a settlement agreement resolving the dispute. See www.RichardPacheco.com v. City of Baldwin Park, No. 16-CV-09167-CAS (GJSx), ECF No. 55 (filed C.D. Cal. Dec. 4, 2017).

### B. Relevant Provisions Of The Current Sign Ordinance

In its current form, and as presently challenged, the City's sign ordinance allows for the placement of a specified number of both temporary and permanent signs, flags, and pennants on residential and non-residential private property without a city-issued permit,

---

[1] The City cited, but failed to attach, this document. The Court was able to locate the public record from the City's public-facing website, and takes judicial notice of it. See Fed. R. Evid. 201.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
|---|---|---|---|
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

provided that the displays meet the size, illumination, aesthetic, safety, and other general requirements set forth in the sign ordinance and design guidelines.

Specifically, on non-residential property, a person may place the following displays without obtaining a permit:

(a) Up to 20 flags and pennants with a combined area of no more than 80 square feet on a staff of pole of no longer than 20 feet, provided that no single flag or pennant may exceed 15 square feet in area;

(b) Up to 15 permanent signs with a combined area of no more than 45 square feet and a height of no more than 8 feet, provided that no individual sign may exceed 15 square feet in area;

(c) Up to 4 temporary window signs with a combined area of no more than 24 square feet, provided no individual sign may exceed 12 square feet in area, and so long as no more than 40% of the area of any given window becomes covered in signs;

(d) Up to 8 other temporary signs with a combined area of no more than 30 square feet and a height of no more than four feet, provided that no individual sign may exceed 12 square feet in area.

See BPMC § 153.170.040(C)(1).

And for properties in residential areas, a person may place the following displays on their property without obtaining a permit:

(a) Up to 3 flags or pennants of up to 10 square feet on a staff or pole of no longer than 8 feet;

(b) Up to 3 permanent signs with a combined area of no more than 10 square feet and a height of no more than 4 feet;

(c) Up to 6 temporary window signs with a combined area of no more than 9 square feet, except that no more than 50% of the area of any given window may be covered by window signs;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

(d) Up to 4 other temporary signs with a combined area of no more than 10 square feet and a height of no more than 3 feet.

See BPMC § 153.170.040(D)(1).

In addition to these allowances, a person operating a non-residential property may apply to place an additional temporary 35 square foot banner for up to 30 days, as many as four times per year, provided that the banner is not displayed for 4 consecutive 30-day periods. See BPMC § 153.170.060. To apply for a temporary sign permit, an applicant must pay a $21 application fee, complete an application, provide information on the size and content of the proposed sign, and submit a copy of a business license or other validation that the display will be for non-residential use. See Decl. of Benjamin Martinez, ECF No. 23-2 ("B. Martinez Decl."), ¶ 8. The application itself requests the following information: (1) the sign address; (2) the owner's name and signature; (3) the owner's mailing address; (4) the business name where the sign will be displayed; (5) the dates for which the sign will be displayed and removed; (6) the type of sign; and (7) a copy or drawing of the sign for identification purposes. Id. at Ex. 1. The sign ordinance provides that a sign permit application "shall be granted when the City Planner finds the proposed sign to be in conformance with all applicable provisions of this chapter, the Sign Design Guidelines, and other applicable regulations." BPMC § 153.210.260.[2] The City must rule on a temporary sign permit application within 21 days. Id. § 153.210.265.[3] According to the City, a temporary sign permit is almost always issued on the same day "over the counter" if the permit application is turned in complete with fees paid. See Decl. of Ronald Garcia, ("Garcia Decl.") ECF No. 23-4, ¶ 7. If a temporary permit is not approved, or if a property owner or operator wishes to place a sign of a size or for a duration not permitted by the

---

[2] The Sign Design Guidelines are available online at the following address: https://www.baldwinpark.com/online-documents/community-development/planning/design-guidelines/1984-bp-chapter1/file.

[3] The sign ordinance also specifies that an application for a permanent sign permit must be ruled upon within 63 days. See BPMC § 153.210.265. However, the Court is unable to locate any provisions in the BPMC that set forth procedures for applying for a permanent sign permit, or what kinds of permanent signs may be placed pursuant to that permitting scheme.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

temporary permitting process, he or she may also apply to the City for a variance pursuant to the standard set forth in BPMC § 153.210 et seq. See BPMC § 153.170.020.

### C. The City Cites FSC Member Ehlers For Violating The Sign Ordinance

Ehlers owns commercial property in Baldwin Park. See Decl. of Robert Ehlers, ECF No. 13 ("Ehlers Decl."), ¶ 2. In March 2019, Ehlers placed two identical banners on his property criticizing a member of the Baldwin Park City Council. Id. ¶ 6. The banners urge local residents to vote the councilmember in question out of office. Id. A photograph of one of the banners, attached to the Ehlers Declaration, indicates that the banners are nearly two-stories tall, and about as large as the building to which they are affixed. Id. at Ex. 1. Ehlers did not apply for a permit to place the banners on his property.

The City became aware of Ehlers' banners in April 2019. On April 17, 2019, the City issued Ehlers a notice of violation pursuant to BPMC § 153.170.060, which is the portion of the sign ordinance that allows individuals to apply for a permit to place non-conforming, non-exempt oversize banners on their non-residential property. Ehlers Decl., ¶ 9. Pursuant to the sign ordinance's penalty provisions, Ehlers was ordered to correct the violation. Id.; see also id. Ex. 2. On May 23, 2019, the City conducted an inspection and determined that Ehlers had not corrected the violation. Id. The City issued a second notice, and issued Mr. Ehlers a $200 fine. Id. ¶¶ 9-10; see also Ex. 2. On June 4, 2019, the City conducted another inspection and imposed an additional $200 fine after it determined that Ehlers had still not corrected the violation. Id. ¶ 11. The City returned to the property on June 7, 2019 and determined that Ehlers' property remained in violation. Id. ¶ 12. The City imposed a $1,000 fine for the continuing violation, in addition to the $400 in outstanding fines. Id. The City continued to inspect Ehlers' property, continued to determine that Ehlers had not corrected the violation or paid the existing fines, and continued to issue additional citations and fines, through December 3, 2019. Id. ¶¶ 13-22. Ehlers now owes more than $12,000 in fines. Id. ¶ 8. He has not corrected the violation.

### III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). The Ninth Circuit summarized the Supreme Court's clarification of the standard for granting preliminary injunctions in Winter as follows: "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

the balance of equities tips in his favor, and that an injunction is in the public interest." Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009); see also Cal Pharms. Ass'n v. Maxwell-Jolly, 563 F.3d 847, 849 (9th Cir. 2009). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply towards the plaintiff can support issuance of an injunction, so long as the plaintiff also shows a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for the Wild Rockies v. Cottrell, 622 F.3d 1045, 1053 (9th Cir. 2010). Serious questions are those "which cannot be resolved one way or the other at the hearing on the injunction." Bernhardt v. Los Angeles Cty., 339 F.3d 920, 926 (9th Cir. 2003) (quoting Republic of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988)).

## IV. DISCUSSION

FSC moves for a preliminary injunction on the basis of its First Amendment claims for relief. See PI at 1-2, 5-17. According to FSC, unless the Court enjoins the sign ordinance, its members will suffer irreparable harm by losing their First Amendment rights to free expression. Id. at 18-19. The City opposes on grounds that FSC is unlikely to succeed on the merits of its First Amendment claims, Opp. at 8-22, and because FSC's members injuries are not, for that reason, irreparable, id. at 23-25.

### 1. The Merits Of FSC'S Constitutional Challenge

To prevail on its motion for a preliminary injunction, FSC must at a minimum establish that there are "serious questions" on the merits of at least one of its claims for relief. Cottrell, 622 F.3d at 1053. As discussed below, the Court finds and concludes that FSC fails to raise any serious questions on the merits of its First Amendment claims.

#### a) Restriction of Protected Speech Claim

FSC contends that the sign ordinance's permitting regime is a content-based regulation on protected speech that fails to withstand strict scrutiny. See PI at 7-16. The City responds that the sign ordinance, including its permitting procedures, simply enforces a content-neutral time, place, and/or manner regulation that survives the intermediate level of scrutiny that applies to laws of this kind. See Opp. at 9-19. Since it is undisputed that the sign ordinance constitutes a regulation on protected speech, the Court first considers whether the sign ordinance imposes content-based or content-neutral restrictions in order

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| --- | --- | --- | --- |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

to determine the level of scrutiny that applies to FSC's unlawful restriction of protected speech claim.

### (1) Level of Scrutiny

"Content-based laws" are "those that target speech based on its communicative content." Reed v. Town of Gilbert, 135 S. Ct. 2218, 2226 (2015). A content-based restriction on speech is subject to strict scrutiny. Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 642 (1994) ("Our precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content."). Applying that standard, a law found to be content based is "presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." Reed, 135 S. Ct. at 2226. "In contrast, regulations that are unrelated to the content of speech are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue." Turner, 512 U.S. at 642 (citation omitted). Restrictions on protected speech subject to this standard will be upheld if they are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). Content-neutral "restrictions on the time, place, or manner of protected speech" are ordinarily subject to this less-searching level of intermediate scrutiny. Ward v. Rock Against Racism, 491 U.S. 781, 797 (1989). A regulation that is content neutral on its face must be analyzed pursuant to the intermediate scrutiny standard unless it "cannot be justified without reference to the content of the regulated speech," or unless it was plainly "adopted by the government because of disagreement with the message" that the regulated speech conveys. Reed, 135 S. Ct. at 2227 (citations omitted).

FSC contends that the sign ordinance is content based, and should be strictly scrutinized, for two reasons: (1) FSC argues that the sign ordinance "overlays a content-based requirement for temporary permit applications" by (i) only subjecting temporary signs to a permitting process and (ii) requiring applicants for a temporary sign permit to attach a copy of the proposed sign; (2) FSC argues that the sign ordinance "includes an unconstitutional durational time limit on temporary signs by restricting their display to no more than 30 consecutive days and four non-consecutive months in a 12-month period." PI at 8-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

Neither of these arguments support a determination that the City's sign ordinance is content based. First, a plain reading of the sign ordinance makes clear that anyone in Baldwin Park may place a combination of temporary or permanent signs, flags, and pennants on their property, irrespective of their content, and without obtaining a permit, provided that those displays conform with the size and height restrictions set forth in BPMC § 153.170.040(C)(1). The Supreme Court and the Ninth Circuit have consistently determined that "governments may regulate the physical characteristics of signs" in this manner, and that such regulations are content-neutral time, place, and manner restrictions subject to intermediate scrutiny. City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994) (treating challenged sign ordinance as content-neutral, and applying intermediate scrutiny); see also Reed, 135 S. Ct. at 2233 (Alito, J., concurring) (identifying "[r]ules regulating the size of signs" and "[r]ules regulating the locations in which signs may be placed" as examples of "some rules that would not be content based" restrictions); Get Outdoors II, LLC v. City of San Diego, Cal., 506 F.3d 886, 893 (9th Cir. 2007) ("Size and height restrictions on billboards are evaluated as content-neutral time, place and manner regulations."); Valley Outdoor, Inc. v. Cty. of Riverside, 337 F.3d 1111, 1114 (9th Cir. 2003) (holding that challenged sign "size and height restrictions" were "content-neutral time, place, and manner" restrictions that survived intermediate scrutiny).

That a property owner or operator may *also* apply for a permit to place an *additional* non-conforming temporary sign on his or her property does not evince any attempt to regulate speech based upon its content. Rather, it simply appears to express the City's desire to accommodate an occasional exception to its standard size and height rules for purposes of facilitating free speech. See BPMC § 153.170.010(F)-(G). The content of a proposed temporary sign is not part of the City's permitting analysis. See Garcia Decl., ¶ 9 (explaining that he instructs City staff "never to review the content of a temporary sign or banner, nor consider content in deciding whether to approve or deny a permit application"); BPMC § 153.210.260 (setting forth content-neutral requirements for the approval of a temporary sign permit that do not involve the consideration of a sign's message).

Nor does the requirement that an applicant for a temporary sign permit submit a copy of the proposed temporary sign transform the City's otherwise content-neutral regulation into a content-based one. That requirement—which allows the City to (1) identify whether a non-conforming sign is one for which the City has issued a permit, see Opp. at 12 n. 17, and (2) determine whether a proposed sign satisfies the City's aesthetically-focused Sign

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | | |
|---|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | | 'O' |
| Case No. | 2:19-CV-09864-CAS-Ex | | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | | |

Design Guidelines, see Lusk v. Vill. of Cold Spring, 475 F.3d 480, 494 (2d Cir. 2007) (holding that an ordinance which "authorizes the review of architecture and [the] design of signage" is "content neutral" if it is "divorced from the signs' intended content")[4]—is an incidental provision that aids in the City's enforcement of its content-neutral rules, not itself a content-based rule. See Hill v. Colorado, 530 U.S. 703, 722 (2000) (holding that a regulation which inheres some "cursory examination" of speech content, when incidental to the application of an otherwise content-neutral speech restriction, does not make the restriction content based); e.g., Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 689 (8th Cir. 2012) (rejecting argument that an "otherwise content-neutral" regulation "is content based because a court might have to look at the subject matter" since "some review of the content of speech may be necessary" to enforce the regulation, and holding that "[s]uch a 'cursory examination' does not transform an otherwise content neutral statute into a content based regulation") (quoting Hill, 530 U.S. at 722); Travis v. Park City Mun. Corp., No. 05-CV-00269, 2008 WL 2224829, at *4 (D. Utah May 27, 2008), aff'd, 565 F.3d 1252 (10th Cir. 2009) (ordinance which required street artists to apply for a permit and submit "a brief description of the type of art to be displayed for sale" was content neutral).

FSC's second argument also fails to establish that the sign ordinance is content based because the durational limitations applied to permitted temporary signs applies evenly to all signs, regardless of content. Certain durational limitations *can be* part of a content-based regulatory regime. See Whitton v. City of Gladstone, Mo., 54 F.3d 1400, 1404 (8th Cir. 1995) (holding that challenged regulation limiting duration for which one may post certain signs was content based because "[t]he words on a sign define whether it is subject to the durational limitations"). In Whitton, for example, the Eighth Circuit considered a constitutional challenge to an ordinance that subjected political signs to durational limits, while allowing commercial signs to be displayed indefinitely. Id. at 1403. The city argued that the regulation was a content-neutral time, place, and manner regulation. The Eighth

---

[4] Accord Carpenter v. City of Snohomish, No. 06-CV-00755-JCC, 2007 WL 1742161, at *7 (W.D. Wash. June 13, 2007) (concluding that "sign standards [that] are focused on aesthetics" to "provide guidelines but do not altogether prohibit a given message from being communicated" were content-neutral); Herson v. City of Richmond, No. 09-CV-2516 PJH, 2010 WL 1912033, at *1 (N.D. Cal. May 11, 2010) (sign ordinance that applied design guidelines to grant or deny permit applications was content neutral).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

Circuit disagreed, holding that the durational requirement was content based because it did not limit "the durational period of signs generally" but rather "limited the duration of political signs . . . in particular." Id. at 1406.

The durational limits on temporary signs at issue in this case, however, are nothing like the durational limits in Whitton since they apply "generally" and not to any particular type of sign in particular. They are, in this respect, akin to the durational temporary sign regulations found to be content-neutral (and upheld) in Action Outdoor Advertisements JV, L.L.C. v. Town of Shalimar, Fla., 377 F. Supp. 2d 1178, 1195 n.15 (N.D. Fla. 2005) and Sugarman v. Village of Chester, 192 F. Supp. 2d 282, 293 (S.D.N.Y. 2002). In Action Outdoor, the court rejected the argument that the town's temporary sign permitting ordinance was content based because "all temporary signs" covered by the ordinance "are subject to the durational requirement" and "[t]he application of the three-months restriction is not determined by reference to the content of the sign." 377 F. Supp. 2d at 1195 n.15. Similarly, in Sugarman, the district court concluded that "there is no reasonable factual dispute that Greenwood Lake does not regulate on the basis of content with respect to the issuance of permits" since the challenged ordinance stated that "all temporary signs . . . require a permit" regardless of content. 192 F. Supp. 2d at 293.[5] The durational limits in the City's sign ordinance apply in the same way, and are similarly content neutral.

For the foregoing reasons, the Court determines that the City's sign ordinance, including its temporary sign permitting process, is a content-neutral regulation.[6]

---

[5] FSC's related assertion that "a permit requirement for [a] temporary [permit] cannot be justified when so many permanent signs are exempted," PI at 10, is also not a basis to determine that the sign ordinance is content based: "the fact that permanent signs are exempt from the permit requirement reflects no bias towards a particular sign content and is therefore content-neutral." Sugarman, 192 F. Supp. 2d at 293.

[6] In its reply brief, FSC appears to contend that the City's sign ordinance should be considered content based because it regulates signage on commercial property differently than signage on residential property. See Reply at 5 ("Why is Plaintiffs' non-commercial message entitled to less protection than commercial speech on commercial property?"). Even if this isolated contention, which appears to have been raised for the first time on reply, were properly before the Court, it would not have merit. The sign ordinance does not treat a "non-commercial message" different from "commercial speech" on non-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

### (2) Application of Intermediate Scrutiny

A content-neutral regulation that "limit[s] 'the time, place, and manner of expression'" will be upheld "if the regulations are [1] 'narrowly tailored to serve a significant government interest, and [2] leave open ample alternative channels of communication.'" Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 940 (9th Cir. 2011) (en banc) (quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)).

The Court determines that FSC fails to raise any serious questions that the City's sign ordinance passes muster. "[A] city's interests in traffic safety and aesthetics are sufficient government interests" to support a content-neutral sign ordinance "for the purposes of this analysis." Get Outdoors II, 506 F.3d at 893 (citing Metromedia, Inc. v. City of San Diego, 453 U.S. at 507–08 (1981). The City has stated that the purpose of its sign ordinance is to "[i]mplement the city's design and safety standards," "[e]liminate traffic safety hazards," and "[m]aintain and enhance the city's appearance," among other related goals. See BPMC § 153.170.010. "That is all" that intermediate scrutiny "requires to prove a significant interest." Id. at 894 (citing Ackerley v. Krochalis, 108 F.3d 1095, 1099-1100 (9th Cir. 1997)).

To further these interests, the City has not banned signs in their entirety, but limited the size, height, and combined coverage that signs may have. See BPMC § 153.170.040. Additionally, and to accommodate free speech and communication, see BPMC § 153.170.010(F)-(G), the City has created a separate process that allows residents and businesses to apply for permits to place non-conforming signs of specified greater heights and sizes on their property for limited periods of time. See BPMC § 153.170.060. The Court concludes that these incidental restrictions "directly advance" the City's interests and "are not substantially broader than necessary" to protect the City's interests in traffic safety and aesthetics. See Get Outdoors II, 506 F.3d at 894 (upholding comparable size and height restriction on this basis). It is not necessary for the City to justify how it "calculated" the specific size, height, and (for temporary permitted signs) durational restrictions it selected. Id. at 894 (citing Prime Media, Inc. v. City of Brentwood, Tenn.,

---

residential property. The owner or operator of a non-residential property is free to display any message he or she wants, provided that message is displayed in a manner that conforms to the size and height requirements set forth by the City.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

398 F.3d 814, 822 (6th Cir. 2005)). "[T]he question is not whether a municipality can explain why a 120–square–foot limitation detracts more from the aesthetics of the City than signs with smaller sign face sizes[,]" for example, but "whether the regulation is substantially broader than necessary to protect the City's interest in eliminating visual clutter and advancing traffic safety." Prime Media, 398 F.3d at 822 (internal marks omitted). And in this case, the Court concludes that the height, size, and (for temporary permitted signs) durational limits set forth in the sign ordinance (described in detail in § II.B above) are reasonable, and not substantially broader than necessary to achieve the significant interests identified.

None of the three cases cited in FSC's moving papers change this analysis since all three of them concerned *content-based* sign regulations subject to more searching tailoring requirements under strict scrutiny that do not apply to the City's content-neutral sign ordinance. Cf. Verrilli v. Concord, 548 F.2d 262, 265-67 (9th Cir. 1977) (cited in PI at 13) (striking down size and durational limits imposed by a content-based sign regulation that only applied to "political campaign signs"); Dimas v. City of Warren, 939 F. Supp. 554, 557 (E.D. Mich. 1996) (cited in PI at 13) ("As an initial matter, the ordinance is not content-neutral. While the ordinance may appear to be content-neutral in the sense that it does not discriminate among political messages, it does impose restrictive time limitations upon political signs that are not imposed on commercial signs."); Curry v. Prince George's Cty., Md., 33 F. Supp. 2d 447, 455 (D. Md. 1999) (cited in PI at 13-14) (concluding that the challenged "public interest events/campaign" sign regulation "is unconstitutional insofar as it imposes durational limits with respect to political campaign signs posted by individuals on or about their private residences"). Governments defending regulations like these must not only prove that the restrictions "are not substantially broader than necessary" to "directly advance" a "significant interest," see Get Outdoors II, 506 F.3d at 894, they must also demonstrate that the regulation "*is necessary* to serve a *compelling* state interest." Tschida v. Motl, 924 F.3d 1297, 1303 (9th Cir. 2019) (emphasis added). That certain durational and size restrictions did not pass muster under that heightened standard is of no moment to the Court's analysis here.

The sign ordinance also leaves open an extensive array of alternatives to those few channels of communication prohibited by its size, height, and (for temporary permitted signs) durational limitations. Critically, the sign ordinance is not a complete ban on all signs, or even a complete ban on all signs at a given type of private property. See Get Outdoors II, 506 F.3d at 894 (holding that challenged ordinance did not foreclose

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

alternative channels of communication because it "stop[s] short of banning all billboards") (citing Metromedia, 453 U.S. at 501). FSC, its members, and any business or resident of Baldwin Park are free to post a number of permanent signs up to certain combined sizes and heights depending upon the location of their property. On commercial property like Ehlers' property, for example, Ehlers may post up to 15 permanent signs not larger than 15 square feet individually, or 45 square feet collectively, at any time, and for any length of time. BPMC § 153.170.040(b). And if Ehlers wants to post an even larger banner, he may do so after applying for a temporary sign permit, or a variance.

FSC counters that the sign ordinance does not preserve adequate alternative channels of speech because the City's restrictions prevent them from posting "readable" signs "in a timely fashion" at the "location associated" with the speaker. PI at 16; see also Reply at 4 ("Ehlers wants to place the signs on his property so that the public will understand the communication is from his property."). FSC principally relies on City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994) (cited above) to support its assertion that the sign ordinance fails to withstand scrutiny on this basis. See also Galvin v. Hay, 374 F.3d 739, 750 (9th Cir. 2004) (cited in Reply at 4 for the proposition that the "location of speech, like other aspects of presentation, can affect the meaning of communication and merit First Amendment protection for that reason") (citing and discussing City of Ladue at length).

City of Ladue is distinguishable in several material respects. First, the case involved an ordinance that banned homeowners from posting *any* residential signs. 512 U.S. at 45. In striking down the ordinance, the Supreme Court held that the ordinance was unconstitutional because telephone calls, letters, newspaper advertisements, flyers, pamphlets, and other forms of advocacy were not "adequate substitutes" for displaying a sign at one's home. Id. at 56-58. Here, by contrast, the sign ordinance permits signs at both residential and commercial locations provided they meet the size and height restrictions it establishes. Second, the locational speech-related interest raised in City of Ladue—i.e., that speech takes on its character in part based upon where it is uttered or displayed, id. at 56—is not at risk here because the sign ordinance does not preclude plaintiffs from expressing their views at the location where they wish to express those views. Again, it only limits the size of the display in which they can make that expression. Third, and related, whereas City of Ladue found that the challenged ordinance there limited a speaker's ability to reach an intended audience, id. at 54-56, no such limitation is present in this case, since the sign ordinance allows residents and businesses to display signs on their own property within the applicable size limits.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

FSC's remaining arguments are unpersuasive. To the extent FSC suggests that the sign ordinance forecloses all reasonably adequate substitute channels of communication because it forecloses FSC from displaying its message, as currently designed, in a manner that is "readable" to passersby, see Reply at 4, FSC has failed to present evidence to support this contention. Even had FSC submitted supporting evidence, a speaker is not entitled to his "preferred method of communication" when other allowable forms of signage grant the speaker "a reasonable opportunity to communicate [his] message." G.K. Ltd. Travel v. City of Lake Oswego, 436 F.3d 1064, 1074 (9th Cir. 2006) (upholding sign regulation *inter alia* because alternative channels existed "[e]ven with respect to signage" for plaintiff to express his message). And a speaker may still have a reasonable opportunity to communicate his or her message even if the regulation at issue effectively limits the audience that speech is able to reach. See Kovacs v. Cooper, 336 U.S. 77, 89 (1949) (upholding ordinance that "bars sound trucks from broadcasting in a loud and raucous manner on the streets" because the ordinance imposed "no restriction upon the communication of ideas or discussion of issues by the human voice, by newspapers, by pamphlets, by dodgers"—or by a sound truck operating at a reasonable volume—even though "more people may be more easily and cheaply reached by sound trucks" operating at louder volumes). Further, FSC's contention that the sign ordinance forecloses all channels for "spontaneous" or "timely" speech is also without merit, since the sign ordinance plainly allows for the placement of numerous permanent signs on a property within the applicable size and height limitations without a permit, at any time. See BPMC § 153.170.040(b).

The Court accordingly concludes that FSC fails to raise any serious questions as to whether or not the City's sign ordinance survives intermediate scrutiny.[7]

---

[7] Although FSC appears to abandon this argument on reply, FSC's opening brief contends that the sign ordinance fails to withstand scrutiny because its enforcement is "lax" and "violations" are "rampant." PI at 4-5. FSC cites no authority indicating how the City's alleged "lax" enforcement is relevant to the applicable constitutional analysis, but the Court construes this as an argument related to the City's obligation to narrowly tailor its sign ordinance to avoid restricting speech in a manner "substantially broader than necessary." Get Outdoors II, 506 F.3d at 894. In response, the City states that it lacks the resources to promptly enforce every violation in the city, and relies on local residents and businesses to report violations. See J. Martinez Decl., ¶¶ 6-7. Additionally, the City explains that many

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

\* \* \*

For the foregoing reasons, FSC fails to raise any serious questions as to the merits of its restriction of protected speech First Amendment claim.

### b) Prior Restraint Claim

FSC separately claims that the City's sign ordinance, and specifically its temporary permitting scheme, creates an unconstitutional prior restraint. "The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur." Alexander v. United States, 509 U.S. 544, 550 (1993) (internal citation omitted). Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976).

In challenges to government permitting requirements, the Supreme Court has identified two types of unconstitutional prior restraints: "[1] an ordinance that vests unbridled discretion in the licensor, or [2] an ordinance that does not impose adequate time limits on the relevant public officials." Get Outdoors II, 506 F.3d at 894-95 (internal marks omitted) (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225 (1990) and Forsyth County v. Nationalist Movement, 505 U.S. 123 (1992)).[8] The challenged temporary sign permitting scheme set forth by the City's sign ordinance states that a sign permit application "shall be granted when the City Planner finds the proposed sign to be in

---

of the signs in violation cited by FSC are actually signs for which the City has since issued citations. Id. ¶ 42, Exs. 12-27. The Court finds this testimony compelling, and does not find that the record supports an inference that the City is selectively enforcing the sign ordinance in a manner indicating that the sign ordinance sweeps too broadly or narrowly, or regulates speech on some impermissible basis.

[8] FSC does not address either of these criteria in its moving papers, and only argues in a conclusory fashion that the temporary sign permitting process amounts to an unconstitutional prior restraint because it "requires pre-approval by written application." See Reply at 1-2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | CIVIL MINUTES – GENERAL | | 'O' |
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

conformance with all applicable provisions of this chapter, the Sign Design Guidelines, and other applicable regulations." BPMC § 153.210.260. The sign ordinance requires the City to rule on an applicant's application within 21 days. Id. § 153.210.265.

This regulation does not fall into either prohibited category. First, the regulation does not give administrators unbridled discretion to grant or deny applications as they wish. It specifically states that administrators "shall" grant an applicant's permit "when" the sign proposed by the applicant complies with city regulations and design guidelines codified elsewhere. The Ninth Circuit has held that sign permitting ordinances with this type of cabined review criteria do not confer unbridled discretion upon regulators, and are not prior restraints. See G.K. Ltd. Travel, 436 F.3d at 1083 (sign ordinance that allowed a city to "deny permits only when the sign does not comport with the Code's reasonably specific size and type criteria or is not compatible with the surrounding environment" was not a prior restraint because these criteria were "explicitly defined in the Code"); see also Stott Outdoor Advert. v. Cty. of Monterey, 601 F. Supp. 2d 1143, 1154 (N.D. Cal. 2009) (sign ordinance did not confer unbridled discretion upon regulating official when "the official is charged with making findings affecting specific concerns enumerated in the ordinance"). Second, the 21-day time limit to grant or deny a permit application is an adequate limit consistent with time limits upheld by other courts considering comparable speech licensing regimes. See, e.g., Citizens for Free Speech, LLC v. Cty. of Alameda, 114 F. Supp. 3d 952, 966 (N.D. Cal. 2015) (concluding that "120–day time period" was "a reasonable time frame to confine the discretion granted by Section 17.54.130"); Dex Media W., Inc. v. City of Seattle, 793 F. Supp. 2d 1213, 1228 n.8 (W.D. Wash. 2011), rev'd in part on other grounds, 696 F.3d 952 (9th Cir. 2012) (concluding that 20-day time limit was adequate); see also Redner v. Dean, 29 F.3d 1495, 1500 (11th Cir. 1994) (holding that 45 days was adequate).

Because FSC has not shown that the sign ordinance's temporary sign permitting process falls into either of the unconstitutional categories set forth by the Supreme Court and the Ninth Circuit, FSC fails to raise any serious questions as to the merits of its prior restraint claim.

### c) Tax On Protected Speech Claim

FSC also moves for a preliminary injunction on grounds that the $21 fee required to apply for a temporary sign permit is an unconstitutional tax. See PI at 16-17; Reply at 9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

FSC is correct that, in general, a government cannot seek to profit by imposing a licensing or permitting fee on the exercise of protected speech. See Murdock v. Pennsylvania, 319 U.S. 105, 113-14 (1943). However, "it does not violate the First Amendment for a public entity to collect charges that fairly reflect costs incurred by the municipality in connection with" administering a program related to "an activity involving expression." Kaplan v. Cty. of Los Angeles, 894 F.2d 1076, 1081 (9th Cir. 1990) (citing Baldwin v. Redwood City, 540 F.2d 1360, 1372 (9th Cir. 1976)). Here, the City claims that its $21 administrative fee "represents our best good faith estimate of the costs associated with processing the permit application," which includes at least one planning official reviewing the proposed temporary sign for compliance with the City's regulations. B. Martinez Decl., ¶ 10. Given the value of a trained professional's time at market rates, and the amount of time that may be necessary to process and record an applicant's file, the Court finds this evidence sufficient to establish that the $21 fee is directly related to the cost of processing and enforcing the City's sign ordinance, and not an unconstitutional tax.

FSC accordingly fails to raise a serious question that the $21 application fee for a temporary permit is an unconstitutional tax.

\* \* \*

For the reasons discussed in this section, the Court concludes that FSC fails to raise any questions on the merits of its First Amendment claims that would support the issuance of a preliminary injunction.

### 2. Remaining Preliminary Injunction Factors

"[T]he deprivation of constitutional rights unquestionably constitutes irreparable injury." Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (citing Elrod v. Burns, 427 U.S. 347, 373 (1976)). However, in light of the Court's conclusion that there are no serious questions regarding the merits of FSC's constitutional challenges, and because FSC only claims irreparable harm from the deprivation of its constitutional rights, the Court declines to address FSC's arguments on the remaining irreparable harm and balance of hardships factors. See Global Horizons, Inc. v. United States DOL, 510 F.3d 1054, 1058 (9th Cir. 2007) ("Once a court determines a complete lack of probability on the success or serious questions going to the merits, its analysis may end, and no further findings are necessary.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL   'O'

| Case No. | 2:19-CV-09864-CAS-Ex | Date | February 13, 2019 |
|---|---|---|---|
| Title | BALDWIN PARK FREE SPEECH COALITION, ET AL. V. CITY OF BALDWIN PARK | | |

FSC's motion for a preliminary injunction is **DENIED.**

## V.   CONCLUSION

In accordance with the foregoing, the Court **DENIES** plaintiff's motion for preliminary injunction.

IT IS SO ORDERED.

00:00
CMJ