BROWNSTEIN HYATT FARBER SCHRECK, LLP
MITCHELL J. LANGBERG (State Bar No. 171912)
mlangberg@bhfs.com
EMILY L. DYER (State Bar No. 321707)
edyer@bhfs.com
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
Telephone: 702.464.7098
Facsimile: 310.500.4602

Attorneys for Defendant
CITY OF BALDWIN PARK

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| BALDWIN PARK FREE SPEECH COALITION, an unincorporated association; ROBERT EHLERS, an individual, | CASE NO.: 2:19-cv-09864 CAS-E |
| | Assigned to Honorable Christina A. Snyder |
| Plaintiffs, | **DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** |
| v. | |
| CITY OF BALDWIN PARK, | Date: July 27, 2020<br>Time: 10:00 a.m.<br>Ctrm: 8D |
| Defendant. | |
| | Action Filed: November 18, 2019 |

Defendant City of Baldwin Park (the "City" or "Defendant"), by and through the law firm of Brownstein Hyatt Farber Schreck, LLP, hereby submits its Motion for Partial Judgment on the Pleadings (the "Motion"). This Motion is based on the following Memorandum of Points and Authorities, the pleadings and papers on file herein, the exhibits attached hereto, documents subject to judicial notice, and any oral argument by counsel permitted at the hearing on this matter.

/ / /

/ / /

/ / /

/ / /

/ / /

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................... 1

II. FACTUAL BACKGROUND ..................................................... 2

    A. The Parties ............................................................................ 2

    B. Plaintiffs File Suit Against the City ...................................... 2

    C. Plaintiffs Allege That Ehlers Placed Two Non-Compliant Signs On the Property and the City Issued Notices and Citations in Response ................................................................................ 2

    D. Relevant Sign Ordinances ..................................................... 3

III. LEGAL STANDARD ............................................................... 4

IV. LEGAL ARGUMENT .............................................................. 6

    A. Plaintiffs' Fifth Claim for Relief Should Be Dismissed Because Plaintiffs Fail to Allege the Necessary Elements to Establish a Claim Under the Bane Act ....................................................... 7

        1. The Bane Act .................................................................. 7

        2. Plaintiffs Fail to State Facts Upon Which Relief May Be Granted as to Their Claim for Relief for Violation of the Bane Act .......................................................................... 8

    B. Two Separate Claims Set Out in the First Claim for Relief Should be Dismissed Because the Code is Facially Content Neutral and the Sign Permit Requirement is Not an Unconstitutional Prior Restraint ............................................. 8

        1. Claim 1A Should be Dismissed Because the Sign Regulations are Content Neutral and Narrowly Tailored .......... 9

        2. Claim 1C Should be Dismissed Because the Code's Permit Requirement is Not an Unconstitutional Prior Restraint ....................................................................... 14

    C. One of the Separate Claims Set Out in the Second Claim for Relief Should be Dismissed Because Plaintiffs' Facial Challenge to the Permit Provisions Fail to as a Matter of Law .......... 16

        1. Plaintiffs' Due Process Claim that the Permit Provisions Purportedly Restrict Free Speech is Redundant of Their First Claim for Relief and Should Be Addressed Under a First Amendment Analysis ................................................ 16

        2. Even if Plaintiffs' Due Process Claim is Analyzed Separately From Their First Amendment Claim, the Permit Provisions of the Code Do Not Lack Due Process Guarantees ................................................................... 17

    D. If the Court Does Not Dismiss the Claims Conflated in the First and Second Claim for Relief, it Should Exercise its Discretion to Dismiss the Complaint, Sua Sponte for Repleading .......... 19

V. CONCLUSION ...................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Alexander v. United States*,
509 U.S. 544 (1993) ................................................................. 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................. 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 6

*Bickerstaff Clay Prod. Co. v. Harris Cty., Ga. By & Through Bd. of Comm'rs*,
89 F.3d 1481 (11th Cir. 1996) .................................................. 9

*Brittain v. Hansen*,
451 F.3d 982 (9th Cir. 2006) ................................................... 18

*City of Ladue v. Gilleo*,
512 U.S. 43 (1994) ............................................................. 10, 12

*City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*,
541 U.S. 774 (2004) ............................................................... 15

*Clear Channel Outdoor, Inc. v. City of N.Y.*,
594 F.3d 94 (2d Cir. 2010) ..................................................... 14

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
657 F.3d 936 (9th Cir. 2011) ............................................. 9, 11

*Contest Promotions, LLC v. City and Cty. of San Francisco*,
100 F.Supp.3d 835 (N.D. Cal. 2015) ..................................... 17

*Curry v. Baca*,
497 F. Supp. 2d 1128 (C.D. Cal. 2007) ................................... 6

*DeCrow v. N. Dakota Workforce Safety & Ins. Fund*,
No. 1:14-CV-158, 2015 WL 12803638 (D.N.D. Oct. 19, 2015),
aff'd, 864 F.3d 989 (8th Cir. 2017) ........................................ 6

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

ii

*Disabled Rights Action Comm. v. Las Vegas Events, Inc.*,
   375 F.3d 861 (9th Cir. 2004) ............................................................................ 4

*Foti v. City of Menlo Park*,
   146 F.3d 629 (9th Cir. 1998) .......................................................................... 12

*FW/PBS, Inc. v. City of Dallas*,
   493 U.S. 215 (1990) ......................................................................................... 15

*General Conf. Corp. v. Seventh Day Adventist Church*,
   887 F.2d 228 (9th Cir. 1989) ............................................................................ 5

*Get Outdoors II, LLC v. City of San Diego, Cal.*,
   506 F.3d 886 (9th Cir. 2007) .................................................................... 10, 12

*Graham v. Connor*,
   490 U.S. 386 (1989) ......................................................................................... 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir. 1989) .......................................................................... 5

*Icon Groupe, LLC v. Washington Cty.*,
   No. 3:12-cv-1114-AC, 2015 WL 3397170 (D. Or. May 26, 2015) .................. 12

*L-7 Designs, Inc. v. Old Navy, LLC*,
   647 F3d 419 (2nd Cir. 2011) ............................................................................. 5

*Lone Star Sec. & Video, Inc. v. City of Los Angeles*,
   989 F. Supp. 2d 981 (C.D. Cal. 2013), aff'd, 827 F.3d 1192 (9th
   Cir. 2016) .................................................................................................. 11, 12

*McGann v. Ernst & Young*,
   102 F.3d 390 (9th Cir. 1996) ............................................................................ 5

*McGlinchy v. Shell Chemical Co.*,
   845 F.2d 802 ..................................................................................................... 5

*Members of City Council of City of L.A. v. Taxpayers for Vincent*,
   466 U.S. 789 (1984) ........................................................................................ 12

*Metromedia, Inc. v. City of San Diego*,
   453 U.S. 490 (1981) ........................................................................................ 12

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

iii

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

*One World One Family Now v. City & Cty. of Honolulu*,
 76 F.3d 1009 (9th Cir. 1996) ...................................................................... 12

*Police Dep't of City of Chicago v. Mosley*,
 408 U.S. 92 (1972) .................................................................................... 9

*Reed v. Town of Gilbert*,
 135 S. Ct. 2218 (2015) .......................................................................... 9, 10

*Schnieder v. County of San Diego*,
 28 F.3d 89 (9th Cir. 1994) ........................................................................ 18

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir.), *opinion amended on denial of reh'g*, 275
 F.3d 1187 (9th Cir. 2001) ........................................................................... 5

*Sprint Telephony PCS, L.P. v. Cnty. of San Diego*,
 311 F. Supp. 2d 898 (S.D. Cal. 2004) .......................................................... 5

*Sugarman v. Vill. of Chester*,
 192 F. Supp. 2d 282 (S.D.N.Y. 2002) ........................................................ 11

*Twitter, Inc. v. Sessions*,
 263 F. Supp. 3d 803 (N.D. Cal. 2017).................................................... 9, 15

*Wagner v. First Horizon Pharm. Corp.*,
 464 F.3d 1273 (11th Cir. 2006) ................................................................. 20

*Ward v. Rock Against Racism*,
 491 U.S. 781 (1989) ............................................................................ 10, 11

*World Wide Rush, LLC v. City of Los Angeles*,
 606 F.3d 676 (9th Cir. 2010) .................................................................... 12

**California Cases**

*Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*,
 68 Cal. App. 4th 101 (1998)....................................................................... 7

*San Francisco v. Ballard*,
 136 Cal. App. 4th 381 (2006) ..................................................................... 8

iv

**Federal Statutes**

Federal Rule of Civil Procedure 10(b) ................................................................. 8

Federal Rule of Civil Procedure 12(c)............................................................... 4, 5

**California Statutes**

California Civil Code
    § 51.7 ............................................................................................................ 8
    § 52.1 ...................................................................................................... 2, 7, 8
    § 52.1(a)-(b) .................................................................................................. 7
    § 52.1(k) ......................................................................................................... 7

**Local City Statutes**

Baldwin Park Municipal Code
    § 153.070 ....................................................................... 3, 11, 13, 18
    § 153.170 .......................................................................... 15, 18, 19
    § 153.170.010 ................................................................................. 12
    § 153.170.010(G) ........................................................................... 13
    § 153.170.030(A) ............................................................................. 3
    § 153.170.030(B) ............................................................................. 4
    § 153.170.040 ................................................................. 3, 11, 13, 18
    § 153.170.040(b) ............................................................................ 14
    § 153.170.040(C)(1) ........................................................................ 4
    § 153.170.060 ................................................................... 3, 4, 13, 18
    § 153.210 ......................................................................................... 4
    § 153.210.260 .......................................................................... *passim*
    § 153.210.260(A)-(B) ............................................................... 15, 19
    § 153.210.265(A) ...................................................................... 15, 19
    § 153.210.265(A)-(B) ...................................................................... 4
    § 153.210.2500 .............................................................................. 18

**Other Authorities**

U.S. Const. Amendment XIII ............................................................... 16

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION.

As the Court will recall from Plaintiffs' unsuccessful motion seeking a preliminary injunction, their complaint is riddled with cherry-picked recitations of the City of Baldwin Park's sign ordinances, twisted to the point where they are almost unrecognizable.  For example, the sign ordinances are facially content-neutral regulations that merely impose permit requirements for oversize signs based solely on the physical characteristics of signs, Yet, Plaintiffs claim these rules are content-based restrictions that prevent citizens from voicing their political beliefs in violation of the First Amendment.  Similarly, on their face, the sign ordinances detail the non-discretionary permit application review process for oversize signs.  Yet, Plaintiffs claim the rules lack all procedural safeguards and allow the City to arbitrarily deny permits for politically critical signs.

A simple reading of the sign ordinances and case law interpreting similar regulations belies Plaintiffs' contentions that the sign ordinances facially violate the protections of the First and Fourteenth Amendments.  Plaintiffs cannot ignore the actual provisions of ordinances to make their argument that those very ordinances operate to impermissibly quiet their speech.  Considering all the relevant ordinances together, Plaintiffs' first and second claims for relief fail as a matter of law.

Moreover, although this case is about the enforceability and enforcement of a sign ordinance, Plaintiffs have inexplicably asserted claims under the Bane Act, California's hate crime statute.  It is true that the City has issued fines for violation of its ordinances.  Yet, this routine act of local government is a far cry from the acts or threats of physical violence that are required to establish a violation of the Bane Act.

Plaintiffs do not make a single allegation that the City threatened Plaintiffs with violence.  That is because the City never made a threat of violence against Plaintiffs.  Nor did it even impose fines against either Plaintiff in this case.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

1  Nevertheless, characterizing the act of issuing a citation as an act of threatening
2  violence would eviscerate a local government's power to enforce its laws by
3  turning every fine issued into a hate crime.  Consequently, absent any allegations on
4  the face of the Amended Complaint of this critical element of the Bane Act,
5  Plaintiffs' fifth claim for relief must also be dismissed.

## II.   FACTUAL BACKGROUND.

### A.   The Parties.

The Amended Complaint alleges that Plaintiff Robert Ehlers ("Ehlers") is a member of Plaintiff Baldwin Park Free Speech Coalition ("BPFSC," collectively with Ehlers, "Plaintiffs"), an association that purports to promote transparency in local governance.[1]  Defendant City of Baldwin Park is a California municipal entity.[2]

### B.   Plaintiffs File Suit Against the City.

Pertinent to this Motion, Plaintiffs filed this lawsuit against the City, alleging, in part, that the City violated California Civil Code § 52.1: The Bane Act.[3] Specifically, Plaintiffs allege that the City "used citations, fines, threats of liens and intimidation to interfere with Plaintiff's rights …."[4]  Further, Plaintiffs allege that the City violated their Due Process rights related to the sign permit process.[5]

### C.   Plaintiffs Allege That Ehlers Placed Two Non-Compliant Signs On the Property and the City Issued Notices and Citations in Response.

Plaintiffs allege that on March 17, 2019, Ehlers hung two identical banners placed on the East and West sides of a commercial property located at 15110 Ramona Road, Baldwin Park, CA 91706-0000 (the "Property").[6]  A month later,

---

[1] *See* Complaint, Dkt. #1, filed herein on November 18, 2019; Amended Complaint, ¶¶10-12 (Dkt. #9), filed herein on November 25, 2019 ("Compl.").
[2] Compl., at ¶14.
[3] Compl., at ¶¶10-12.
[4] Compl., at ¶73.
[5] Compl., at ¶¶56-66.
[6] Compl., at ¶40.

2

Brownstein Hyatt Farber Schreck, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

the City issued a notice of violation under Code 153.170.060.[7]  Plaintiffs assert that from May to November of 2019, the City fined Ehlers in the aggregate amount of $12,000.[8]  According to Plaintiff, the City also "threatened a lien on his property through the Franchise Tax Board with an 'Official Tax Offset Notice Administrative Citation(s).'"[9]

### D.    Relevant Sign Ordinances.

Code § 153.170 identifies three categories of signs: (1) exempted signs, which require no permits, (2) signs requiring permits, and (3) signs requiring variances. *See* Code § 153.170.030(A) ("Unless otherwise exempted by § 153.170.040, a sign permit shall be required prior to the placement, construction or physical alteration of the size, height or location of any sign or advertising display in the city.").

Pursuant to Code § 153.170.040, the following types of signs are exempt from any permit or variance requirements ("Exempt Signs"):

(a)  Up to 20 flags or pennants with a combined area of no more than 80 square feet on a staff or pole of no longer than 20 feet, however, no individual flag or pennant may exceed 15 square feet in area;

(b)  Up to 15 permanent signs with a combined area of no more than 45 square feet and a height of no more than eight feet, however, no individual sign may exceed 15 square feet in area;

(c)  Up to four temporary window signs with a combined area of no more than 24 square feet, however, no individual sign may exceed 12 square feet in area and no more than 40% of the area of any given window may be covered by window signs;

(d)  Up to eight other temporary signs with a combined area of no more than 30 square feet and a height of no more than four feet, however, no individual sign may exceed 15 square feet in area. Size limits for window signs with

---

[7] Compl., at ¶41.
[8] Compl., at ¶¶41-47.
[9] Compl., at ¶44.

transparent backgrounds (instead of opaque backgrounds) placed on glass doors are doubled; ….

Code § 153.170.040(C)(1).

*In addition to exempt signs*, and after application for and approval of a permit pursuant to Code § 153.210, a single banner not exceeding 35 square feet may be displayed on non-residential properties for a maximum of 30 consecutive days for up to four nonconsecutive times within a 12-month period ("Temporary Permitted Signs"). Code § 153.170.060. Signs that are not compliant with Temporary Permitted Signs or Exempt Signs may only be hung if a variance is obtained under Code § 153.210. Code § 153.170.030(B).

Code § 153.210 details the requirements to obtain a sign permit for non-exempt signs. A sign permit will be granted "when the City Planner finds the proposed sign to be in conformance with all applicable provisions of this chapter, the Sign Design Guidelines and other applicable regulations." Code § 153.210.260. In other words, if the proposed sign conforms to the Code and the applicant has paid a fee of $21.00[10], a sign permit will be issued. The City must approve or deny a request for a temporary sign permit *within* 21 days of submission, and a request for a permanent sign permit within 63 days of submission. Code § 153.210.265(A)-(B).

## III.   LEGAL STANDARD.

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—any party may move for judgment on

---

[10] Defendant respectfully requests that the Court take judicial notice of the publicly available City-Wide Fee Schedule, adopted by the Baldwin Park City Council, effective September 2019, which provides that a temporary sign permit fee is $21.00 per sign. *See* Joint Update of the City of Baldwin Park and Baldwin Park Housing Authority City-Wide Fee Schedule Based On Consumer Price Index (CPI) And Other Adjustments, dated July 17, 2019, attached hereto as **Exhibit 1**. Facts derived from the publicly available records are judicially noticeable. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 & n.1 (9th Cir. 2004) (court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

the pleadings." Fed. R. Civ. P. 12(c). The purpose of a Rule 12(c) motion is to challenge the sufficiency of the opposing party's pleadings, employing the same standard as a motion under Rule 12(b)(6). *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 902 (S.D. Cal. 2004) ("A Rule 12(c) motion for judgment on the pleadings and a Rule 12(b)(6) motion to dismiss are virtually interchangeable."). Accordingly, judgment on the pleadings is appropriate when the moving party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989); *see also General Conf. Corp. v. Seventh Day Adventist Church*, 887 F.2d 228, 230 (9th Cir. 1989) ("Judgment on the pleadings is proper when there are no issues of material fact, and the moving party is entitled to judgment as a matter of law.").

The court may grant a judgment on the pleadings "when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996). In resolving a Rule 12(c) motion, the Court can consider (a) the complaint and answer; (b) any documents attached to or mentioned in the pleadings; (c) documents not attached but "integral" to the claims; and (d) matters subject to judicial notice. *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F3d 419, 422 (2nd Cir. 2011) (stating that when determining FRCP 12(c) motions, the Court may consider matters subject to judicial notice). The court must assume the truthfulness of all material facts alleged and construe all inferences reasonably to be drawn from the facts in favor of the responding party. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989); *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1986 "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State*

*Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

To survive a motion for judgment on the pleadings, the complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More specifically, the complaint must assert more than "naked assertions," "labels and conclusions," or simply a "formulaic recitation of the elements of a cause of action." *Id.* at 555-57. As the Supreme Court has recently explained, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

Moreover, it is within the Court's discretion to grant judgment on the pleadings as to only some claims. *See, e.g.*, *Curry v. Baca*, 497 F. Supp. 2d 1128, 1131 (C.D. Cal. 2007) (granting judgment on the pleadings as to Plaintiff's fourth and fifth causes of action). A claim refers to a set of facts that would entitle the pleader to relief if established. *See Bell Atlantic Corp.*, 550 U.S. at 555.[11] Accordingly, judgment on the pleadings may be granted on any claim, even where more than one claim is alleged in a single cause of action. *See DeCrow v. N. Dakota Workforce Safety & Ins. Fund*, No. 1:14-CV-158, 2015 WL 12803638, at *8 (D.N.D. Oct. 19, 2015), aff'd, 864 F.3d 989 (8th Cir. 2017) (granting motion for judgment ton the pleadings as to plaintiff's claim that "N.D.C.C. § 65–05–05(2) is unconstitutional" as applied).

## IV.  LEGAL ARGUMENT.

Plaintiffs' Amended Complaint consists of five general claims for relief, each of which consists of multiple claims and/or theories. Accordingly, the City seeks judgment in its favor on the following:

---

[11] As discussed below, Plaintiffs have sometimes conflated multiple claims (each relying on different facts) into a single "claim for relief." But, they cannot so easily avoid dismissal of legally untenable claims. Where multiple claims are alleged as a single "claim for relief," they will be addressed separately in this motion.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

1. Plaintiffs' fifth claim for relief for violation of the Bane Act;

2. Plaintiff's first claim for relief for violation of the First Amendment, to the extent Plaintiffs allege a facial challenge to the sign provisions and allege that the permit provisions constitute a prior restraint; and

3. Plaintiff's second claim for relief for violation of the Fourteenth Amendment, to the extent Plaintiffs allege a facial due process challenge to the permit provision.

Even if the facts asserted in the Amended Complaint are accepted as true, Plaintiffs have not alleged facts to support the necessary elements to establish the foregoing claims.

**A.   Plaintiffs' Fifth Claim for Relief Should Be Dismissed Because Plaintiffs Fail to Allege the Necessary Elements to Establish a Claim Under the Bane Act.**

**1.   The Bane Act.**

California Civil Code section 52.1 provides, in part, that an individual may bring a civil action against a person who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code § 52.1(a)-(b). However, Section 52.1(k) provides that speech alone is insufficient to support an action unless "the speech itself threatens violence against a specific person and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and the person threatening violence had the apparent ability to carry out the threat." Cal. Civ. Code § 52.1(k); *Cabesuela v. Browning-Ferris Indus. of Cal., Inc.*, 68 Cal. App. 4th 101, 111 (1998) (stating that "it is clear that to state a cause of action under section 52.1 there must first be violence or intimidation by threat of violence" and "the violence or threatened violence must be due to plaintiff's membership in one

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

of the specified classifications set forth in Civil Code section 51.7 or a group similarly protected by constitution or statute from hate crimes").

### 2. Plaintiffs Fail to State Facts Upon Which Relief May Be Granted as to Their Claim for Relief for Violation of the Bane Act.

Plaintiffs' Complaint is void of any allegation that the City committed violence upon or threatened to commit violence against the Plaintiffs. Instead, Plaintiffs allege that fees were imposed and that the City "threatened" to impose a tax lien on the Property.[12] Even accepting these allegations as true, mere words are insufficient to support a claim under Section 52.1. *See San Francisco v. Ballard*, 136 Cal. App. 4th 381, 408 (2006) (holding that threat of $15 million in penalties if plaintiff did not install a complete sprinkler system is not "coercion" within the meaning of section 52.1).

Plaintiffs have not and cannot allege any facts that the City, a municipal entity, committed violence or threatened violence against Plaintiffs in order to support a claim under the Bane Act. Accordingly, judgment on the pleadings should be entered in favor of the City as to Plaintiffs' fifth claim for relief.

### B. Two Separate Claims Set Out in the First Claim for Relief Should be Dismissed Because the Code is Facially Content Neutral and the Sign Permit Requirement is Not an Unconstitutional Prior Restraint.

In their first claim for relief, Plaintiffs aggregate what are truly three separate claims, each of which seeks varying relief and is based on different facts: (A) the Code is an unconstitutional content-based regulation on its face, (B) the enforcement of the Code violates Plaintiffs' First Amendment rights, and (C) the Code's permit requirement is an unconstitutional prior restraint. Of these, Plaintiffs' first ("Claim 1A") and third ("Claim 1C") claims fail as a matter of law.[13]

---

[12] Compl., at ¶¶41-47.
[13] Notably, this method of pleading violates the requirement of FRCP 10(b) that a party should limit its claims "as far as practicable to a single set of circumstances"

1. **Claim 1A Should be Dismissed Because the Sign Regulations are Content Neutral and Narrowly Tailored.**

To the extent Plaintiffs assert a facial challenge as to the constitutionality of the Code's sign provisions, judgment in the City's favor is appropriate because they are content-neutral regulation that imposes a narrowly tailored time, place, and manner restriction (in the form of size and quantity) that serves significant government interests and ample alternative channels of communication exist.

a. *Intermediate Scrutiny is the Proper Standard to Review the Sign Ordinance Because it is Content-Neutral.*

The First Amendment of the United States Constitution guarantees the right of free speech. Such right, however, is not absolute and can be regulated. *Twitter, Inc. v. Sessions*, 263 F. Supp. 3d 803, 809 (N.D. Cal. 2017) ("First Amendment rights are not absolute and do not automatically override all other constitutional values."). A governmental entity can regulate speech so long as such regulations are not based on "its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert,* 135 S. Ct. 2218, 2226 (2015). Therefore, content-based laws are subject to strict scrutiny.

On the other hand, like the City's sign ordinance, "[l]aws that are content neutral are instead subject to lesser scrutiny." *Id.* at 2232. "For content-neutral regulations, the State may limit 'the time, place, and manner of expression' if the regulations are 'narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" *Comite de Jornaleros*

---

and, if it will promote clarity, "each claim founded on a separate transaction or occurrence...must be stated in a separate count or defense." Plaintiff's complaint "is a typical shotgun pleading, in that some of the counts present more than one discrete claim for relief." *Bickerstaff Clay Prod. Co. v. Harris Cty., Ga. By & Through Bd. of Comm'rs*, 89 F.3d 1481, 1485 (11th Cir. 1996).

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

1   *de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 940 (9th Cir. 2011)

2   (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45

3   (1983)). "[R]estrictions on the time, place, or manner of protected speech are not

4   invalid 'simply because there is some imaginable alternative that might be less

5   burdensome on speech.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 797 (1989)

6   (citation omitted). Thus, content-neutral laws are subject to this intermediate

7   scrutiny standard.

8       Laws that are facially content-neutral are only subject to strict scrutiny if

9   they "cannot be justified without reference to the content of the regulated speech,

10  or that were adopted by the government because of disagreement with the message

11  [the speech] conveys." *Reed*, 135 S. Ct. at 2227 (citations and quotation marks

12  omitted).

13      Here, the sign ordinance is content neutral on its face.  The Code merely

14  regulates the size and quantity of exempt signs that may be hung in the City.  For

15  larger signs, the sign ordinance further regulates the length of time a sign may be

16  hung.   It is well settled that such sign regulations are content-neutral and

17  constitutional.  As Justice Alito has stated:

18          I will not attempt to provide anything like a
            comprehensive list, but here are some rules that would not
19          be content based:

20          Rules regulating the size of signs. These rules may
            distinguish among signs based on any content-neutral
21          criteria, including any relevant criteria listed below.

22          Rules regulating the locations in which signs may be
            placed. These rules may distinguish between free-
23          standing signs and those attached to buildings. …"

24  *Reed*, 135 S. Ct. at 2233 (J. Alito, Concurrence); *see also City of Ladue v. Gilleo*,

25  512 U.S. 43, 48 (1994) ("It is common ground that governments may regulate the

26  physical characteristics of signs—just as they can, within reasonable bounds and

27  absent censorial purpose, regulate audible expression in its capacity as noise.");

28  *Get Outdoors II, LLC v. City of San Diego, Cal.*, 506 F.3d 886, 893 (9th Cir. 2007)

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

10

("Size and height restrictions on billboards are evaluated as content-neutral time, place and manner regulations."); *Sugarman v. Vill. of Chester*, 192 F. Supp. 2d 282, 293 (S.D.N.Y. 2002) (providing that "sections of the ordinance requiring permit fees are content-neutral and impose reasonable time, place or manner restrictions").

Moreover, the Code ***does not*** categorize signs based on their content, such as political or ideological content.  Instead, the Code merely imposes reasonable restrictions on the size, duration of the display (for non-exempt sings), and number of signs. Code §§ 153.170.040; 153.170.060.  Such restrictions on the physical characteristics of a sign do not restrict speech based on its communicative content. The size of a sign is wholly unrelated to the content it communicates. Consequently, the Code is content neutral on its face.

### b.  *Code § 153.170 is Narrowly Tailored to Serve Significant Government Interest.*

Because the Code is content-neutral, it need only be "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Comite de Jornaleros de Redondo Beach*, 657 F.3d at 940 (citation and quotation mark omitted).

The "essence of narrow tailoring" is to "focus[ ] on the source of the evils the [government] seeks to eliminate . . . and eliminate[ ] them without at the same time banning or significantly restricting a substantial quantity of speech that does not create the same evils." *Ward*, 491 U.S. at 799 n.7. "To be narrowly tailored, a regulation should 'achieve its ends without restricting substantially more speech than necessary.'" *Lone Star Sec. & Video, Inc. v. City of Los Angeles*, 989 F. Supp. 2d 981, 990 (C.D. Cal. 2013), aff'd, 827 F.3d 1192 (9th Cir. 2016) (citation omitted).

### (1)  The Code Serves Significant Government Interests.

Courts have routinely found that aesthetics and public safety are significant

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

11

government interests. *See, e.g.*, *City of Ladue*, 512 U.S. at 48 ("Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation."); *Members of City Council of City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984) ("It is well settled that the state may legitimately exercise its police powers to advance esthetic values."); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city— are substantial governmental goals."); *Lone Star Sec. & Video, Inc.*, 989 F. Supp. 2d at 989 ("[T]raffic safety, parking control, and aesthetics constitute significant, or substantial, government interests." (citation omitted)); *World Wide Rush, LLC*, 606 F.3d at 685 ("As a general matter, there is no question that restrictions on billboards advance cities' substantial interests in aesthetics and safety."); *Get Outdoors II, LLC*, 506 F.3d at 893 ("The Supreme Court has recognized that a city's interests in traffic safety and aesthetics are sufficient government interests for the purposes of this analysis."); *Foti v. City of Menlo Park*, 146 F.3d 629, 637 (9th Cir. 1998) ("The City's asserted interests in the ordinance are the oft-invoked and well-worn interests of preventing visual blight and promoting traffic and pedestrian safety."); *One World One Family Now v. City & Cty. of Honolulu*, 76 F.3d 1009, 1013 (9th Cir. 1996) ("Cities have a substantial interest in protecting the aesthetic appearance of their communities by 'avoiding visual clutter.'" (citation omitted)); *Icon Groupe, LLC v. Washington Cty.*, No. 3:12-cv-1114-AC, 2015 WL 3397170, at *7 (D. Or. May 26, 2015) ("Federal courts routinely recognize beauty and safety as significant governmental interests in the context of freedom of speech claims relating to signs.").

Code § 153.170.010 enumerates the City's interests in enacting sign regulations, including but not limited to, "[r]espect[ing] and protect[ing] the right of free speech by sign display, while reasonably regulating the structure, location

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

12

and other non-communicative aspects of signs, generally for the public health, safety, welfare and specifically to serve the public interests in traffic and pedestrian safety and community aesthetics." Code § 153.170.010(G). The City's stated purposes, including but not limited to, traffic safety and aesthetics, are significant interests that are served by the City's content-neutral sign regulations.

### (2)   The Code is Narrowly Tailored.

The Code's sign provisions are narrowly tailored to serve the City's safety and aesthetic interests. Indeed, the Code's permit requirements for oversize signs only applies to a small subset of signs. The maximum size of an exempt sign is 15 square feet. Code § 153.170.040. A temporary sign permit is only required for signs between 15 and 35 square feet. Code § 153.170.060. This addresses the City's concerns. Common sense supports that larger signs pose more hazards than smaller signs, which would be in the City's interest to regulate to ensure traffic and pedestrian safety. Larger signs are more likely to be improperly hung due to their size and weight and can cause more harm if they are not properly affixed. Additionally, excessively large signs tend to be driving distractions. Through the permitting process, the City becomes aware of the location of these larger and potentially more harmful signs.

Moreover, the standards and guidelines for reviewing a permit are clear: Code § 153.210.260 provides that for a permit to be approved, the proposed sign must merely be in conformance with the Code and § 153.170 details the size standards that an applicant's sign must comply with to obtain a permit. *See, e.g.*, Code § 153.070 ("General Sign Standards"). The permit provisions provide for a non-discretionary review of the sign permit. Simply, the Code is clear that the City Planner approves permit requests if the application fee is paid and the physical characteristics of the sign comply with Code § 153.170.

Accordingly, the Code's requirement to obtain a permit for oversize signs is narrowly tailored to serve the City's significant interests.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

13

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

### c.    Ample Alternative Channels of Communication Exist.

The Code leaves open ample alternative channels of communication. Indeed, the Code does not forbid any medium of expression.  It merely limits unfettered expression in the form of oversize signs by requiring that a permit or variance be obtained prior to display; it leaves Plaintiffs free to post exempt signs without a permit. *Cf. Clear Channel Outdoor, Inc. v. City of N.Y.*, 594 F.3d 94, 110 (2d Cir. 2010) ("Allowing some signs does not constitutionally require a city to allow all similar signs.").  For example, Plaintiffs can post up to 15 permanent signs that are individually no bigger than 15 square feet, and collectively no bigger than 45 square feet, at any time and for any length of time.  Code § 153.170.040(b). Should Plaintiff want to post a large sign, they need only obtain a permit or a variance.

Based on the foregoing, as a matter of law, the Code is a content-neutral regulation that is facially constitutional.  Accordingly, this Court should find that, as a matter of law, Plaintiffs' Claim 1A fails to state a claim for relief under the First Amendment to the extent Plaintiffs allege a facial challenge to the sign provisions of the Code.

### 2.    Claim 1C Should be Dismissed Because the Code's Permit Requirement is Not an Unconstitutional Prior Restraint.

In part, Plaintiffs allege that the sign permit requirements in the Code violate the First Amendment because the requirements constitute an unconstitutional prior restraint.[14]  Plaintiffs contend that requiring payment for the permit places a condition on free speech.[15]  To the extent Plaintiffs assert a facial challenge to the Code provisions relating to sign permits, judgment in the City's favor is appropriate because the permit requirements do not constitute an unconstitutional prior restraint.

"The term prior restraint is used 'to describe administrative and judicial orders forbidding certain communications when issued in advance of the time that

---

[14] Compl., at ¶52.
[15] Compl., at ¶52.

such communications are to occur.'" *Alexander v. United States*, 509 U.S. 544, 550 (1993) (citation omitted). Prior restraints are subject to strict scrutiny. *Twitter, Inc. v. Sessions*, 263 F. Supp. 3d 803, 810 (N.D. Cal. 2017)

In licensing and permitting scenarios, courts have identified two schemes of prior restraints that are routinely found to be unconstitutional. The first scheme is one that "places 'unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990), holding modified by *City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004) (citation omitted). The second scheme is "a prior restraint that fails to place limits on the time within which the decision maker must issue the license." *Id.*

Here, the requirement to obtain a permit or variance for larger signs does not fall under either unconstitutional scheme. First, the Code permit requirement does not give City employees the discretion to grant or deny applications based on the content of the proposed sign. *See* Code § 153.210.260 (stating that a sign permit will be approved if it is in conformance with the Code). Instead, the Code only requires the City to ensure that the proposed sign conforms to the size, location, and number of signs prescribed in Code § 153.170. *Id.* In other words, the City must merely consider whether the proposed sign complies with the ***physical*** characteristic restrictions in the Code. *See* Code § 153.210.260.

Second, the Code limits the time within which a determination on the application must be made. The Code provides that a determination on a temporary sign permit will be completed within 21 days of submission and within 63 days for a permanent sign permit. Code § 153.210.260(A)-(B). Additionally, notice of the City's determination to approve or deny a permit is mailed to the applicant within two business days of the determination. Code § 153.210.265(A). Accordingly, the Code's requirement that a permit must be obtained for oversize signs is not an improper prior restraint on speech.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

15

1   Consequently, Claim 1C should be dismissed because the Code does not

2   impose an unconstitutional prior restraint on speech.

3   **C.    One of the Separate Claims Set Out in the Second Claim for Relief**
    **Should be Dismissed Because Plaintiffs' Facial Challenge to the**

4   **Permit Provisions Fail to as a Matter of Law.**

5   In its second claim for relief, in part, Plaintiffs appear to assert (A) a facial

6   substantive due process claim, alleging that the Code provisions regulating the

7   application and approval of sign permits ("Claim 2A"), and (B) a facial procedural

8   due process claim, alleging that the process to challenge administrative citations

9   lack due process guarantees ("Claim 2B").[16]  To the extent Plaintiffs allege facial

10  challenges to the permit provisions, Plaintiffs' claims fail as a matter of law.

11  The Due Process Clause of the Fourteenth Amendment provides that "[n]o

12  state shall make or enforce any law which shall abridge the privileges or immunities

13  of citizens of the United States; nor shall any state deprive any person of life,

14  liberty, or property, without due process of law; nor deny to any person within its

15  jurisdiction the equal protection of the laws." U.S. Const. amend. XIII.

16  **1.    Plaintiffs' Due Process Claim that the Permit Provisions**
    **Purportedly Restrict Free Speech is Redundant of Their**

17  **First Claim for Relief and Should Be Addressed Under a**
    **First Amendment Analysis.**

18  Without addressing the specifics of the permit requirements, Plaintiffs

19
20  contend that the Code lacks guidelines "to ensure a fair review process that

21  constrains the ability of public officials to engage in arbitrary and capricious actions

22  and to manipulate City laws and regulations to restrict the voice of its critics."[17]  In

23  essence, Plaintiffs assert that the permit requirement violates their fundamental

24  right to free speech.

25  The Supreme Court has held that if a constitutional claim is covered by a

26  more specific constitutional provision, the claim should be analyzed under the more

27
    _____

28  [16] Compl., at ¶57.
    [17] Compl., at ¶57.

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

16

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

specific provision instead of the Fourteen Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (concluding that it was improper to analyze an excessive force claim under substantive due process because a specific constitutional provision was applicable); *Contest Promotions, LLC v. City and Cty. of San Francisco*, 100 F.Supp.3d 835, 846 (N.D. Cal. 2015) (granting motion to dismiss due process claims in sign ordinance case where the claims consisted of the same allegations supporting plaintiff's Equal Protection, First Amendment, and Fifth Amendment claims).

Plaintiffs' due process allegations relating to the permit requirement significantly overlap with their first cause of action relating to their First Amendment rights.[18]  The second cause of action should be dismissed because the First Amendment provides an "explicit textual source of constitutional protection" for the alleged conduct.  *Graham*, 490 U.S. at 395.

> ### 2.   Even if Plaintiffs' Due Process Claim is Analyzed Separately From Their First Amendment Claim, the Permit Provisions of the Code Do Not Lack Due Process Guarantees.

To the extent Plaintiffs allege a facial due process claim relating to the permit provisions in the Code, and to the extent this Court determines that the due process analysis is appropriate for Plaintiffs' claim, judgment in the City's favor is warranted.  As an initial matter, it is unclear whether Plaintiffs assert a procedural or substantive due process claim, both, or some hybrid of the two.[19]  Regardless, Plaintiffs' claim should be dismissed because the permit provisions do not deprive a

---

[18] *Compare* Compl., at ¶52 ("… the City imposes a fee to apply for a permit for a temporary sign, conditioning the exercise of First Amendment rights on the payment of money upfront to the government, with no guarantee that a permit will issue and what conditions might be imposed.  Speech may be delayed for weeks while the City engages in the approval process.") *with* Compl., at ¶57 ("The City lacks sufficient standards and guidelines to ensure a fair review process that constrains the ability of public officials to engage in arbitrary and capricious actions to manipulate City laws and regulations to restrict the voice of its critics.").

[19] *See, e.g.*, Compl., at ¶60 ("Plaintiffs contend that the BPMC provisions lack adequate standard and procedural safeguards against arbitrary and capricious application of the law.").

17

1  person of their fundamental right to free speech; deprivation, if any, does not shock
2  the conscience; and sufficient standards exist that prevent discretionary review of
3  the permit applications.

4  "Substantive due process protects individuals from arbitrary deprivations of
5  their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).
6  A substantive due process violation occurs only when the government's action
7  "shocks the conscience." *Id.* Procedural due process requires notice of an
8  "opportunity to be heard at a meaningful time and in a meaningful manner."
9  *Schnieder v. County of San Diego*, 28 F.3d 89, 92 (9th Cir. 1994).

10  Here, the requirement to obtain a permit for oversize signs is not a
11  deprivation of Plaintiffs' liberty.  Plaintiffs are free to speak without obtaining a
12  permit or waiting any amount of time through any of the exempt signs detailed in
13  Code § 153.170.040.  The Code's permit requirements for oversize signs only
14  applies to a small subset of signs.  The maximum size of an exempt sign is 15
15  square feet. Code § 153.170.040. A temporary sign permit is only required for
16  signs between 15 and 35 square feet.  Code § 153.170.060.  As detailed in Section
17  IV.B.1, the permit requirement for non-exempt signs is a content-neutral restriction
18  that survives intermediate scrutiny.  Accordingly, deprivation, if any, of a person's
19  fundamental right to free speech through the Code is minimal and constitutionally
20  permitted.

21  Moreover, the sign permit provisions of the Code provide sufficient
22  standards and guidelines to satisfy the Due Process Clause of the Fourteenth
23  Amendment.  Code § 153.210.2500 details what types of signs require a permit,
24  which consists of all signs that are no exempt under § 153.170.040.  Code §
25  153.210.260 provides that for a permit to be approved, the proposed sign must
26  merely be in conformance with the Code § 153.170, which details the size
27  standards that an applicant's sign must be to obtain a permit.  *See, e.g.*, Code §
28  153.070 ("General Sign Standards").

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

18

BROWNSTEIN HYATT FARBER SCHRECK, LLP
2049 Century Park East, Suite 3550
Los Angeles, CA 90067
310.500.4600

1    Additionally, the City cannot act arbitrarily or capriciously in reviewing and
2    approving sign permits because the Code provides for a non-discretionary review
3    of the sign permit.  Indeed, the Code is clear that the City Planner approves permit
4    requests if the application fee is paid and the physical characteristics of the sign
5    comply with the size, location, and number of signs detailed in Code § 153.170.
6    *See* Code § 153.210.260 (providing that the City Planner may apply conditions of
7    approval to ensure compliance with the size and location requirements; such
8    conditions consist of the sign permit application and payment of $21).  In other
9    words, the Code's permit requirement does not give City employees the discretion
10   to grant or deny applications based on the content of the proposed sign; it merely
11   allows the City to consider whether the proposed sign complies with the ***physical***
12   characteristic restrictions in the Code.  *See* Code § 153.210.260.

13   Second, the Code limits the time within which a determination on the
14   application must be made.  The Code provides that a determination on a temporary
15   sign permit will be completed within 21 days of submission and within 63 days for
16   a permanent sign permit.  Code § 153.210.260(A)-(B).  Additionally, notice of the
17   City's determination to approve or deny a permit is mailed to the applicant within
18   two business days of the determination.  Code § 153.210.265(A).

19   Accordingly, the Code provides sufficient standards and guidelines for
20   obtaining a permit for oversize signs.  Therefore, the permit provisions of the Code
21   do not facially violate the Due Process Clause and the City is entitled to judgment
22   as a matter of law.

23       **D.    If the Court Does Not Dismiss the Claims Conflated in the First
24             and Second Claim for Relief, it Should Exercise its Discretion to
             Dismiss the Complaint, *Sua Sponte* for Repleading.**

25   Although Plaintiffs have merged several claims into single claims for relief,
26   the allegations are sufficiently discernable to allow for dismissal as set forth above.
27   If the Court is not inclined to several the separate claims from the existing claims
28   for relief, dismissal of the entire complaint is appropriate.  Where a complaint

19

constitutes "a shotgun pleading," the Court may appropriately dismiss and order repleading, *sua sponte*. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006)

## V.    CONCLUSION.

Based on the foregoing, judgment on the pleadings as to Claims 1A, 1B, 1C, 2A, 2B, 5 should be entered in the City's favor and against Plaintiffs.

Dated: June  29, 2020                            BROWNSTEIN HYATT FARBER
                                                 SCHRECK, LLP


                                       By: */s/ Mitchell J. Langberg*
                                                 MITCHELL J. LANGBERG
                                                 EMILY L. DYER
                                                 Attorneys for Defendant
                                                 CITY OF BALDWIN PARK